UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALICIA KIRTON,

            *Plaintiff*,

   v.

CHAD F. WOLF, Acting Secretary,
Department of Homeland Security, and

FEDERAL EMERGENCY MANAGEMENT
AGENCY,

            *Defendants*.

Civ. A. No. 18-1580 (RCL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN
D.C. Bar No. 924092
Chief, Civil Division

DANIEL P. SCHAEFER
D.C. Bar No. 996871
Assistant United States Attorney

*Counsel for Defendants*

# TABLE OF CONTENTS

Introduction and Factual Background ................................................................................. 1

Procedural Background ....................................................................................................... 3

    A.    Administrative Proceedings at the Agency and EEOC ....................................... 3

    B.    District Court Proceedings ................................................................................. 4

Legal Standards .................................................................................................................. 5

    A.    Motions for Summary Judgment ....................................................................... 5

    B.    Title VII of the Civil Rights Act of 1964 .......................................................... 6

Argument ............................................................................................................................ 7

Defendant Is Entitled to Summary Judgment on the Title VII Discrimination Claim. ................. 7

I.    The Denial of Plaintiff's Telework Request Does Not Constitute an Adverse Action. ..... 7

II.    FEMA Offered Legitimate Justifications For the Challenged Action. .............................. 9

III.    Plaintiff Fails to Offer Evidence From Which a Reasonable Jury Could Infer Discrimination ........................................................................................................ 11

    A.    Plaintiff's Alleged Comparators. .................................................................... 11

            1.    Wohltman Is Not a Suitable Comparator ................................................ 13

            2.    Miller Is Not a Suitable Comparator ...................................................... 14

    B.    The Alleged Deviations From Standard Procedures ......................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................ 5, 6

*Bishopp v. District of Columbia*,
    788 F.2d 781 (D.C. Cir. 1986) ................................................................................ 9

*Brady v. Off. of Sergeant at Arms*,
    520 F.3d 490 (D.C. Cir. 2008) .............................................................. 7, 9, 11, 12

*Brockman v. Snow*,
    217 F. App'x 201 (4th Cir. 2007) .......................................................................... 8

*Broderick v. Donaldson*,
    437 F.3d 1226 (D.C. Cir. 2006) ............................................................................. 8

*Brown v. Jewell*,
    134 F. Supp. 3d 170 (D.D.C. 2015) ................................................................... 7, 8

*Burley v. Nat'l Passenger Rail Corp.*,
    801 F.3d 290 (D.C. Cir. 2015) ....................................................................... 11, 12

*Byrd v. Vilsack*,
    931 F. Supp. 2d 27 (D.D.C. 2013) ......................................................................... 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................ 5, 6

*Childs-Pierce v. Util. Workers Union of Am.*,
    383 F. Supp. 2d 60 (D.D.C. 2005) ....................................................................... 18

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................. 19

*Czekalski v. Peters*,
    475 F.3d 360 (D.C. Cir. 2007) ............................................................................... 6

*Douglas v. Donovan*,
    559 F.3d 549 (D.C. Cir. 2009) ............................................................................... 8

*Figueroa v. Pompeo*,
    923 F.3d 1078 (D.C. Cir. 2019) .................................................................... passim

*Franklin v. Potter*,
    600 F. Supp. 2d 38 (D.D.C. 2009) ................................................................. 16, 17

*George v. Leavitt*,
    407 F.3d 405 (D.C. Cir. 2005)............................................................................. 12

*Greene v. Dalton*,
    164 F.3d 671 (D.C. Cir. 1999)............................................................................... 6

*Homburg v. UPS*,
    Civ. A. No. 05-2144, 2006 WL 2092457 (D. Kan. July 27, 2006)........................... 8

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977).............................................................................................. 6

*Iyoha v. Architect of the Capitol*,
    927 F.3d 561 (D.C. Cir. 2019)............................................................................. 11

*Johnson v. Wash. Metro. Area Transit Auth.*,
    314 F. Supp. 3d 215 (D.D.C. 2018)..................................................................... 15

*Kline v. Springer*,
    602 F. Supp. 2d 234 (D.D.C. 2009)..................................................................... 14

*Lathram v. Snow*,
    336 F.3d 1085 (D.C. Cir. 2003)........................................................................... 20

*Loeb v. Textron, Inc.*,
    600 F.2d 1003 (1st Cir. 1979).............................................................................. 10

*Marcelus v. CCA of Tenn., Inc.*,
    691 F. Supp. 2d 1 (D.D.C. 2010)......................................................................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).............................................................................................. 6

*McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*,
    611 F.3d 1 (D.C. Cir. 2010)................................................................................. 17

*McIver v. Esper*,
    Civ. A. No. 16-1448 (DLF), 2020 WL 2043888 (D.D.C. Apr. 28, 2020).............. 18

*Milton v. Weinberger*,
    696 F.2d 94 (D.C. Cir. 1982)............................................................................... 20

*Montgomery v. Chao*,
    546 F.3d 703 (D.C. Cir. 2008)............................................................................. 12

*Neuren v. Adduci, Mastriani, Meeks & Schill*,
    43 F.3d 1507 (D.C. Cir. 1995)............................................................................. 14

iv

*Phillips v. Holladay Prop. Servs., Inc.*,
    937 F. Supp. 32 (D.D.C. 1996) ............................................................................ 16

*Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*,
    548 F.3d 137 (D.C. Cir. 2008) ............................................................................. 17

