# EXHIBIT 1

# TAB F-1

# Affidavit of Alice Kirton, dated June 18, 2017

## Affidavit of Alice Kirton

I, **Alicia Kirton** am an  _X_  employee of ___applicant to __ former employee of Federal Emergency Management Agency:

(Office) OCFO

(Division) Budget and Analysis Division

(Branch) Funds Control

Located in Washington, DC

In the capacity of Budget Analyst

Grade __GS-13_____ between (date)_ 9/2007_____ and (date)_____ current __x_____

My telephone number during working hours is ____804-691-4796_____

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against Department of Homeland Security, Federal Emergency Management Agency.  I must provide a statement for the investigative report which is true and complete to the best of her knowledge and which discloses all of her firsthand knowledge having a bearing on the merits of the complaint. The statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and Federal Emergency Management Agency. The Complainant and the appropriate departmental officials involved in the EEO complaint process will receive the entire investigative file.  I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate.  I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear ___x_____ affirm ____x_____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raise with me by the investigator.

Initials _ARK_____                                            1

1. **What is your name, position title, series, and grade?**

answer: Alicia R. Kirton, Budget Analyst, 0560/ 13

2. **How long have you worked for the U.S. Department of Homeland Security?**

answer: 10 Years

3. **What is your race?**

answer: African American

4. **What is your color?**

answer: Brown

5. **What are your job duties?**

answer: Allocate funds to each assigned program with the IFMIS (Funding system) system, ensure the program funding is balanced. Approved lines of accounting in the BRT (budget reporting Tool) system based on the approved FDD (Funds Disposition Document) other duties as assigned

6. **Who is your first and second-line supervisor? Please list title and grade.**

answer: Melissa Ellis, Supervisor (Funds Control Branch) – GS-15

*The following has been accepted for investigation:*

*Issue #1*
*On January 21, 2016, your request to work from home 100% based on meeting the criteria's outlined in the FEMA telework policy and/or change your duty station and telework schedule; result ending in the request being denied to include the change of duty station. Management approved similar requests from two similarly situated Caucasian employees in your division.*

7. **When did you request to change your duty station?**

answer: request was December 22, 2015

8. **Why were you requesting to change your duty station?**

answer: Based on my supervisors' denial of my 100% telework request. It was my understanding that changing my duty station was also denied.

Initials _ARK_____                                                 2

9. **Was your request for a duty station change verbal or in writing?**

answer: Initially in November 2015, it was verbal. Then I made the request again based on my supervisor Melissa Ellis's response to my 100% telework request which was based on the agencies telework policy

10. **If in writing, who did you submit your request to?**

answer: In my supervisor Melissa Ellis's Written denial on December 29, 2015 to grant me the privilege of 100% telework, she mentioned the change of duty station as if it was an option yet there was still a continual denial.

11. **Who denied your request to change your duty station?**

answer: Melissa Ellis, Supervisor

12. **What reason were you given for the denial of your request to change your duty station?**

answer: My supervisor Melissa Ellis stated my job required me to be in the office based on a position description that was written back in 2007 which was before the technology changes were implemented. Along with that comment, she stated the BPAD policy for telework doesn't allow me to perform 100% telework. However, the BPAD policy has not been seen in writing.

13. **Did you speak with anyone in management regarding the denial of your request to change your duty station?**

answer: Yes; however not as an individual subject matter, Shalini Benson, my the 2nd line supervisor at the time (no longer with OCFO). She verbally stated that it wasn't where I performed the work but it was the work that was priority. When I later remind her of what she stated, she denied making the statement

14. **Who did you speak with?**

answer: Shalini Benson (former OCFO Deputy Budget Director)

**When did you speak with he/she?**

answer: Initially in October 2015, after I returned from my brother's funeral, then Feb 2, 2016 and April 19, 2016. (via Email)

15. **What response did you receive?**

answer: No comment from Shalini Benson pertaining to the change of duty station however; she agreed with Melissa Ellis that it was the supervisor's choice as to who she allowed the privilege to partake in the 100% telework. The change of duty station request became lost in the request.

Initials _ARK_____                                   3

**16. Are you aware of any similarly situated employees whose request to change duty station requests were approved?**

answer: Yes, I am aware of a fellow co-worker, Mark Miller's duty station was changed to his home state of Oklahoma after they allowed him to perform the 100% telework for well over a year if not two years.

**17. If so, can you provide their names, titles, race, and color?**

answer: Mark Miller was a Sr budget analyst but they changed his title (unsure what it is) sometime after they changed his duty station; GS14 Caucasian

**18. Why do you believe your race was a factor in your request for 100% telework based on the Telework policy or to change my duty station being denied?**

answer: My request was in line with all the criteria according to the policy guidance of receiving the privilege, yet after numerous justification had to be given to my supervisor. I ensured my information was based on the scope of the policy, yet I was still denied. Then later in the year I requested the privilege in order to heal properly from surgery and continuous probing, request for additional information, and questions concerning the validity of request, was being performed, while blatantly ignoring the risk of further injury of my knee. I informed Melissa Ellis I had medical issues during our first conversation and she told me to send her an email explaining how I would perform my duties from home. Yet despite the option of 95-100% telework being a privilege in place no non bias consideration was given. Her behavior gave the perception of abuse of power with no sensitivity or lack of staff centered concern for me as an employee, yet the Caucasians where not put through the same vigorous process (base on fellow co-worker random unofficial discussions).