*Segar v. Smith*,
    738 F.2d 1249 (D.C. Cir. 1984) ......................................................................... 6, 9

*Sledge v. District of Columbia*,
    63 F. Supp. 3d 1 (D.D.C. 2014) .......................................................................... 15

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993) ............................................................................................ 21

*Taylor v. Small*,
    350 F.3d 1286 (D.C. Cir. 2003) ............................................................................ 8

*Teneyck v. Omni Shoreham Hotel*,
    365 F.3d 1139 (D.C. Cir. 2004) ............................................................................ 9

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981) .............................................................................................. 6

*Trans World Airlines, Inc. v. Thurston*,
    469 U.S. 111 (1985) .............................................................................................. 7

*Vinh v. Wash. Metro. Area Transit Auth.*,
    299 F. Supp. 3d 75 (D.D.C. 2018) ...................................................................... 21

*Walker v. McCarthy*,
    170 F. Supp. 3d 94 (D.D.C. 2016) ........................................................... 11, 13, 14

*Waterhouse v. District of Columbia*,
    298 F.3d 989 (D.C. Cir. 2002) ....................................................................... 12, 13

*Wheeler v. Georgetown Univ. Hosp.*,
    812 F.3d 1109 (D.C. Cir. 2016) .......................................................... 7, 12, 14, 15

**Statutes**

42 U.S.C. § 2000e ..................................................................................................... 1, 4, 6

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................... 5, 6

## Introduction and Factual Background

Plaintiff Alicia Kirton ("Plaintiff"), an African-American female, is employed by the Federal Emergency Management Agency ("FEMA" or the "Agency") as a Budget Analyst. Defs.' Stmt. of Undisputed Material Facts ("SMF") ¶¶ 1-3.  Plaintiff worked in the Budget Planning & Analysis Division ("BPAD") of the Office of the Chief Financial Officer ("OCFO"), a component of FEMA.  *Id.* ¶ 3.  As a Budget Analyst, Plaintiff's responsibilities included working with FEMA's program offices that were assigned to her to ensure that they were spending their funds effectively.  *Id.* ¶ 6.  Plaintiff's job duties required that she come into the office on a regular basis so that she could meet with her "customers," i.e., the program offices, to review and discuss their budget plans.  *Id.* ¶ 7.

While FEMA generally looked favorably upon telework, the FEMA Telework Manual also recognized that all jobs were not suitable for telework and that requests would necessarily be evaluated on a case-by-case basis.  *Id.* ¶¶ 9-10.  In addition, the FEMA Telework Manual made clear that "participation in telework is not an employee entitlement" and that a decision to approve or deny a telework was at the Agency's discretion.  *Id.* ¶ 9.  Within BPAD, the Agency required that Budget Analysts come into the office at least two days per week because that position had a customer service focus.  *Id.* ¶ 8.  Although some exceptions were made for employees who could provide an adequate justification, BPAD's managers generally required all employees come into the office at least two days per week.  *Id.* ¶¶ 14-18.

In December 2015, Plaintiff moved from her home in Chester, VA, to a new location in Florida.  *Id.* ¶ 32, 36, 38, 40.  Around this time, Plaintiff submitted requests to FEMA seeking permission to telework on a full-time (or nearly full-time) basis.  *Id.* ¶¶ 30, 36, 39, 41. Contemporaneous email communications establish that both before and after her family's move to Florida was completed in December 2015, Plaintiff requested permission telework from an

alternate work location at her former address in Virginia where she no longer resided.  *Id.*  Her managers within BPAD denied Plaintiff's request because the BPAD telework policy required Plaintiff to come into the office at least two days per week.  *Id.* ¶¶ 35, 37, 43, 45-47.  Moreover, her BPAD managers felt that Plaintiff failed to provide a sufficient explanation about how she could meet the customer service requirements of the position while teleworking full-time from Florida.  *Id.*

As a threshold matter, Defendants are entitled to summary judgment because FEMA's denial of her request to telework does not rise to the level of an adverse employment action that can support a discrimination claim.

But even were the Agency's denial of the telework request an adverse action, Plaintiff's discrimination claim cannot survive summary judgment.  Defendants' legitimate reasons for denying Plaintiff's telework request, which are captured in contemporaneous email communications and summarized in sworn declarations, easily satisfy Defendants' burden of production.  On the ultimate question on which Plaintiff bears the burden of persuasion, however, Plaintiff's evidence fails to give rise to a reasonable inference that her managers' articulated explanations for denying her telework request were pretext for unlawful discrimination.  Nor does Plaintiff offer any other evidence of unlawful discrimination that would allow her to present the claim to a jury.

Plaintiff will argue that discrimination can be inferred from the fact that the Agency permitted two of her white colleagues to telework, while denying her request.  Yet undisputed facts in the record establish that these two other employees were not similarly situated in relevant aspects of their employment such that a jury may reasonably infer that a decision to deny Plaintiff's telework request (while approving her white coworkers' requests) was the result of

discrimination, as opposed to the reasons that her managers provided.  No reasonable jury could infer discrimination from the comparator evidence in this case.  Relatedly, the record fails to support Plaintiff's allegation that the Agency failed to explain its reasons for deviating from applicable telework policies in granting exceptions to the two alleged comparators.

The undisputed record evidence establishes that the Agency evaluated each of the three employees' telework and/or duty station change requests on their relative merits.  Plaintiff fails to satisfy her evidentiary burden to show that improper motives factored into the Agency's decisions to approve the alleged comparators' telework requests or to deny Plaintiff's request. Defendants are therefore entitled to summary judgment on the discrimination claim.