For example, initially Mark Miller, a Caucasian co worker was allowed to perform 100% telework to take care of his wife, when an African American co worker asked for the same privilege to take care of her brother she was told that the telework policy doesn't allow you to work from home to take care of family members.

Another example: Jennifer Wolthman, a Caucasian co worker was hired and immediately allowed to perform 100% telework from New Jersey because her husband changed employment locations. Jennifer Wolthman places on the calendar that she comes into the office two days a week but does not. The Records from security downstairs can provide accurate documentation as we must use our ID Card to gain access into and out the office building.

Another example: Dr. Cladie Spears, an African American CFO Employee was on deployment in 2016 and her mother became ill with declining health; She requested 100% telework and was granted a few weeks and then told to return to work or request FMLA or request leave. The African American employee expressed the financial hardship of taking LWOP and undue stress being denied to continue 100% telework until her mother health moved to a stable position and

Initials _ARK_____                                          4

no options was offered other than advance leave. This employee had no job issues with job performance prior or during time away from the office; during 100% telework. She submitted reasonable accommodation documents and completed the FMLA required documents as part of the continuous back and forth with the CFO leadership.

**19. Why do you believe your color was a factor in your request for a change in duty station being denied?**

answer: When I returned from performing military duty, Melissa Ellis and I had a meeting and I was very honest with her and told her that I was dealing with some health issues that occurred while I was on active military duty.  If changing my duty station or allowing me to telework 100% is based on circumstance, it would have been fair and equitable to review my situation with the care, and consideration of the opportunity granting the privilege as the Caucasian individuals.  Although both changing my duty station and working from home is a privilege based on the supervisor's discretion, only the Caucasian people has been permitted to do so. An Example: one Caucasian person (Donald Bunn) was allowed to perform the 100% telework until he was ready to retire (sometime in 2016 or mid-late 2015).

**20. When did you request telework?**

answer: Initially the 100% telework request was made December 18, 2015

**21. Why were you requesting 100% telework?**

answer: 1. It provided me the opportunity to follow the doctor's health plan and deal with my health issues in a more discreet manner. 2. It is a privileged opportunity (that I met all criteria's) for all employees as a way to save the government money, 3. It provided me a better quality home/work life balance.

**22. Was your request for 100% telework verbal or in writing?**

answer: My request was in writing

**23. If in writing, who did you submit your request to?**

answer: Based on the regulation it was sent to my first line supervisor Melissa Ellis

**24. Who denied your 100% telework request?**

answer: My supervisor Melissa Ellis

**25. What reason were you given for the denial of your 100% telework request?**

answer: Initially it was based on what she called a BPAD policy that was never given to employees whom the policy governs. If BPAD had such a policy, why wasn't it provided to me

Initials _ARK_____                                             5

upon my return from active military deployment yet the FEMA telework policy was given. Nor was it provided to new hire employees. It was only a verbal from management

26. Did you speak with anyone in management regarding the denial of your telework request?

answer: Yes, I did

27. Who did you speak with?

answer: I spoke with Benjamin Moncarz who is the Budget Division Director (my 3rd line supervisor) and Matthew Allen who was the OCFO Sr. Advisor (based on the FEMA telework appeal policy guidance)

28. When did you speak with he/she?

answer: Approximately, after the holiday's (January or February 2016). I sent an email to have documentation of our conversation

29. What response did you receive?

answer: Shalini Benson who was my 2nd line supervisor and not considered part of the executive staff at the time sent a reply stating there was no appeal process and informed me that there is a BPAD telework policy that required me to come into the office and she concurred with my 1st line supervisor Melissa Ellis's decision. No one in the executive staff replied even though, the FEMA Telework policy states I had to send my appeal to the executives which is typically considered the Sr. Advisor, Deputy CFO, and the CFO.

30. Are you aware of any similarly situated employees whose telework requests were approved?

answer: Yes

31. If so, can you provide their names, titles, race, and color?

answer: Mark Miller (was Sr. Budget Analyst) GS 14 Caucasian white allowed to telework 100% on a permanent basis

Jennifer Wolthman Accountant GS 14 Caucasian White allowed to telework 100% on a permanent basis

Donald Bunn (Retired) GS 14 Caucasian white was allowed to telework 100% until shortly before he retired

**Why do you believe your race was a factor in your telework request being denied?**

Initials _ARK_____                                    6

answer: there has been other African American employees (who has left the agency) who requested the 100% telework privilege and was denied. The denial is never based on work performance but it has been based on a Caucasian supervisor denying an African American and using the justification that it's the supervisor prerogative to choice to approve or deny. The horrible perception and inventory of employees have a common theme; they are African American.