## Procedural Background

### A.    Administrative Proceedings at the Agency and EEOC

In February 2016, Plaintiff filed an individual complaint of employment discrimination with the Department of Homeland Security ("DHS") / FEMA Office of Equal Rights alleging that the denial of her request for full-time telework was discrimination on account of her race. *See* Ex. 19 (2017 ROI Tab A-1).  On August 15, 2016, the Agency issued a Letter of Acceptance, defining the claim to be investigated for Agency Case No. HS-FEMA-25619-2016. Ex. 20 (2017 ROI Tab C-1).

On March 3, 2017, after the deadline for the Agency to complete its investigation expired, Plaintiff filed a hearing request with the Equal Employment Opportunity Commission ("EEOC"), which became EEOC Case No. 570-2017-00698X.  The Agency subsequently completed its Report of Investigation ("ROI") in October 2017.  After the parties conducted discovery in late 2017 and early 2018, Plaintiff withdrew her EEOC hearing request and requested a Final Agency Decision ("FAD").  The Administrative Judge issued an Order of Dismissal on February 16, 2018.  On April 4, 2018, the Agency issued a FAD.  *See* Ex. 21.

**B.**   **District Court Proceedings**

Plaintiff brought suit under Title VII of the Civil Rights Act of 1864 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, against DHS and FEMA.  Compl., July 3, 2018 (ECF No. 1).   Plaintiff filed an Amended Complaint on August 3, 2018, which became the operative Complaint in this matter.  Am. Compl., Aug. 3, 2018 (ECF No. 4).  In the Amended Complaint, Plaintiff claimed that the Agency discriminated against Plaintiff on account of her race and color when it denied her telework request.  Defendants filed an Answer to the Amended Complaint on September 21, 2018.  Answer, Sept. 21, 2018 (ECF No. 8).

The parties engaged in discovery from February 2019 through September 2019.  The parties exchanged written discovery but no depositions were taken.  *See* Pl.'s Resps. to Defs.' 1st Set of Discovery, Aug. 6, 2019 (Ex. 22); Defs.' Resps. to Pl.'s 1st Set of Discovery, Sept. 6, 2019 (Ex. 23).  After the parties completed the initial discovery period, the Court established a briefing schedule for Defendants' motion for summary judgment in October 2019.  In January 2020, the parties filed a Notice of Settlement and Motion to Vacate the Briefing Schedule.  Notice, Jan. 9, 2020 (ECF No. 18).  The parties' Notice reported that "the parties have reached a settlement in principle but are still in the process of reducing the terms of the settlement agreement to writing." *Id.* at 1.  Because the parties believed that the parties' settlement would render further litigation unnecessary, the parties requested that the Court vacate the briefing schedule. *Id.*

Yet after the parties had settled the case and their counsel had finalized the terms of the settlement agreement, Plaintiff's counsel informed Defendants' counsel in January 2020 that Plaintiff had changed her mind and would not be signing the parties' agreement.  Jt. Status Rpt., Feb. 7, 2020 (ECF No. 21).  Defendants determined not to move to enforce the parties' settlement agreement because Plaintiff is above the age of 40 and the parties' settlement included

an Older Workers Benefit Protection Act ("OWBPA") compliance provision that allowed

Plaintiff to revoke the agreement within seven days following its execution, which had not yet

occurred.  *Id.* at 1.  The parties therefore jointly requested that the Court enter a new briefing

schedule for Defendants' motion for summary judgment.

The Court granted Defendants a 30-day extension of time to file its dispositive motion.

One week before Defendants' motion came due under the enlarged briefing schedule, Plaintiff

advised Defendants that she planned to file a motion to reopen discovery.  *See* Jt. Mot. to Am.

Sched. Or., May 13, 2020 (ECF No. 25).  While Defendants objected to the relevance of the

information that Plaintiff wished to pursue through supplemental discovery, Defendants did not

oppose Plaintiff's request to reopen discovery.  *Id.* at 1-2.  The supplemental discovery period

was completed in June 2020.  *See* Defs.' Resps. to Pl.'s Suppl. Discovery Requests, June 12,

2020 (Ex. 24).  Defendants now move for summary judgment on Plaintiff's discrimination claim.

## Legal Standards

### A.    Motions for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  A "material fact" is one whose existence affects the outcome of the

case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" exists

when the non-movant produces sufficient evidence of a material fact so that a fact finder is

required to resolve the parties' differing versions at trial.  *Id.* at 249.

Summary judgment endeavors to streamline litigation by disposing of factually

unsupported claims or defenses and thereby determining whether trial is genuinely necessary.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The movant bears the initial burden

of identifying portions of the record that demonstrate the absence of any genuine issue of

material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp.*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex Corp.*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 575 (1986)).  A moving party may therefore succeed on summary judgment by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  A moving party may also succeed by pointing to the absence of evidence proffered by the nonmoving party.  *Id.*

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B.    Title VII of the Civil Rights Act of 1964

Title VII bars intentional discrimination or "disparate treatment."  42 U.S.C. § 2000e-16(a).  An employee bringing such a claim for relief "seeks to prove that an employer intentionally 'treats some people less favorably than others because of their race . . . [or] color.'" *Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019) (quoting *Segar v. Smith*, 738 F.2d 1249, 1265 (D.C. Cir. 1984)); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

Plaintiff "at all times" carries "the burden of proving 'that the defendant intentionally discriminated against' her. *Figueroa*, 923 F.3d at 1086 (quoting *Segar*, 738 F.2d at 1265); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  In a case such as this,

where there is only indirect evidence of intentional discrimination, Plaintiff may rely on the *McDonnell Douglas* three-step method of proof. *Figueroa*, 923 F.3d at 1086 (citing *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).