Examples:
Reldia Larguet (Retired) African American Denied 100% telework to support her permanent health challenges
Greg Flippins (went to another federal Agency) African American Denied 100% telework to support his permanent health challenges

**32. Why do you believe your color was a factor in your telework being denied?**

answer: I believe color is a factor because my chain of command behavior and decisions are influences by their racial prejudices. The only difference between the Caucasians who are granted the privilege and my self who was denied is my color.  Our work is very similar and all work can be performed from home; proven over and over and over again by myself and others. The supervisor is Caucasian and continuously states in a condescending tone (verbal and nonverbal) its her choice who she approves and who she doesn't. Yet she chose to grant the Caucasians the privilege based on her authority as a supervisor but utilizes the same supervisor authority to deny me an African American the same privilege.

**33. Is there anyone we could speak with that may have knowledge of this incident?**

answer: Yes

**34. If so, who are they and what knowledge do they have of the incident?**

answer:
Jocelyn Chapman: An African American BPAD coworker, aware of the situation and has had to file a case with the union on Caucasian management
Lisa Baynes (resigned) but is aware of the discriminatory behavior
Sharon Poynter: An African American BPAD coworker, aware of the discriminatory behavior
Joyce Simpkins:  an African American BPAD coworker, newly employed and has discussed the unequitable behavior of Caucasian management
Beverly Pearson: An African American BPAD coworker, aware of the situation and has had to file a grievance with the union on management; and said to have received favorable results
Charlene Washington: An African American BPAD coworker, aware of the situation and has had to file a grievance with the union on Shalini Benson (non African American) management
Benjamin Moncarz: Caucasian, 3rd line supervisor Budget Officer
Annemarie Juhiln: Caucasian, 2nd Line Supervisor
Antonio Carter: African American (went to another agency)

Initials _ARK_____                                                7

Lavonia Michelle Fontane:  and African American CFO coworker, was denied the privilege yet her Caucasian supervisor performed the additional telework at will.
Dr. Cladie Spears: An African American CFO coworker, aware of the situation and is currently being denied the same privileges as Caucasian coworkers
Carl Bowser: A Caucasian CFO coworker, the telework continuity manager. He maintains all the approved and denied telework request. Therefore, he is aware of my request and denials
Timothy Willenbucher: A Caucasian Director of Business Operations and was also a part of the team to implement the Telework policy within the Office of Chief Financial Office (OCFO) and is aware of the Caucasian Mark Miller's 100% teleworking
Cherri Price:  an African American CFO coworker is the Administrative Officer and is aware that the Caucasians are permitted the privilege but no African Americans

**35. Is there anything else you would care to add?**
It has already been proved in several other employee complaint cases filed within OCFO with the union against Shalini Benson (and other leadership members) exemplifies no integrity

The majority of the employees in the office are aware of the Caucasian people being afforded the privilege to perform 100% telework and no African American has been afforded the same privilege for the same length of time

There are some people that work in the office has never met Mark Miller because he hasn't been required to come in the office, and very few has seen Jennifer Wolthman

There are times that the Caucasian employees are allowed to telework and do not properly document it (this information was obtained from general conversation in the office from a few Caucasian coworkers.

The response from management is continuously that it's the supervisor discretion to allow the 100% telework privilege, yet it appears they are turning a blind eye to the ethics rule of a supervisor not performing actions that gives the perception of discriminatory behavior. The 100% telework policy privilege is suppose to be afforded to everyone due to the precedent being established that the work can be performed at home and it saves the government money and improve the quality of work-life balance. Yet the Budget Planning and Analysis Division (BPAD) speaks of a BPAD policy (never seen or published) where the exceptions to the policy being based on one person's perception of a situation yet the FEMA telework policy is a privilege that gives additional guidance on granting the privilege based on accommodations for the employees

Everyone is said to have a telework agreement in place but the privilege to perform it at the 100% rate is only given to the Caucasians (what I am currently aware of)

There is a large disparity within the BPAD section of how some are allowed to perform unscheduled telework more than others which again gives off the perception of favoritism or the privileged and the non privileged

Initials _ARK_____                                      8

The denials have never been stated that the mission is not being accomplished or the work is not being performed

The Caucasian Mark Miller's duty station was changed, and as a result, the agency pays for his flight, and hotel (which to my knowledge the last time he was in the office was July 2015) The justification provided is the fact that his coming to the office is now considered a TDY. There are many African American employees who have left because of the disparity of treatment of allowing Caucasian people to utilize privileges but not the African American

*I have read the above statement consisting of 4 pages. It is true and complete to the best of my knowledge and belief. I made all the necessary corrections and additions, initialing next to each. I have also signed and initialed each page. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties. In accordance with 28 U.S.C. Section 1746, I declared under penalties of perjury that the above statements are true and correct to the best of knowledge, information and belief.*

Alicia Kirton                                    18 June 2017
**Signature**                                    **Date**

Initials _____                                 9