The first step of the *McDonnell Douglas* test requires the employee to establish a *prima facie* case, whereupon, at step two, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Wheeler*, 812 F.3d at 1113-14. Where the employer satisfies this burden of production, the "'burden then shifts back' to the employee, who must prove that, despite the [employer's] proffered reason, she has been the victim of intentional discrimination." *Figueroa*, 923 F.3d at 1086 (quoting *Wheeler*, 812 F.3d at 1114). This Circuit has emphasized that, at the summary judgment stage, the district court is generally expected to focus on prong three and to avoid getting caught up in "'largely unnecessary sideshow[s]' about what constitutes a *prima facie* case." *Id.* (quoting, then citing, *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)). But a court should not construe this emphasis on prong three as a reason to elide a serious inquiry at prong two. *Id.* at 1087 ("*Brady* does not pretermit serious deliberation at the second prong.").

**Argument**

<u>Defendants Are **Entitled to Summary Judgment on the Title VII Discrimination Claim.**</u>

**I.    The Denial of Plaintiff's Telework Request Does Not Constitute an Adverse Action.**

First, FEMA's decision to deny Plaintiff's request to telework to reduce her commute times did not amount to an adverse employment action as required to support a discrimination claim at summary judgment. "An adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Brown v. Jewell*,

7

134 F. Supp. 3d 170, 180-81 (D.D.C. 2015) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).  "If an action is not presumptively adverse, such as hiring and firing, '[a]n employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'"  *Id.* at 181 (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)). "Not everything that makes an employee unhappy is an actionable adverse action." *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (citation omitted

"Courts in this and other jurisdictions have repeatedly held that denial of a request to telework on its own does not constitute an adverse employment action."  *Brown*, 134 F. Supp. 3d at 181 (collecting cases); *see also Brockman v. Snow*, 217 F. App'x 201, 206 (4th Cir. 2007) ("A determination affecting [Plaintiff's] ability to work where she chooses is not the type of ultimate decision that this court has required for a *prima facie* case of discrimination."); *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 41 (D.D.C. 2013) (denial of employee's request to work from home, without more, does not constitute an adverse employment action under Title VII); *Homburg v. UPS*, Civ. A. No. 05-2144, 2006 WL 2092457, at *9 (D. Kan. July 27, 2006) ("[D]istrict courts . . . have consistently held that the denial of a request to work from home is not adverse employment action.").  In this case, FEMA's Telework Policy makes it clear that telework at the Agency "is not an entitlement and in no way changes the terms and conditions of employment with the Agency."  FEMA Telework Policy, Forward (Ex. 4); *see also* Defs.' SMF ¶ 9.  As a matter of fact and law, therefore, a reasonable factfinder could not find that FEMA's decision to deny Plaintiff's telework request materially affected the terms, conditions, or privileges of her employment.  *See Taylor*, 350 F.3d at 1293,

## II.     FEMA Offered Legitimate Justifications For the Challenged Action.

But even were the Court to deem it an adverse action, Defendants are entitled to summary judgment because Plaintiff fails to carry her evidentiary burden on the discrimination claim.  In a case such as this in which the employer proffers a non-discriminatory reason at summary judgment for the challenged employment action, "the district court need not—*and should not*—decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*." *Brady*, 520 F.3d at 494 (emphasis in the original).  Rather, the Court must resolve one central question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race [or] color[?]" *Id.* (citations omitted).  While not conceding that Plaintiff has actually made out a *prima facie* case on her disparate treatment claim, Defendants proceed directly to Step Two of the *McDonnell Douglas* framework.

In evaluating whether FEMA has satisfactorily articulated a "legitimate, nondiscriminatory reason for its action" at Step Two, this Circuit has emphasized four factors that are expected "to be paramount in the analysis for most cases."  *Figueroa*, 923 F.3d at 1087. First, the employer must produce evidence that would be admissible at trial for a finder of fact. *Id.* (citing *Segar*, 738 F.2d at 1268).  Second, "the factfinder, if it 'believed' the evidence, must reasonably be able to find that 'the employer's action was motivated by' a nondiscriminatory reason."  *Id.* (quoting *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1151 (D.C. Cir. 2004) (citations omitted)).  Third, the nondiscriminatory explanation must be "facially 'credible' in light of the proffered evidence."  *Id.* at 1088 (quoting *Bishopp v. District of Columbia*, 788 F.2d 781, 788-89 (D.C. Cir. 1986)).  Fourth, the evidence presented must provide a "clear and reasonably specific explanation" that is "articulated with some specificity." *Id.* (quoting *Segar*,

738 F.2d at 1269; *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979)) (citations omitted). Only if the defendant-employer satisfies these elements at step two is the court to move to step three and assess whether the plaintiff-employee has carried her burden to show that this proffered explanation is pretextual.

In this case, FEMA has asserted legitimate, non-discriminatory reasons for the adverse employment action, namely, the denial of Plaintiff's request for full-time telework.  First, BPAD's Telework Policy required all employees to report to their official duty station at least two days per week.  Defs.' SMF ¶¶ 17, 40, 46.  Second, while the Agency as a whole was becoming more telework friendly, BPAD leadership expected all Budget Analysts to be in the office at least two days per week because that position was customer-service oriented.  *Id.* ¶ 18.  Third, given the customer-focused demands of her position that required Plaintiff to collaborate with other FEMA employees, Plaintiff's direct supervisors felt that Plaintiff failed to provide a sufficient justification in support of her telework request as to how she could meet the demands of her position while working from home full time.  *Id.* ¶¶ 35, 37, 43, 45.  Fourth, Plaintiff had evidently created the circumstances underpinning her need for full-time telework by moving to Florida before she had requested (let alone obtain approval) for full-time telework.  *Id.* ¶ 45.  Fifth, her managers wanted to ensure equity with other staff members who were required to come into the office at least two days per week.  *Id.* ¶ 35.  Sixth, her managers were worried that granting Plaintiff's request would establish a new precedent that would encourage other employees to request similar arrangements, which might compromise BPAD's mission.  *Id.* ¶ 46.

FEMA thus provided legitimate and non-discriminatory reasons for its decision to deny Plaintiff's request for full-time telework.  Defendants' evidence easily satisfies all of the factors that the Circuit identified in the recent *Figueroa* decision.  *See* 923 F.3d at 1087.  First, the

evidence that FEMA has proffered includes contemporaneous documents and sworn declarations from the relevant decision-makers—all of which is presented in a form that would be admissible at trial. *See id.* Second, the evidence allows a reasonable jury to find that FEMA's actions were motivated by non-discriminatory reasons. *Id.* Third, the proffered explanation is "facially credible." *See id.* Fourth, FEMA has provided a clear and reasonably specific explanation for the challenged action. *See id.* Defendants have thus satisfied their burden of production with respect to the challenged action that forms the basis of the discrimination claim against FEMA.

## III. Plaintiff Fails to Offer Evidence From Which a Reasonable Jury Could Infer Discrimination.

### A. Plaintiff's Alleged Comparators.

The question then becomes whether, at Step Three of the burden-shifting analysis, Plaintiff produced sufficient evidence for a reasonable jury to find that FEMA's non-discriminatory reason was not the actual reason and that FEMA intentionally discriminated against Plaintiff on the basis of race or color. *See Brady*, 520 at 494-95; *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019). One way for a plaintiff to establish pretext is to present "evidence suggesting that the employer treated other employees of a different race [or color] . . . more favorably in the same factual circumstances." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (internal quotation marks omitted). "By demonstrating that similarly situated employees were treated differently, such evidence tends to '[suggest] that the employer treated other employees' outside the plaintiff's protected class 'more favorably in the same factual circumstances,' giving rise to the inference that the plaintiff was treated less favorable on account of his or her protected status." *Walker v. McCarthy*, 170 F. Supp. 3d 94, 108 (D.D.C. 2016) (quoting *Brady*, 520 F.3d at 495). "To raise such an inference, however, the plaintiff must 'demonstrate that all of the relevant aspects of [his] employment

situation were nearly identical to those of the other employee.'" *Id.* (quoting *Burley*, 801 F.3d at 301).

"Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties [and] whether they [dealt with] the same supervisor[.]" *Wheeler*, 812 F.3d at 1116 (citing *Burley*, 801 F.3d at 301). "The question of whether employees are similarly situated in order to show pretext 'ordinarily presents a question of fact for the jury.'" *Id.* (quoting *George v. Leavitt,* 407 F.3d 405, 414 (D.C. Cir. 2005)). At the summary judgment stage, however, where a plaintiff relying on comparator evidence fails to produce "evidence that the comparators were actually similarly situated to [her], an inference of falsity or discrimination is not reasonable," and summary judgement is appropriate. *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008) (internal quotations omitted) (quoting *Waterhouse v. District of Columbia*, 298 F.3d 989, 995-96 (D.C. Cir. 2002)).

Plaintiff alleged in the Amended Complaint and in her responses to Defendants' interrogatories that discrimination may be inferred because two of her white coworkers, Mark Miller and Jennifer Wohltman, were permitted to telework whereas her request was denied. *See* Am. Compl. ¶¶ 21-70 (allegations concerning Miller's and Wohltman's respective telework arrangements); Pl.'s Resp. to Defs.' Interrog. No. 1 (contending that a jury could infer discrimination from the fact that "Plaintiff was treated differently than two similarly situated comparators who were Caucasian"). As explained below, however, the allegations and evidence in this case fail to give rise to any reasonable inference that Plaintiff was treated less favorably than her purported comparators on account of her protected status.

### 1.    *Wohltman Is Not a Suitable Comparator.*

Wohltman was permitted to telework from her home in New Jersey, but the undisputed record evidence demonstrates that she was not similarly situated to Plaintiff because they held different positions with distinct job responsibilities.  As a Budget Analyst, Plaintiff's work demanded that she meet regularly in person with the FEMA program offices to discuss their budget plans.  Defs.' SMF ¶¶ 4, 6-7.  Representatives from FEMA's program offices routinely come into BPAD's offices in FEMA Headquarters to meet in person with Budget Analysts, including Plaintiff.  *Id.* ¶ 7.  For this reason, Plaintiff's supervisors felt it was important to have Plaintiff and other Budget Analysts physically in the office at least two days per week, which was also the minimum number of days required under the BPAD Telework Policy.  *Id.* ¶¶ 7, 18.

As an Accountant, Wohltman's duties did not benefit as much from or needed face-to-face interaction that would require her to come into the office.  *Id.* ¶ 28.  Wohltman's work was performed independently.  Her sole customer was the OCFO FEMA Finance Center in Winchster, VA, which was 75 miles from FEMA's Headquarters in Washington, DC.  *Id.* ¶¶ 26, 28, 61-65, 68.  Therefore, there was less of a need for Wohltman to come into Headquarters.[1]

The distinction between their job duties coupled with Defendants' unrefuted evidence that Plaintiff's work for FEMA demanded collaboration with other FEMA employees "significantly undermines any easy comparison" between Plaintiff and Wohltman.  *See Walker*, 170 F. Supp. 3d at 109.  "In this regard, the relevant aspects of the plaintiff's employment are

---

[1]    Other considerations regarding Wohltman's personal circumstances further distinguished her situation from Plaintiff.  Wohltman had a baby and her husband was working in New Jersey.  Defs.' SMF ¶ 65.  Her managers were worried that if they terminated her telework agreement that Wohltman would leave the Agency.  *Id.*  Understandably, the Agency wanted to avoid thatoutcome because Wohltman was the only Accountant within BPAD and she was a high performer with a strong track record.

also not so 'nearly identical' to [her] proposed comparator[] to raise a genuine factual issue as to

whether the agency failed to grant [her] long-term remote-work request due to [her] race." *Id.*;

*see also Kline v. Springer*, 602 F. Supp. 2d 234, 240 (D.D.C. 2009) (employees with different

employment grades and different job responsibilities deemed not to be similarly situated for

purposes of race-based disparate treatment claim).

### 2.    *Miller Is Not a Suitable Comparator*

Nor can a reasonable jury infer discrimination from the fact that the Agency permitted

Miller to change his official duty station and/or telework from his home in Oklahoma.  It is

undisputed that Plaintiff and Miller held the same position as Budget Analysts.  Yet, Plaintiff is

"required to demonstrate that all of the relevant aspects of her employment situation were 'nearly

identical' to those of the [proffered comparators]." *Neuren v. Adduci, Mastriani, Meeks &

Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (citation omitted).  Apart from their job titles, other

relevant aspects of their employment situations were very different.

First, the Agency's decisions in 2012 through 2013 to allow Miller to telework from his

home, including the decision in mid-2013 to allow Miller to change his duty station to

Oklahoma, were made by different supervisors than the ones who later made the decision a few

years later in January 2016 to deny Plaintiff's telework request.  *See Wheeler*, 812 F.3d at 1116

(citing as a factor that courts look to in determining whether employees are similarly situated

"whether [the plaintiff and putative comparator] were disciplined by the same supervisor").

Miller's first and second level supervisors who were primarily responsible for the

Agency's decisions concerning his telework and duty station arrangements were Mike Darby and

Evan Farley, respectively.  Defs.' SMF ¶¶ 20-22.  Benson became Miller and Plaintiff's second-

level supervisor in June 2013 when she became the Deputy Budget Director for OCFO.  Benson

Decl. ¶ 2 (Ex. 5).  By the time Benson joined FEMA, Miller had already been working from his

home on a full time basis for a number of months.  *Id.* ¶ 4.  Benson "was not involved in the

decision-making regarding Miller's duty station change or remote work arrangement."  *Id.*

Farley, who was Benson's first-level supervisor at the time, instructed Benson "that so long as

Miller was performing adequately, we were not going to take any action regarding Miller's work

arrangement."  *Id.* ¶ 6.  The BPAD managers who initially established Miller's remote work

arrangement all eventually left the Agency.  *Id.* ¶ 7.  Benson followed her supervisor's directive

and allowed Miller to continue working remotely because he was performing adequately.  *Id.* ¶ 8.

A few years later, Melissa Ellis replaced Darby as Miller and Plaintiff's first-level

supervisor in April 2015 when she became the Acting Funds Control Branch Chief within

BPAD.  Ellis Decl. ¶ 3. (Defs.' Ex. 3).  Ellis will testify that she was not entirely comfortable

with Miller's telework arrangement because it was not consistent with BPAD's telework policy.

*Id.* ¶ 4.  Ellis permitted Miller to continue teleworking, however, because the decision had

already been made.  Miller was essentially "grandfathered" into a preexisting work arrangement,

his work performance was satisfactory, and changing his duty station to Washington, DC, would

have required uprooting Miller from Oklahoma.  *Id.* ¶¶ 4-5.

Miller is therefore not an appropriate comparator in this respect because they dealt with

different supervisors when they made their respective telework requests.  *See Johnson v. Wash.*

*Metro. Area Transit Auth.*, 314 F. Supp. 3d 215 (D.D.C. 2018) (black female employee of transit

authority, who was demoted for performance issues, was not similarly situated to two co-workers

outside her class who allegedly engaged in same errors but were not demoted, and thus employee

failed to establish pretext for race and sex discrimination in her demotion in violation of Title

VII; among other factors, co-workers did not have same supervisor); *Sledge v. District of*

*Columbia*, 63 F. Supp. 3d 1, 18 (D.D.C. 2014) (rejecting comparator evidence at summary

judgment because, among other reasons, "the record does not establish that the deciding official in the comparison cases was the same as in [the plaintiff's] case—a crucial variable if any legitimate inference regarding intentional discrimination is to be drawn"); *Phillips v. Holladay Prop. Servs., Inc.*, 937 F. Supp. 32, 35 (D.D.C. 1996) (noting that the decision-maker or supervisor must be the same for the employees to be similarly situated);

Second, Miller and Plaintiff provided different justifications for requesting full-time telework, which properly factored into the Agency's decisions on both requests. Miller was permitted by his supervisors to telework for medical reasons. The Agency initially permitted Miller to telework in 2012 so he could be with his wife while she underwent medical treatments. Defs.' SMF ¶ 20. The following year, the Agency agreed to extend Miller's telework arrangement due to his own documented medical issues. *Id.* ¶¶ 21-22. After Miller's performance declined, this prompted the Agency to revisit Miller's telework arrangement in 2016. At that time, the Agency permitted Miller to continue his telework arrangement on a temporary basis as a reasonable accommodation for his medical problems. *Id.* ¶¶ 54-55. The basis for Plaintiff's request was not an unplanned medical issue. The purported reason for Plaintiff's telework request was her 2.5 to 3.0 hour commute to and from her home in Chester, VA. *Id.* ¶¶ 30-31, 36, 41, 43. The unstated but actual reason for her request was her decision to move to Florida. *Id.* ¶¶ 31, 33, 36, 38, 43, 45. As Benson explained, "it was rather presumptuous of [Plaintiff] to move to Florida before she obtained approval for her request for full-time telework." Benson Decl. ¶ 20. "This was different from Miller's situation, because he and his wife had unplanned medical issues." *Id.*

For example, in *Franklin v. Potter*, 600 F. Supp. 2d 38, 65 (D.D.C. 2009), an employee brought an action against the Postal Service alleging, among other claims, race discrimination

16

under Title VII.  In granting the Postal Service's motion for summary judgment, the court found

that the plaintiff failed to produce sufficient evidence that his employer's asserted reason for

denying his light duty requests was pretext for unlawful discrimination.  *Id.* at 65.  Of particular

relevance to this case, the court found that the plaintiff's evidence regarding a purportedly

similarly situated female co-worker's light duty request was insufficient to show that the

employer's reasons for denying the plaintiff's request was merely a pretext for discrimination.

*Id.*  The court found "many distinctions" between the plaintiff and the alleged comparator's

situations and requests.  *Id.*  The "plaintiff's wrist limitations stemmed from an occupational

injury for which defendant lacked proper documentation" and there was "no evidence that [the

comparator's] injury was either work-related or insufficiently documented."  *Id.*  In addition, the

two employees' respective disabilities and work limitations were "not the same."  *Id.*

 In the same way here, Miller and Plaintiff's differentiating circumstances distinguish the

Agency's treatment of their respective telework requests.  Plaintiff therefore fails to establish that

she and Miller were "similarly situated" because "all of the relevant aspects" of their

employment situations were "nearly identical."  *See Royall v. Nat'l Ass'n of Letter Carriers,*

*AFL-CIO*, 548 F.3d 137, 145 (D.C. Cir. 2008) (allegation other employees were treated more

favorably could not establish pretext where plaintiff had not shown "all of the relevant aspects of

his employment were nearly identical" (internal quotation marks omitted)); *McFadden v. Ballard*

*Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1 (D.C. Cir. 2010) (finding that plaintiff did not

establish pretext for discrimination because Caucasian support staff employees at law firm who

were given time off rather than being terminated were not similarly situated to an African-

American secretary who was terminated; the plaintiff was terminated for being unable to perform

essential functions of her job due to permanent medical condition; other employees were given

time off in order to recover from a stroke, receive treatment for cancer, travel, or care for a newborn); *Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 73 (D.D.C. 2005) (finding that plaintiff was not sufficiently situated to alleged comparators to establish that defendant's proffered justification was pretextual; the comparators' specific medical conditions left no potential for doubt as to the veracity of their claims for sick leave, whereas plaintiff failed to exhibit any verifiable signs or documentation of any medical ailment).

Third, to the extent that Plaintiff's and Miller's situations were comparable in certain respects, the record fails to establish that FEMA treated Miller more favorably than Plaintiff. *See McIver v. Esper*, --- F. Supp. 3d ----, Civ. A. No. 16-1448 (DLF), 2020 WL 2043888, at *11 (D.D.C. Apr. 28, 2020) ("In short, the Pentagon's treatment of [alleged comparator] does not give rise to an inference that its stated justification for its treatment of [plaintiff] were pretextual. As explained, [alleged comparator] was not similarly situated to [plaintiff], nor was he treated more favorably than [plaintiff] in relevant respects."). Miller was permitted to telework due to his documented medical problems, provided that he performed adequately. Defs.' SMF ¶ 24. Over time, however, Miller's performance declined. At that time, FEMA decided to revisit Miller's duty station and telework arrangements. His managers attempted to change his duty station from Oklahoma to FEMA's Headquarters in Washington. *Id.* ¶¶ 50-51. His managers' desire to change Miller's duty station back to headquarters was motivated by many of the same reasons that the Agency denied Plaintiff's request for full-time telework. They felt that Miller's performance would improve if he came into the office for face-to-face client interaction and collaboration with colleagues at least two days per week. *Id.* ¶ 52.

In response, Miller requested that he be permitted to continue working from home as a reasonable accommodation for his ongoing medical problems. *Id.* ¶¶ 53, 55. The Agency

engaged in the interactive process with Miller and also placed him on a Performance Improvement Plan.  *Id.* ¶ 55-58.  His managers permitted Miller to continue to work from home on an interim basis as a reasonable accommodation for his documented medical problems.  But ultimately, Miller was removed from FEMA due to his lagging performance and because the Agency determined that he was no longer performing acceptably while working remotely.  *Id.* ¶ 58.  That hardly suggests that the Agency treated Miller more favorably than Plaintiff, who remains employed by FEMA.  No reasonable jury could infer from the undisputed record evidence that Plaintiff and Miller were similarly situated or even that the Agency treated Miller more favorably than Plaintiff.

### B.    The Alleged Deviations From Standard Procedures

Finally, Plaintiff further alleges in the Amended Complaint that "deviations from standard procedures may give rise to an inference of pretext."  Am. Compl. ¶ 86.  This allegation that merely consists of a couple of case citations from outside of this Circuit and which is devoid of facts also appears in Plaintiff's response to Defendants' interrogatory.  *See* Pl.'s Resp. to Interrog. No. 1 at 5-6 (Ex. 22).  Plaintiff's unsupported and conclusory allegation that the Agency deviated from its standard procedures fails to give rise to a reasonable inference of pretext.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013) (at summary judgment stage, non-moving party can no longer rest on mere allegations but must set forth by affidavit or other evidence specific facts).

First, Miller's long-standing telework arrangement did not violate either FEMA's or BPAD's policy.  FEMA's policy stated that that "[i]f the employee does not regularly commute into the agency office at least twice each biweekly pay period, the official duty station must be changed to the alternate worksite."  Defs.' SMF ¶ 11.  BPAD's policy required that all employees report to their duty station at least two days per week.  *Id.* ¶ 17.  Because the Agency

formally changed Miller's official duty station to his Oklahoma home, his telework arrangement did not violate either policy.  *Id.* ¶¶ 19, 22-24.

It is undisputed that for the period of time that preceded the Agency's decision in August 2016 to change Wohltman's duty station to New Jersey that her full-time telework arrangement was not consistent with FEMA's or BPAD's telework policies.  In this Circuit, however, it is only an "*unexplained* inconsistency [that] can justify an inference of discriminatory motive." *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003) (emphasis added).  The record in this case includes a detailed explanation from Wohltman's supervisors as to why for a period of time they granted her permission to telework full time without changing her official duty station. Moreover, this Court should "decline to second-guess an employer's personnel decision absent [a] demonstrably discriminatory motive" that is lacking here.  *See Milton v. Weinberger*, 696 F.2d 94, 10 (D.C. Cir. 1982).

Benson and her superiors considered changing Wohltman's duty station but decided against it because they were unsure how long she would stay with the Agency and they did not want to go through the trouble of changing her duty station if she was going to leave shortly thereafter.  Defs.' SMF ¶ 27.  In addition, the locality pay in New Jersey was higher than in Washington, DC, which meant that they would have had to increase Wohltman's pay.  *Id.* Furthermore, the reasons that the Agency was generally favorable to the idea of allowing Wohltman to telework are summarized in the previous section.  But again, these include: the independent nature of Wohltman's work as an Accountant; there was less of a need for her to report to her official duty station in Washington two days per week because the FMA employees whom she served were located at the FEMA Finance Center in Winchester, VA; and Wohltman was a valuable employee who had demonstrated that she could perform her duties at a high level

while teleworking from New Jersey.  Defs.' SMF ¶¶ 25-29.  The Agency later took steps in 2016 to change Wohltman's duty station to New Jersey to bring her telework arrangement into conformity with FEMA and BPAD's telework policies.  *Id.* ¶¶ 59-68.

It is undisputed that the Agency granted Wohltman an exception to the applicable telework policies, but "[a single] data point alone is not sufficient to carry the plaintiff's burden of demonstrating pretext."  *Vinh v. Wash. Metro. Area Transit Auth.*, 299 F. Supp. 3d 75 (D.D.C. 2018).  As another member of this Court observed, "[o]ne incident in a twenty year period" where someone was treated differently "does not prove much."  *Id.* at 83; *see also Marcelus v. CCA of Tenn., Inc.*, 691 F. Supp. 2d 1, 8 (D.D.C. 2010) ("One instance of disparate treatment hardly constitutes a pattern that would justify an inference of intentional discrimination[.]").

An employer's "reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, and that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (citation omitted).  None of the evidence proffered by Plaintiff proves that the Agency's reasons for granting Miller's and Wohltman's telework requests and for denying Plaintiff's telework request were false or that race discrimination was the real reason for these decisions.  *See id.*

## Conclusion

The challenged decision to deny Plaintiff's telework request does not constitute an adverse action that can support a discrimination claim.  Furthermore, Plaintiff fails to produce evidence sufficient for a reasonable factfinder to find that Defendants' legitimate reasons for denying her telework request were pretext for discrimination against Plaintiff on the basis of race or color.  Therefore, Defendants respectfully request that the Court grant summary judgment in their favor.

Dated: September 9, 2020                Respectfully submitted,

                                        MICHAEL R. SHERWIN
                                        Acting United States Attorney

                                        DANIEL F. VAN HORN
                                        D.C. Bar 924092
                                        Chief, Civil Division

                            By:      /s/ Daniel P. Schaefer
                                        DANIEL P. SCHAEFER
                                        D.C. Bar 996871
                                        Assistant United States Attorney
                                        555 4th Street, N.W.
                                        Washington, D.C. 20530
                                        (202) 252-2531
                                        Daniel.Schaefer@usdoj.gov

                                        *Counsel for Defendants*