# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICIA KIRTON,<br><br>       *Plaintiff*,<br><br>  v.<br><br>CHAD WOLF, Acting Secretary, Department of Homeland Security, and FEDERAL EMERGENCY MANAGEMENT AGENCY,<br><br>       *Defendants*. | Civ. A. No. 18-1580 (RCL) |

## DECLARATION OF MELISSA ELLIS

I, MELISSA ELLIS, hereby declare the following is true and correct to the best of my knowledge and belief:

1.       I am competent to testify in this matter and have personal knowledge of the facts stated in this Declaration.  I am aware of Plaintiff Alicia Kirton's claims in this matter that my employer, the Federal Emergency Management Agency ("FEMA"), discriminated against her based on her race and color when it denied her request for full-time telework and a change of her duty station.  I am also aware that I am providing this Declaration in support of FEMA's motion for summary judgment.

2.       I started working at FEMA in 2006 as an Accountant in FEMA's Office of the Chief Financial Officer ("OCFO") and remained in that job title until 2009 when I became a Budget Analyst in OCFO.  In July 2014, I took a position as a Management and Program Analyst in the National Preparedness Directorate within FEMA where I worked until April 2015 when I took a position as a Supervisory Budget Analyst in the Budget Planning and Analysis Division ("BPAD") in OCFO, which is where I continue to work.

3.      In the Supervisory Budget Analyst position I took in April 2015, I served as the

Acting and then permanent Funds Control Branch Chief within BPAD.  In this new role, I

supervised a number of individuals, including Plaintiff Alicia Kirton, Mark Miller, and Jennifer

Wohltman, among others.  At the time I assumed my new role in April 2015, Miller and

Wohltman were already working from their homes full-time and nearly full-time, respectively.

**A.      Mark Miller's Change in Duty Station in 2013**

4.      When I became the Acting Funds Control Branch Chief in April 2015, Mark

Miller, Budget Analyst, had already been working from his home in Oklahoma for a few years.

Though it was inconsistent with the BPAD telework policy and my own view of how BPAD

should be run, I decided not to require that he start coming into the office regularly since his

work arrangement had been in place for years.[1]  Changing Miller's arrangement would have

required him to uproot his life and move back to the Washington, D.C. area, which I did not

think was appropriate simply due to a change in supervisor.

5.      Though I generally did not like the idea of Miller performing all of his duties

remotely, I decided to permit him to continue doing so, essentially "grandfathering" him into his

preexisting work arrangement.  This was not a telework arrangement because his official duty

station was his home in Oklahoma.  That meant that his work arrangement did not need to be

periodically recertified, monitored, or otherwise reviewed by me.

**B.      Jennifer Wohltman's Full-Time Telework Status**

6.      Jennifer Wohltman, who was teleworking full time from her home in New Jersey,

was in a different situation than Miller.  Wohltman's duty station had not been changed by prior

supervisors; rather, she was simply on a full-time telework schedule.  Her situation was also

---

[1]      The BPAD Telework Policy is discussed further below in Paragraphs 9 and 10.

different because she was an Accountant, as opposed to a Budget Analyst, which meant she had different duties than Miller and Plaintiff.

7.      In particular, I did not view Wohltman's duties as benefitting as much from or needed face-to-face interaction with others, as did the Budget Analyst positions held by Miller and Plaintiff.  Additionally, Wohltman's customers were physically located in the FEMA Finance Center in Winchester, VA, which is roughly 75 miles from the District of Columbia. Therefore, it was not as necessary for Wohltman to come into the office.

8.      As with Miller, I "grandfathered" Wohltman into her preexisting telework arrangement.  Because there was not a compelling business need for her to come into the office, it would have been unfair to require her to move her life back to Washington, D.C..  Wohltman had also demonstrated high performance in her existing telework arrangement.  And as the only accountant in BPAD, I viewed her as indispensable.

**C.      BPAD Telework Policy**

9.      In April 2015, while serving as Acting Funds Control Branch Chief within BPAD, Shalini Benson, my direct supervisor at that time, stated that she wanted to see each of us in the office at least two days per week.  Benson also stated that she expected that all managers under her supervision would see everyone who reported to them at least two days per week as well. Exhibit A to this Declaration (Kirton AFPD 727) contains a true and correct copy of Benson's April 23, 2015, email.

10.     Further, Benson stated in the April 2015 email that exceptions to her telework policy needed to be sought through her or Benjamin Moncarz, the Budget Director and her supervisor.  I understood Benson's April 2015 email with her expectations to be the effective BPAD policy on telework.  Nonetheless due to the factors I discussed above, I did not find it necessary to make any immediate changes to Wohltman's or Miller's telework arrangements.

3

**D.      The Agency's Decision in 2016 to Deny Kirton's Request for Full-Time Telework and/or Duty Station Change.**

11.      On December 18, 2015, Kirton submitted a request to me via email for 95-100% telework based on her commute from her home in Virginia.  Exhibit B to this Declaration (Kirton AFPD 360-61) contains a true and correct copy of Kirton's email accompanying request for telework.

12.      At that time, Kirton was a Budget Analyst under my supervision assigned FEMA program offices.  These were her customers with whom she would coordinate to ensure their funds were allocated in the Agency's financial system so they could spend the money and execute FEMA's mission.  To ensure funding was allocated correctly, Kirton was tasked with reviewing the programs' planned budgetary activity.

13.      Kirton's job required that she meet with her customers, i.e., the program offices, on a regular basis to review and discuss their plan to ensure their funding was in alignment with their spend plan.  Representatives from various FEMA program offices routinely come to BPAD's offices in FEMA Headquarters to meet with Budget Analysts, such as Kirton, when they have questions or need financial advice.  While this was sometimes done by phone or video in the 2015 timeframe, some customers requested to meet with Budget Analysts in person.  As a supervisor I felt it was important to have Budget Analysts physically come into the office to be available to provide those services to their customers.

14.      On December 20, 2015, I contacted my supervisor, Shalini Benson, Deputy Budget Director, and advised her that I wanted to grant Kirton additional telework such that she would only need to come into the office two days per pay period.  Exhibit C to this Declaration (Kirton AFPD 662) contains a true and correct copy of the email I sent to Benson.  I proposed this as a compromise between the full-time (or nearly full-time) telework that Kirton requested

4

and the maximum telework of four days per pay period (i.e., two days per week) that were permitted under BPAD policy at that time.

15.   Benson advised that she did not want to deviate from her requirement that everyone come into the office twice per week.  But she said that she would consider the request if Kirton could further explain how she could accomplish the mission and meet her customer needs if permitted to telework full-time.

16.   I met with Kirton and advised her of Benson's position and her need to address Benson's concerns, which she did in an email to me on December 22, 2015.  Exhibit D to this Declaration (2017 ROI, Tab G-14 at 3 of 4) contains a true and correct copy of Kirton's email. Kirton advised that her request was based on her current commuting time, which was a minimum of 2 ½ to 3 hours one way.  Kirton's email also states that she and her husband had already decided to move to Florida, although the email does not specify when the move to Florida would take place.  Therefore, although the request was purportedly based on her current commute time from her home in Chester, VA, I interpreted this as a request to telework fulltime from her new home in Florida, because a commute from Florida to D.C. would presumably be impossible.

17.   Upon reviewing Kirton's response to the issues Benson asked that she address, I was inclined to deny Kirton's request.  It appeared to me that Kirton wanted to work from home full-time because she had decided to live too far from the office to commute comfortably.  I did not think that was an adequate justification to deviate from the policy, especially since that would make it impossible for her to meet with her customers or participate in any in-person meetings or trainings on short notice.  I was also reticent to grant Kirton's request because it might incentivize others to move far away and request similar remote work arrangements that went against BPAD telework policy.

5

18.     I discussed Kirton's request with Benson who agreed with my inclination to deny the request.  Benson recommended that I coordinate my response with someone from Labor and Employee Relations ("LER") to ensure that I responded appropriately on behalf of the Agency, so I emailed Julia Goldberg, Human Resources Specialist.

19.     After discussing Kirton's request, Goldberg and I agreed that the Agency should deny it.  She helped me draft an email to Kirton communicating that decision, which I sent to Kirton on December 29, 2015.  Exhibit E to this Declaration (2017 ROI, Tab F-2 at 2 of 3) contains a true and correct copy of my December 29, 2015, email.

20.     The following is the explanation I provided Ms. Kirton for the Agency's decision to deny her request for full-time telework:

> I have reviewed your request for 95-100% telework, and subsequent change in duty station. Per FEMA's Telework Policy, if an employee commutes into the office less than 2 days per pay period, the Duty station needs to change to the employee's telework location.

> The BPAD Telework Policy is that every employee needs to come into the office at least 2 days per week.  As a Funds Control Budget Analyst, your job requires face-to-face engagement with your customers and Analysis Branch counterparts. Also, coming into the office enhances team building with other staff members, on the job training and promotes collaboration.  This is all key to us improving our relationships with our customers to ensure we are on track to creating a proactive work environment.  Additionally, because our division needs to have staff available in the office on a daily basis, and because most of our team regularly teleworks 2-3 times per week, I am not currently able to increase the amount of time that you telework away from the office.  Unfortunately, I regret to inform you that I cannot approve an increase in your telework, and therefore I am also denying a change in Duty Station for you.

Exhibit E hereto.

21.     On or about January 20, 2016, Kirton submitted a new request using the Agency's Telework Application and Agreement (FEMA Form 123-9-01).  In this new application, Plaintiff requested to telework (Alternative Work Location or "AWL") Monday through Friday of the first week and Monday and Tuesday of the second week.  The application stated that Plaintiff

would come into the office Wednesday and Thursday of the second week and Friday would be

an off-day due to her compressed work schedule (CWS).  The application requested this new

telework arrangement to begin on February 21, 2016.  And the application listed Plaintiff's

official duty station as Washington, D.C., and designated her home address in Chester, Virginia,

as the alternate work location where Plaintiff would be teleworking.  Exhibit F (2017 ROI, Tab

G-6) contains a true and correct copy of Plaintiff's Telework Application and Agreement dated

January 19, 2016, and Exhibit G (2017 ROI, Tab G-10) contains a true and correct copy of an

email exchange I had with Plaintiff concerning her request on January 21, 2020.

22.     It was my understanding that by this time in January 2016 Plaintiff had already

completed her move from Virginia to Florida.  Therefore, it was unclear to me why Plaintiff was

requesting to telework from an address in Chester, VA, where she no longer resided.  Moreover,

since no new information justifying a different outcome had been provided and because it did not

conform to the BPAD expectation of being at her official duty station at least two days per week.

23.     I advised Kirton by email on January 21, 2016, that I would not be approving this

request.  Ex. G.  As I noted in the comments to the Telework Application, I disapproved the

request because "this agreement does not meet the BPAD Telework expectation of 2 days per

week."

24.     A few months later on May 2, 2016, I emailed everyone in BPAD my

expectations concerning telework.  Among other things, I advised everyone that I expected that

they come into the office at least two days per week and that if they are out on leave on days they

would normally come into the office, then they needed to come into the office another day that

week.  Attached as Exhibit H (Kirton AFPD 389-90) is a true and correct copy of my May 2,

2016, email.

    **E.**    **The Agency's Unsuccessful Attempt to Bring Miller Into Compliance with BPAD Telework Policy and Miller's Removal Due to Poor Performance.**

25.    In late May and early June 2016, I started working with Goldberg regarding changing Miller's duty station back to Washington, D.C., due to the nature of his job and in the hopes that doing so would help improve his lagging performance.  Attached as Exhibit I (FEMA 017) is a true and correct copy of an email I sent to Goldberg in which I inquired about the possibility of changing Miller's duty station to D.C. because I felt that "his job performance would improve by him coming into DC at least 2 days a week."

26.    On June 29, 2016, I sent Miller an email advising him that we intended to change his duty station back to Washington, D.C. effective November 1, 2016, to bring his work situation into alignment with BPAD policy that required everyone to come into the office at least two days per week.  Attached as Exhibit J (Kirton AFPD 067) is a true and correct copy of my June 29, 2016 email

27.    We needed to ensure sufficient personnel in the office on a daily basis and I felt that Miller's performance would improve if he were required to come into the office for face-to-face client interaction and collaboration with colleagues at least two days per week.  I gave Miller several months of advanced notice in case the Union wanted to bargain over the move and because he had been living in Oklahoma for a few years and I wanted to give him a sufficient opportunity to make the necessary arrangements to move back to the Washington, D.C., area after having been gone for so long.

28.    On July 25, 2016, Miller responded to my duty station change letter with medical documentation advising against changing his work arrangement from home- to office-based work and recommending that he be permitted to continue working from his home in Oklahoma City.  Attached as Exhibit K (FEMA 276-77) is a true and correct copy of Miller's email and

accompanying note from his physician).  I interpreted this to be a request for reasonable

accommodation, so I sought Goldberg's opinion and she concurred that it was an

accommodation request.  Goldberg recommended that I reach out to Kurt Nance since he was the

reasonable accommodation coordinator in the Agency's Office of Equal Rights, which I did.

29.     On July 27, 2016, Miller and I had an email exchange in which we discussed what

work he needed to get done because he was behind.  Miller replied that he was overwhelmed but

that he understood my frustration with the situation and suggested that his medical conditions

may be affecting his ability to perform his duties.  Attached as Exhibit L (FEMA 005-07) is a

true and correct copy of our email exchange, which I forwarded to Goldberg on July 28, 2016.

30.     On July 28, 2016, I forwarded my exchange with Miller to Goldberg.  Ex. L at

FEMA 005.  I stated that I would have to take action if his performance did not improve but also

noted that I was concerned about taking action regarding his lagging performance because he

suggested that his medical issues might be contributing to his performance issues.  In response,

Goldberg stated that I did not need to wait to address his performance but that I needed to

consider how his conditions impact his work, and try to find a way to alleviate those issues.

Goldberg advised further that I needed to have a conversation with Miller and work with him

regarding potential accommodations.

31.     On August 8, 2016, on the advice of Nance and Goldberg, I sent Miller the

Agency's reasonable accommodation request form.  Exhibit M (FEMA 004 and attachment)

contains a true and correct copy of the August 8 email and its attachment.

32.     Miller completed, signed, and submitted a request for reasonable accommodation

on or about September 12, 2016.  Miller requested to be permitted to retain his duty station in

Moore, Oklahoma, as an accommodation for his medical issues.  Exhibit N contains a true and

correct copy of Miller's reasonable accommodation request dated September 11, 2016, which is included as an attachment to an email dated December 5, 2016 (FEMA 003).

33.     On September 27, 2016, I sent Miller a medical questionnaire to be completed by his physician as part of the reasonable accommodation process.  In response Miller sent me a letter from his doctor dated October 11, 2016.  Miller's physician stated his professional opinion that Miller could not perform the duties of the position outside of his home due to his medical issues and further that were no alternative accommodations.  Miller's doctor sent a follow-up letter toward the end of October clarifying that Miller could perform the duties of his position if performed from his home office.  True and correct copies of these documents are included in Exhibit O to this Declaration (FEMA 278-85, 292)

34.     I took Miller's doctor's letters very seriously, but he was no longer performing acceptably while working remotely.  He needed to come into the office a minimum of 20% per pay period to perform all of the essential functions and duties of his position.  *See* Management Response at 2 of 2 (Ex. N).  Therefore, I denied his request to work remotely full time on November 3, 2016, and offered him two days of telework per pay period as an alternative accommodation after consulting with the Office of Equal Rights.  Miller appealed my decision to Annemarie Juhlin, Deputy Budget Director, on December 5, 2016.  *See* Ex. N at FEMA 003.

35.     While we were still engaging with Miller during the interactive process, I continued consulting with Goldberg regarding Miller's lagging performance.  Eventually we decided to place Miller a Performance Improvement Plan ("PIP"), which was a guide laying out explicitly what he needed to do in order to perform at the minimally acceptable level—Achieved Expectations.  In the meantime, as a temporary accommodation we decided to permit him to continue working from Oklahoma during the PIP.  If Miller's performance improved and he

successfully completed his PIP, then I intended to consult further with Goldberg and the Office of Equal Rights as to the Agency's options regarding his duty station and telework arrangements on a more long-term basis.

36.     I issued the PIP in January 2017, giving Miller an opportunity to demonstrate acceptable performance.  Ultimately and unfortunately, Miller's performance did not improve, and it remained at the Unacceptable level, prompting me to propose his removal in June 2017. Exhibit P is a true and correct copy of a memorandum I prepared on June 5, 2017, with my evaluation of Miller's performance during the PIP period.  Exhibit Q is a true and correct copy of the Notice of Proposed Removal for Miller, also dated June 5, 2017.

37.     On August 22, 2017, Annemarie Juhlin, issued a Removal Decision memorandum, removing Miller from Federal service effective that day.  As a result, the duty station change became moot and no further action was necessary.  Exhibit R is a true and correct copy of the Removal Decision dated August 22, 2017.

**F.     Wohltman's Change in Duty Station to New Jersey.**

38.     Kirton's telework request and appeal of the denial of that request alerted me that I had another employee's whose work arrangement was inconsistent with BPAD's policy— Jennifer Wohltman.  As stated previously, Wohltman had been teleworking full time from her home in New Jersey since well before I became her supervisor and had only occasionally been commuting into the office, which she had been doing so at her own expense.

39.     I was willing to continue permitting Wohltman to work from her home in New Jersey, but also wanted to bring her work arrangement into compliance with applicable Agency policy.  Therefore, I sought permission from Shalini Benson to change Wohltman's official duty station to her home in New Jersey.  Benson recommended that I work with a Human Resources Specialist to decide whether to move forward with the request.

11

40.     Unlike Plaintiff or Miller, Wohltman was an Accountant whose work was independent.  Wohltman's official duty station was in FEMA Headquarters in Washington, D.C. As I explained above, however, her customers were located at FEMA Finance Center, in Winchester, VA, which is 75 miles away.  That meant that regardless of whether her official duty station was Washington, D.C., or New Jersey, it was not likely to have a significant impact on the amount of time she would spend on site at the FEMA Finance Center.

41.     These factors made Wohltman's job more suitable for remote work.  Additionally, her husband was working in New Jersey and she had recently given birth so requiring her to commute back and forth would likely compel her to seek employment elsewhere, which I feared because she was such a high performer and self-motivated worker.

42.     On May 23, 2016, I sent a request to Benson asking for permission to change Wohltman's duty station to New Jersey.  In the May 23 request, I listed the pros and cons of changing Wohltman's duty station.  Among my comments, I noted that Wohltman's current telework situation was not in compliance with the FEMA Telework policy and that all employees needed to be in the office a minimum of two days per pay period.  Changing Wohltman's duty station to New Jersey would bring her into compliance with the FEMA and BPAD telework policies.  Exhibit S (Kirton AFPD 392-93) is a true and correct copy of my May 23 email.

43.     On July 8, 2016, I sent a memorandum to my supervisor, Shalini Benson, requesting permission to permit Wohltman to change her duty station to her home in New Jersey. Benson signed it and forwarded it to Benjamin Moncarz, Budget Director, on July 15, 2018. Exhibit T (Kirton AFPD 373) contains a true and correct copy of the memorandum I prepared, dated July 8, 2016, requesting a change of duty station for Wohltman.

44.     In support of my request, I explained that Wohltman was the only Accountant in BPAD and therefore her duties were different from the Budget Analysts and other employees in BPAD.  Ex. T.  Wohltman's work was performed independently and her sole customer was the OCFO FEMA Finance Center in Winchester, VA.  Therefore, changing her duty station from D.C. to New Jersey would not have likely have any great effect on her ability to collaborate with her clients.  *Id.*

45.     Additionally, I noted that Wohltman's performance had been superior, she had received a DHS Outstanding Employee Award from the Secretary of DHS, and had been one of only three OCFO employees to receive a Quality Step Increase due to her stellar performance. In other words, she had already demonstrated consistent performance at a high level while teleworking.  I also noted that if we did not agree to change her duty station to New Jersey, she would likely seek another job and that it would be difficult to replace her.

46.     On August 11, 2016, Moncarz approved my request to change Wohltman's duty station to her home in New Jersey.  He explained that he was granting my request because: (1) she did not have any customers in Washington, D.C. that require consistent interactions; (2) her work is done independently; and (3) her sole customer was the OCFO Finance Center located in Winchester, VA so she was already working in a location different from her customer since her duty station was FEMA Headquarters in Washington, D.C.  Exhibit U (Kirton AFPD 719) contains a true and correct copy of Moncarz's email dated August 11, 2016.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 8th day of September, 2020, in Severna Park, Maryland.

MELISSA A ELLIS    Digitally signed by MELISSA A ELLIS
                   Date: 2020.09.08 14:19:40 -04'00'

MELISSA ELLIS

13

# ELLIS DECLARATION
# EXHIBIT A

| | |
|---|---|
| **From:** | Benson, Shalini |
| **To:** | Benson, Shalini |
| **Subject:** | FW: Telework expectations |
| **Date:** | Thursday, January 21, 2016 11:58:08 AM |

---

**From:** Benson, Shalini
**Sent:** Thursday, April 23, 2015 9:29 AM
**To:** Ellis, Melissa; Coles, Denee; Kowgios, Kristos; George, Heather; Senegal, Frankie
**Cc:** Treml, Gregg
**Subject:** Telework expectations

Hey everyone,

With so many moving pieces and new folks (yeah!) I just want to reiterate my telework expectations so each group is operating in the same manner.

1 – **Seeing me!** -- I'd like you to see you at least twice a week. I prefer BC are in person for the Monday staff meeting and Tuesday staff meeting. I telework Thursdays and right now, a half day on Wed.

2 - **Seeing your staff** -- I'd like you to see each of your direct reports twice a week. Exceptions to this should be made through me / Gregg while he's here.

3 – **Team Day** – To the extent possible, I'd like your team to get together in person at least once a week. A number of branches have choosen Tuesday for this as it's staff meeting day anyway.

4 – **All hands on deck day** – We've talked about this – but honestly don't recall where we wound up ☺ Should we make Tuesday an all hands on deck day? I like the idea of having everyone together at least one day a week (again – there are exceptions, certianly). What do y'all think?

Let's chat if you have questions – sorry for doing this over email, but wanted to get out sooner rather than later!

Thanks,
Shalini

Shalini Benson *  Acting Budget Director * FEMA OCFO * BB – 202/802-2617 *
Shalini.Benson@fema.dhs.gov

# ELLIS DECLARATION
# EXHIBIT B

December 18, 2015

To: Melissa Ellis; OCFO BPAD fund control Supervisor

CC: Shalini Benson; OCFO Deputy Budget officer

From: Alicia Kirton; OCFO BPAD funds control budget analyst

Re: REQUEST TO TELEWORK AT 95-100%

Melissa, Shalini sent me an email on 29 Sept 2015 and stated if I need anything to please contact her. Before I spoke with her concerning my request, I felt it was respectful to speak with you first to ensure you were in the loop as to my request. After speaking with you and discussing the agencies telework opportunities with my family, My family and I have reviewed the situation and believe due to my current commute situation, it would be most advantageous for us as a family and more beneficial to the agency , if I would make the request to perform 95-100% telework.


Please be advised that this email serves as my official request to be approved to utilize the opportunity to participate in the agencies 95-100% telework program beginning January 2016. My current commute to work is approximately 3hrs each way. To avoid traffic congestion, I must leave my home at 2:30 in the morning,  which causes my work and family life to be compromised considerably. My family has supported my commuting situation for over 8 years but now due to family demographic changes, my long distance commute is causing a strain on several areas in my family's home life, which in turn can result in me taking extensive leave.

Being able to telework at a higher rate will allow more time for me to work and interact with my peers via LYNC as well as have quality time to spend with my family. I am aware that I will be required to commute to DC periodically and I fully accept that requirement.


Thank you for your time and consideration in this matter


Respectfully submitted,


Alicia R. Kirton

Funds Control Analyst
OCFO-Budget Planning & Analysis Division
Desk (202) 212-3783
BB (202) 230-7134

| | |
|---|---|
| **From:** | Kirton, Alicia |
| **To:** | Ellis, Melissa |
| **Cc:** | Kirton, Alicia |
| **Subject:** | Telework request.docx |
| **Date:** | Friday, December 18, 2015 10:25:04 AM |
| **Attachments:** | my request.docx |

Melissa, attached is my request for 95-100% telework. I would rather make this request based on my current commuting situation which qualifies for a strong enough justification to prevent me from giving my personal business of medical issues.

Alicia Kirton

Funds Control Analyst

OCFO–Budget Planning & Analysis Division

Desk (202) 212–3783

BB (202) 230–7134

Kirton - AFPD - 000361

ELLIS DECLARATION
EXHIBIT C

| | |
|---|---|
| **From:** | Benson, Shalini |
| **To:** | Ellis, Melissa |
| **Subject:** | RE: Alicia Kirton Schedule change request |
| **Date:** | Monday, December 21, 2015 6:20:08 PM |

As discussed, not comfortable deviating from office norm of in person 2 days a week without a justification on how you'll accomplish mission, meet customer needs, ensure equity with other staff, etc.

Do not approve until that justification has been provided and you and I can discuss.

Thanks,
Shalini


**From:** Ellis, Melissa
**Sent:** Sunday, December 20, 2015 11:48 AM
**To:** Benson, Shalini
**Subject:** Alicia Kirton Schedule change request

Shalini,

I plan to meet with Alicia Tuesday morning to discuss the attached request.  I would like to offer her a schedule adjustment to allow her to telework more frequently. My thought is I will request that she come into the office 2 days per pay period.

Happy to discuss but wanted to let you know of my plans.

Melissa

Kirton - AFPD - 000662

ELLIS DECLARATION
EXHIBIT D

| Subject: | Fw: Tele-work meeting |
|---|---|
| From: | Alicia Payne-Kirton (mzanointed_1@hotmail.com) |
| To: | cdreedbdi@yahoo.com; |
| Date: | Sunday, June 18, 2017 8:12 PM |

Memo for Record

**From:** Kirton, Alicia
**Sent:** Wednesday, January 20, 2016 12:04 PM
**To:** mzanointed_1@hotmail.com
**Subject:** FW: Tele-work meeting

My plan to continue my work assignments by using resources provided: Lync to tele-conference, Video which allows face to face discussions, share screen which allows real time inner action with customers and team mates .

**From:** Kirton, Alicia
**Sent:** Tuesday, January 19, 2016 2:08 PM
**To:** mzanointed_1@hotmail.com; Kirton, Alicia <Alicia.Kirton@fema.dhs.gov>
**Subject:** FW: Tele-work meeting

Based on the information provided below, I believe that I am being held to a different standard than my co-worker. I have returned from active duty on 1 June and from that time until 30 December Jennifer has not come in the office  two days per week  but has been allowed to come in once a quarter. She came in for 1 day in July, two day in Sep 1 ½ days in Nov, 1 day in Dec and thus far 1 day in January.

**From:** Ellis, Melissa
**Sent:** Tuesday, December 29, 2015 2:47 PM
**To:** Kirton, Alicia <Alicia.Kirton@fema.dhs.gov>
**Subject:** RE: Tele-work meeting

Dear Alicia,

I have reviewed your request for 95-100% telework, and subsequent change in duty station.  Per FEMA's Telework Policy, if an employee commutes into the office less than 2 days per pay period, the Duty station needs to change to the employee's telework location.

The BPAD Telework Policy is that every employee needs to come into the office at least 2 days per week.   As a Funds Control Budget Analyst, your job requires face-to-face engagement with your customers and Analysis Branch counterparts.  Also, coming into the office enhances team building with other staff members, on the job training and promotes collaboration.  This is all key to us improving our relationships with our customers to ensure we are on track to creating a proactive work environment.  Additionally, because our division needs to have staff available in the office on a daily basis, and because most of our team regularly teleworks 2-3 times per week, I am not currently able to increase the amount of time that you telework away from the office.  Unfortunately, I regret to inform you that I cannot approve an increase in your telework, and therefore I am also denying a change in Duty Station for you.

I am happy to meet and discuss this further with you when you are back in the office.

Melissa Ellis
Branch Chief - Funds Control Branch
OCFO-Budget Planning & Analysis Division
Desk (202) 212-5626
BB (202) 701-5573

---

**From:** Kirton, Alicia
**Sent:** Tuesday, December 22, 2015 10:46 AM
**To:** Ellis, Melissa
**Cc:** Kirton, Alicia
**Subject:** Tele-work meeting

1.   Compelling reason to tele-work at a 95-100% rate
2.   How do I plan to accomplish the mission
3.   How do I plan to meet my customers' needs

Mellissa, thank you for taking the time to meet with me to discuss my request to tele-work at a higher percentage rate submitted to you on Friday December 18, 2015. As stated on my request, as well as during our discussion meeting this morning, my request is based on my current commuting time which is a minimum of 2 ½ to 3 hours one way, along with the opportunity  to take advantage of the agencies program for employees to tele-work at a higher rate. I currently come into the office 2 to 3 days a week, depending on your request to attend meetings in your place and/or to attending BPAD, All Hands, etc.  I am requesting to come in on a monthly bases which will greatly reduce my commuting time, provide a cost savings to the agency, increase my time to preform  work responsibilities and allow quality time with my family.

I am aware that the regulation for Tele-work states 100% teleworkers are required to come to the home office at least once a quarter; however I am obligating myself to come in on a monthly bases which is above the minimum requirement.

After my brief conversation with Shalini in early Oct, and she stated it wasn't where I am located but the work that I accomplish  that matters most, along with her email dated September 29, 2015, that told me that my family always must come first, my husband and I made the decision to move to Florida.  Our decision was based on  the above statements along with several other factors which  include my current position as a GS 13, which has a lower level of responsibility as do a GS 14., the agencies program that supports 95-100% tele-work a and the fact that my request provides a greater opportunity to have a better balance of quality work and home life.

My plan to accomplish the FEMA mission, is by continual working as I currently do, based on my strong  work ethic along with my continued support of the agencies mission and my team mates; along with my  continued can do attitude towards any and all task that are given to me.  My goal is to continue to work with my customers and ensure their needs are met via Lync voice, Lync tele-conferences, phone and emails communication.

Thank you again for your time and your expeditious  attention to this matter

**Alicia Kirton**
**Funds Control Analyst**
**OCFO-Budget Planning & Analysis Division**
**Desk (202) 212-3783**
**BB (202) 230-7134**

# ELLIS DECLARATION
# EXHIBIT E

| | |
|---|---|
| **From:** | Ellis, Melissa |
| **To:** | Kirton, Alicia |
| **Subject:** | RE: Tele-work meeting |
| **Date:** | Tuesday, December 29, 2015 2:47:00 PM |

Dear Alicia,

I have reviewed your request for 95-100% telework, and subsequent change in duty station.  Per FEMA's Telework Policy, if an employee commutes into the office less than 2 days per pay period, the Duty station needs to change to the employee's telework location.

The BPAD Telework Policy is that every employee needs to come into the office at least 2 days per week.   As a Funds Control Budget Analyst, your job requires face-to-face engagement with your customers and Analysis Branch counterparts.  Also, coming into the office enhances team building with other staff members, on the job training and promotes collaboration.  This is all key to us improving our relationships with our customers to ensure we are on track to creating a proactive work environment.  Additionally, because our division needs to have staff available in the office on a daily basis, and because most of our team regularly teleworks 2-3 times per week, I am not currently able to increase the amount of time that you telework away from the office.  Unfortunately, I regret to inform you that I cannot approve an increase in your telework, and therefore I am also denying a change in Duty Station for you.

I am happy to meet and discuss this further with you when you are back in the office.

Melissa Ellis

Branch Chief – Funds Control Branch

OCFO–Budget Planning & Analysis Division

Desk (202) 212–5626

BB (202) 701–5573

**From:** Kirton, Alicia
**Sent:** Tuesday, December 22, 2015 10:46 AM
**To:** Ellis, Melissa
**Cc:** Kirton, Alicia
**Subject:** Tele-work meeting

1. Compelling reason to tele-work at a 95-100% rate
2. How do I plan to accomplish the mission
3. How do I plan to meet my customers' needs

Mellissa, thank you for taking the time to meet with me to discuss my request to tele-work at a

higher percentage rate submitted to you on Friday December 18, 2015. As stated on my request, as well as during our  discussion meeting this morning, my request is based on my current commuting time which is a minimum of 2 ½ to 3 hours one way, along with the opportunity  to take advantage of the agencies program for employees to tele-work at a higher rate. I currently come into the office 2 to 3 days a week, depending on your request to attend meetings in your place and/or to attending BPAD, All Hands, etc.  I am requesting to come in on a monthly bases which will greatly reduce my commuting time, provide a cost savings to the agency, increase my time to preform  work responsibilities and allow quality time with my family.

I am aware that the regulation for Tele-work states 100% teleworkers are required to come to the home office at least once a quarter; however I am obligating myself to come in on a monthly bases which is above the minimum requirement.

After my brief conversation with Shalini in early Oct, and she stated it wasn't where I am located but the work that I accomplish  that matters most, along with her email dated September 29, 2015, that told me that my family always must come first, my husband and I made the decision to move to Florida.  Our decision was based on  the above statements along with several other factors which  include my current position as a GS 13, which has a lower level of responsibility as do a GS 14., the agencies program that supports 95-100% tele-work a and the fact that my request provides a greater opportunity to have a better balance of quality work and home life.

My plan to accomplish the FEMA mission, is by continual working as I currently do, based on my strong  work ethic along with my continued support of the agencies mission and my team mates; along with my  continued can do attitude towards any and all task that are given to me.  My goal is to continue to work with my customers and ensure their needs are met via Lync voice, Lync tele-conferences, phone and emails communication.

Thank you again for your time and your expeditious  attention to this matter

Alicia Kirton

Funds Control Analyst

OCFO–Budget Planning & Analysis Division

Desk (202) 212–3783

BB (202) 230–7134

ELLIS DECLARATION
EXHIBIT F

DEPARTMENT OF HOMELAND SECURITY
FEDERAL EMERGENCY MANAGEMENT AGENCY
## TELEWORK APPLICATION AND AGREEMENT

| 1. Check one of the following: | ☐ New Agreement | ☐ Change in Existing Agreement | |
|---|---|---|---|

| 2. Employee Name<br>Alicia Kirton | 3. Organization<br>DHS/FEMA | 4. Position Title<br>Funds Control Budget Analyst | 5. Series and Grade<br>0560-13 |
|---|---|---|---|

| 6. Office Telephone No.<br>202 646-3783 | 7. Supervisor (Name/Title)<br>Melissa Ellis |
|---|---|

| 8. Type of Telework: | ☒ Regular (Core) | ☐ Situational (Episodic) |
|---|---|---|

**Part I - Completion of this agreement indicates that:**

1. The employee's telework arrangement begins on  21 Feb 2016
_____
(date)

2. The employee's official tour of duty and location are listed below.

| DAY | Telework Days<br>(Week 1) | Start and End<br>Times | | Telework Days<br>(Week 2) | Start and End<br>Times | |
|---|---|---|---|---|---|---|
| Monday | AWL | 0600 | 1630 | AWL | 0600 | 1530 |
| Tuesday | AWL | 0600 | 1530 | AWL | 0600 | 1530 |
| Wednesday | AWL | 0600 | 1530 | Office | 0600 | 1530 |
| Thursday | AWL | 0600 | 1530 | Office | 0600 | 1530 |
| Friday | AWL | 0600 | 1530 | CWS | | |

3. Employee volunteers to participate in the program and to adhere to the applicable guidelines and policies. Agency concurs with employee participation and agrees to the applicable guidelines and policies.

4. Employee understands that FEMA may require participating employee to work from their telework site, e.g., home, satellite office, or other location, during periods of Unscheduled Telework authorization due to area closures, dismissals, unforeseen emergencies or other reasons as authorized by the Supervisor.

5. Management reserves the right to alter the employee's established telework schedule to accommodate peak workload office demands or for any other official purpose with advance notifications.

6. Employee's official tour of duty must include at least a 30-minute uncompensated lunch.

7. Employee's official duty station is:  Washington, DC _____  (City and State) for purposes such as pay, travel,

etc. The location at which the employee is designated to work (i. e., alternate work location) while not at the official duty station is:  3106 Poplar View Drive, Chester VA 23831

The phone number of the alternate worksite is  804 691-4796 _____

8. Employee understands requirements for an adequate and safe office space and that these requirements must be met.

9. An employee approved for telework is required to satisfactorily complete all assigned work, consistent with the approach adopted for all other employees in the work group.

10. The employee will regularly meet/speak with the supervisor to receive assignments and to review completed work as necessary or appropriate. The employee's job performance will be evaluated on criteria and milestones determined by the supervisor with input form employee.

11. Employee's Time and Attendance (WebTA) for all official duty time spent in a Teleworking status will be recorded using the proper Telework code. The supervisor and employee are responsible for ensuring the accuracy of time and attendance for the employee's work at the official duty station and the alternative workplace. The supervisor agrees to certify biweekly the employee's Time and Attendance Daily Report for hours worked. The employee's timekeeper will retain a copy of the employee's work schedule.

12. Employee agrees to participate in surveys and data calls relative to the FEMA Telework Program, as requested.

13. The employee must obtain supervisory approval before taking leave in accordance with established office procedures in accordance with FEMAs Absence and Leave policies.. Use of sick leave, annual leave, or other leave credits during regularly schedule telework time must be approved in advance by the supervisor. Overtime must be approved in advance by the supervisor.

14. Employee will utilize Government equipment for official business only and in accordance with applicable laws, regulations, policies, etc., as well as safeguard said equipment Employee is responsible for servicing and maintaining employee-owned equipment.

15. The employee agrees to permit access to their home by agency representatives when necessary to ensure proper maintenance of agency-owned equipment.  Teleworkers should be given at least one day's advance notice of any such visit. Visits should only be done during regular working hours.

**FEMA Form 123-9-0-1, (1/13)**

16. Employee is covered under the Federal Employees Compensation Act in the course of performing official duties at the alternate work location or official duty station. Any accident or injury which occurs at the alternate work location must be brought immediately to the attention of the supervisor.

17. Employee's most recent performance rating must be at least equivalent to "proficient" or "achieved expectations".

18. Employee understands that telework is not a substitute for dependent care (child care or elder care) and that appropriate arrangements must be made to accommodate children and adults who cannot care for themselves, while performing official duties in a telework site.

19. The employee understands that the Government will not be responsible for any operating costs that are associated with the use of employee's home as an alternative workplace, for example home maintenance, insurance or utilities.

20. Employee will apply approved safeguards to protect Government records from unauthorized disclosure or damage and will comply with the provisions set forth in the Privacy Act of 1974, Public Act of 1974, Public Law 93-579, codified at Title 5, U.S.C., Section 55a.

21. The employee agrees to abide by the Department of Homeland Security and FEMA Standards of Ethical Conduct Standards while working on official duty.

22. Telework agreements will be reviewed and discussed between the employee and supervisor on an annual basis.

23. Management may terminate participation in this arrangement at any time.

24. The employee may withdraw from the program at any time. The supervisor and employee understand that either party may terminate the Telework agreement with reasonable advance notice, generally fourteen calendar days, but not less than seven calendar days and require the employee to resume working at his/her official duty station. Reasons for termination will be documented by the supervisor and/or employee and filed with this agreement.

### Compliance with this Agreement

The employee's failure to comply with the terms of this agreement may result in the termination of this agreement and the telework arrangement. Failure to comply with the provisions of this agreement may also result in appropriate disciplinary or adverse action against the employee.

### Part - II

### Certification

By signing this agreement, the employee certifies that (s)he has read the terms of this agreement and agrees to follow the policies and procedures outlined in them as well as all other applicable regulations, policies, and procedures.

| ALICIA R KIRTON | Funds Control Budget Analyst | 1-19-2016 |
|---|---|---|
| Employee's Signature | Title | Date |
| | | |
| Supervisor's Signature | Title | Date |
| | | |
| Telework Coordinator's Signature | | Date Reviewed |

### Part III - Approval/Disapproval

Your request to participate in the telework program is: ☐ Approved as written   ☐ Approved with the following modification(s)

☒ **Disapproved for the following reason(s):**

☐ The employee does not have sufficient duties or work activities suitable for performance at an alternate work site.

☐ The employee's absence from the work place under a telework arrangement will unacceptably impact the operation of the work unit.

☐ The extent of supervision required for the employee could not be achieved in conjunction with a telework arrangement.

☐ The employee's alternative work site does not meet prescribed acceptability standards. (State the specific deficiency issue(s), such as: safety, two-way communications, access to required materials, IT security, or non-work related distractions and/or obligations.)

☐ The employee does not meet performance eligibility requirements. (State the specific deficiency issue(s) such as: writing, problem-solving, reliability for the following prescribed policies and procedures, organization/time management skills, or work quality/quantity.

☐ The employee does not meet conduct-related eligibility requirements. (State the specific deficiency issues(s), such as: leave abuse, excessive absence, or a record of misconduct which precludes participation at this time. If no additional misconduct in one (1) year, employee may reapply.

☒ Other (please specify):   This agreement does not meet the BPAD Telework expectation of 2 days per week.

Supervisor's Signature MELISSA A ELLIS   Digitally signed by MELISSA A ELLIS DN: c=US, o=U.S. Government, ou=Department of Homeland Security, ou=FEMA, ou=People, cn=MELISSA A ELLIS, 0.9.2342.19200300.100.1.1=0427731 954 FEMA Date: 2016.01.21 10:10:44 -05'00'   Title   Date

Telework Program Coordinators Signature   Date

ELLIS DECLARATION
EXHIBIT G

## Pearson, Andrea

| | |
|---|---|
| **From:** | Kirton, Alicia |
| **Sent:** | Wednesday, February 03, 2016 12:32 PM |
| **To:** | Pearson, Andrea |
| **Subject:** | Telework request |
| **Attachments:** | AKirton telework request form 1-20-16.pdf |

**Andrea, attached is the denial I received**

**From:** Ellis, Melissa
**Sent:** Thursday, January 21, 2016 10:13 AM
**To:** Kirton, Alicia <Alicia.Kirton@fema.dhs.gov>
**Cc:** Bowser, Carl <Carl.Bowser@fema.dhs.gov>
**Subject:** RE: Telework expectations

Alicia,

Per your request, attached is the updated form.

Melissa Ellis

Branch Chief – Funds Control Branch

OCFO–Budget Planning & Analysis Division

Desk (202) 212–5626

BB (202) 701–5573

**From:** Kirton, Alicia
**Sent:** Thursday, January 21, 2016 10:06 AM
**To:** Ellis, Melissa
**Subject:** RE: Telework expectations

Ok thanks Melissa, can you please go ahead and disapprove on the form and send it to myself and Carl Bowser for Record.

V/r
Alicia

**From:** Ellis, Melissa
**Sent:** Thursday, January 21, 2016 10:04 AM
**To:** Kirton, Alicia <Alicia.Kirton@fema.dhs.gov>
**Subject:** RE: Telework expectations

Ok I won't be approving your new request.

Melissa Ellis

Branch Chief – Funds Control Branch

1

OCFO–Budget Planning & Analysis Division
Desk (202) 212–5626
BB (202) 701–5573


**From:** Kirton, Alicia
**Sent:** Thursday, January 21, 2016 10:01 AM
**To:** Ellis, Melissa
**Subject:** RE: Telework expectations

Thank you Melissa I appreciate your input; however I am going to stick with the request sent to you on yesterday.

V/r
Alicia

**From:** Ellis, Melissa
**Sent:** Thursday, January 21, 2016 9:58 AM
**To:** Kirton, Alicia <Alicia.Kirton@fema.dhs.gov>
**Subject:** RE: Telework expectations

Alicia,

As discussed on Tuesday afternoon, per your request, below is guidance I received on our BPAD Telework Policy.  I request that you update your recent Telework request form to identify your two days per week in the office.  A suggestion is that you can choose different days each week to be in DC, for instance week 1 be in the office Thursday and Friday and week 2 be in the office Monday and Tuesday.  That way you can meet the requirement.

You asked my thoughts on your next steps and I suggested you reach out to the Employee Assistance Program, here is their website. http://foh.hhs.gov/services/EAP/Eapwebsite.asp


Melissa Ellis
Branch Chief – Funds Control Branch
OCFO–Budget Planning & Analysis Division
Desk (202) 212–5626
BB (202) 701–5573


**From:** Benson, Shalini
**Sent:** Thursday, April 23, 2015 9:29 AM
**To:** Ellis, Melissa; Coles, Denee; Kowgios, Kristos; George, Heather; Senegal, Frankie
**Cc:** Treml, Gregg
**Subject:** Telework expectations

Hey everyone,

With so many moving pieces and new folks (yeah!) I just want to reiterate my telework expectations so each group is operating in the same manner.

1 –**Seeing me!** -- I'd like you to see you must at least twice a week.  I prefer BC are in person for the Monday staff meeting and Tuesday staff meeting.  I telework Thursdays and right now, a half day on Wed.

2 -  **Seeing your staff**  --  I'd like you to see each of your direct reports twice a week.  Exceptions to this should be made through me / Gregg while he's here.

3 – **Team Day** – To the extent possible, I'd like your team to get together in person at least once a week.  A number of branches have choosen Tuesday for this as it's staff meeting day anyway.

4 – **All hands on deck day** – We've talked about this – but honestly don't recall where we wound up ☺  Should we make Tuesday an all hands on deck day?  I like the idea of having everyone together at least one day a week (again – there are exceptions, certianly).  What do y'all think?

Let's chat if you have questions – sorry for doing this over email, but wanted to get out sooner rather than later!

Thanks,
Shalini

Shalini Benson * Acting Budget Director * FEMA OCFO * BB – 202/802-2617 * Shalini.Benson@fema.dhs.gov

ELLIS DECLARATION
EXHIBIT H

**From:** Ellis, Melissa
**Sent:** Monday, May 02, 2016 2:36 PM
**To:** Young, Angela <Angela.Young2@fema.dhs.gov>; Washington, Charlene <Charlene.Washington@fema.dhs.gov>; Nguyen, Phuong-Tam <phuong-tam.nguyen@fema.dhs.gov>; Miller, Mark E <Mark.Miller2@fema.dhs.gov>; Kirton, Alicia <Alicia.Kirton@fema.dhs.gov>; Wohltman, Jennifer <Jennifer.Wohltman@fema.dhs.gov>; Bailey, Jarrod <jarrod.bailey@fema.dhs.gov>; Kim, Gregory <gregory.kim@fema.dhs.gov>; Johnson, Stephanie <Stephanie.Johnson@fema.dhs.gov>
**Subject:** FCB Housekeeping Items
**Importance:** High

All,

I have a few housekeeping things I would like to let you know my expectations:

**Annual Leave:**

Since we are nearing summer, can you all please input your potential annual leave that you are aware of in Webta?  I want to make sure as we head into the fiscal year end that we are fully covered.  If possible, submit by 5/20/16.  If that is too soon let me know when you are hoping to take off.

**Telework:**

Please plan to be in the office on your designated "office" days.  If you are unable to come in on your office day, you need to come into the office on another day in the same week.  Two days in the office weekly is the expectation however I am flexible if you need to change your days.

**Sick Leave:**

-
If you are sick, you may need a doctor's note.  I think a reasonable request is if you are sick for 3 days or more, please provide me a doctor's note upon your return.  This applies even if you plan to use annual leave in Webta.

**OCFO Calendar:**

Please update the OCFO BPAD calendar with your CWS/leave/telework/training schedules so we are all aware of each other's schedules.


As always, please let me know if you have any questions.

Thank you!

Melissa Ellis

Branch Chief - BPAD Funds Control Branch
Federal Emergency Management Agency
(202) 212-5626 Desk
(202) 701-5573 Cell

Kirton - AFPD - 000390

ELLIS DECLARATION
EXHIBIT I

| From: | Ellis, Melissa |
|---|---|
| To: | Goldberg, Julia |
| Subject: | Change of Duty Station |
| Date: | Friday, June 10, 2016 4:48:50 PM |

Hello Julia,

I hope you are doing good. I have a question for you regarding my team member Mark Miller whose duty station was changed from DC to Oklahoma City a couple years ago. It is my understanding that Mark went home to care for his sick wife and then he became sick himself. The agreement was at first temporary or episodic but they felt his work performance at the time was good for the duties he was performing and they made a decision to change his duty station. This was a decision made before all of the supervisors who are now in place in Budget. The medical reasons behind the decision are not documented but his SF 50 was changed to reflect OK City.

Due to the nature of the job, we are now in a position where we feel it is best if his duty station was DC. Do you know if I am able to change his duty station? He will not want to have to come back to DC to work, he has mentioned this to me before. However, his job duties are similar in nature to all of the other budget analysts. I feel his job performance would improve by him coming into DC at least 2 days a week.

Thank you,

Melissa Ellis

Branch Chief - Funds Control Branch

OCFO-Budget Planning & Analysis Division

Desk (202) 212-5626

BB (202) 701-5573

ELLIS DECLARATION
EXHIBIT J

| | |
|---|---|
| **From:** | Ellis, Melissa |
| **To:** | Miller, Mark E |
| **Subject:** | Change of Duty Station |
| **Date:** | Wednesday, June 29, 2016 8:27:01 AM |

Dear Mark,

This email is to notify you that your duty station will change to Washington, DC effective November 1, 2016.  The reason behind this change is due to the BPAD division telework policy that describes how employees need to come into the office at least two days per week.   Because our division needs to have staff available in the office on a daily basis, and also due to most of our team regularly teleworks 2-3 times per week, it would be beneficial to have you share a part of keeping business hours in our office. Also, as a Funds Control Budget Analyst, your job requires face-to-face engagement with customers and your Analysis Branch counterparts.  Coming into the office enhances team building with other staff members, on the job training and promotes collaboration. This is all key to us improving our relationships with our customers to ensure we are on track in creating a proactive work environment.

Please let me know how I can assist you with this transition back to DC.  I am available to discuss if you have questions or concerns.


Melissa Ellis
Branch Chief - BPAD Funds Control Branch
Federal Emergency Management Agency
(202) 212-5626 Desk
(202) 701-5573 Cell

Kirton - AFPD - 000067

ELLIS DECLARATION
EXHIBIT K

| | |
|---|---|
| **From:** | Miller, Mark E |
| **To:** | Ellis, Melissa |
| **Subject:** | Doctor"s Letter |
| **Date:** | Monday, July 25, 2016 11:31:14 AM |
| **Attachments:** | OUMed.pdf |

Melissa,

Please find the attached letter from my Doctor.  It's my hope that perhaps this will allow my current employment situation to remain the same.

Thank you
Mark

Mark E. Miller
FEMA OCFO, Budget
Call my Blackberry at:
202-701-5663
mark.miller2@fema.dhs.gov



## MED-SPECIALTY CLINIC

**OU Physicians Medicine Speciality**
825 NE 10th St # 4E
Oklahoma City, OK 73104
405-271-8478  Fax: 405-271-4230

Dear Sr/Madam.
07/21/16

Mr. Mark Miller ███████████ is pt of mine, who suffers from ██████████████████
████████████████████████████████████████████████ I believe that moving
from OKC starting an office basd employement will jeopardized ██████████ and put Mr Miller
into unnecessary risk of complication ██████████ I strongly advised him to continue his home base
employment in  Oklahoma City.

Sincerely
Dr. Lukas Haragsim MD.

**The Faculty Practice of the University of Oklahoma College of Medicine**

825 N.E. 10th Street, 4E • Oklahoma City, OK 73104

ELLIS
DECLARATION
EXHIBIT L

| | |
|---|---|
| **From:** | Goldberg, Julia |
| **To:** | Ellis, Melissa |
| **Subject:** | RE: Priorities |
| **Date:** | Thursday, July 28, 2016 7:42:21 AM |

Hi Melissa,

You don't need to hold off to address the performance, but you should consider how his ▇ issues impact his work and try to find a way to alleviate them (provide an accommodation).  I agree that a frank conversation could do the trick – just indicate that you will work with him to accommodate his condition, and he should communicate with you what he thinks he needs to bring his performance back to an acceptable level.  If he doesn't request any accommodations, though, there is nothing stopping you from moving forward with a performance action.

## Julia Goldberg (Roumm)
*Human Resources Specialist, Employee Relations*
*Office of the Chief Component Human Capital Officer (OCCHCO)*
*Federal Emergency Management Agency (FEMA)*
*U.S. Department of Homeland Security (DHS)*
*202.212.3073 (Desk)*
*202.674.0808 (Mobile)*
*julia.goldberg@fema.dhs.gov*

**From:** Ellis, Melissa
**Sent:** Thursday, July 28, 2016 7:36 AM
**To:** Goldberg, Julia
**Subject:** FW: Priorities

Good Morning Julia,

I really feel like I need to have a frank and honest conversation with Mark and let him know that he is leading down the path of a PIP if things don't improve immediately.  Since he is talking about having trouble physically doing his job ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, do you think I should hold off or handle a different way?

I have not responded to the email below and wanted to talk to him via phone rather than email.

Thanks☺

Melissa Ellis
Branch Chief - BPAD Funds Control Branch
Federal Emergency Management Agency
(202) 212-5626 Desk
(202) 701-5573 Cell

**From:** Miller, Mark E
**Sent:** Wednesday, July 27, 2016 11:55 AM

**To:** Ellis, Melissa <Melissa.Ellis@fema.dhs.gov>
**Subject:** RE: Priorities

I truly appreciate your offer to work with me during this time.  I completely understand your frustration and probable anger with the current situation.  I am emotionally at a point where I feel completely overwhelmed and more embarrassed than you can possibly understand. ████████████ ████████████████████████████████████████████████████████████████████.

When I was informed about my duty location situation, I thought I would be able to deal with it pragmatically, but I have come to realize that it has affected me much deeper than I anticipated.  I am hoping that the doctor's note that I forwarded you earlier will have a positive effect moving forward.  I believe that I have been a valuable asset to our office and would sincerely like that to continue.  I have made some progress on the OCIO issues and am working toward the other issue for the OCIO CYBER issue.

I have always appreciated our close relationship and hope that we can work though this current issue as well.  I value our friendship and equally as important our professional relationship.

Most sincerely
Mark

---

**From:** Ellis, Melissa
**Sent:** Wednesday, July 27, 2016 7:42 AM
**To:** Miller, Mark E
**Subject:** Priorities

Good morning Mark,

I hope power is back on and things are back to normal at home.

I want to offer some help in getting you caught up, I thought maybe part of the problem is there are a few things that are important and you need help prioritizing.  Below are the things I know of that are on your plate, please let me know what else I am missing that should be added.  I would like for us to communicate the status of these items frequently.

1  **Loading Mission Support Funding to 100%** - this item should be highest priority as the program has raised this as an issue to the Deputy Administrator.
   a. Alicia is available to assist you with reconciling and posting in IFMIS
   b. Michelle Watts is the Analysis lead so please make sure you are communicating with her to ensure she is reviewing timely if that is an issue
   c. Items approved in the QRR from Monday won't be allocated immediately, FDDs are being finalized.
2  **Centrally Managed Analysis** – Need to know where we stand as far as what has been obligated versus how much we still need to obligate ASAP
   a. I will assign someone to help you with updating the spreadsheet
   b. Once spreadsheet is updated, please socialize with MS, FBO and Analysis group (for

DHSWCF) to ensure everything has been accounted for.

    c.  Allocate funds for what you can and reach out to make a plan for the amounts you still need to allocate but funds aren't available (Analysis branch for help with fund 05, FBO for help with DRS)

    d.  Work with MS to create 146's to commit and also work on preparing the DHSWCF 146s

3    **CAS Crosswalk** – Are we ready?

    a.  Have all recommended changes for the programs been made?

    b.  Do we need to make further changes to structure (NFIF definitely needed work, has this been done?)

    c.  Have you gotten an answer back from DHS (Terrie) on how do we treat fund 27 FEMA Working Capital Fund 70X6200

4    **SWEEPS Testing** –

    a.  Robot deployment will take place in 1 week, we need to immediately start on testing of sweeps

    b.  I will plan to have Jarrod help with testing but you are the lead

Again, please let me know what is missing so that I can be aware and offer help so you are able to work on the above items in priority order.  Let me know if you need anything or have questions.

Thanks,


**Melissa Ellis**
**Branch Chief - BPAD Funds Control Branch**
**Federal Emergency Management Agency**
**(202) 212-5626 Desk**
**(202) 701-5573 Cell**

ELLIS  DECLARATION
EXHIBIT M

| | |
|---|---|
| From: | Ellis, Melissa |
| To: | Miller, Mark E |
| Subject: | FW: Reasonable Accommodation Form |
| Date: | Monday, August 8, 2016 10:42:28 AM |
| Attachments: | RA 256-0-1.pdf |

Mark,

As discussed, attached is the reasonable accommodation form. Please fill out the form, sign and return to me.

Once I receive the form, we will begin the process of drafting the medical questionnaire.

Let me know if you have any questions.

Thanks,

Melissa


Sent from my iFEMA mobile device.

From: Ellis, Melissa
Sent: Friday, August 05, 2016 9:27:51 PM
To: Ellis, Melissa
Subject: Reasonable Accommodation Form

Melissa Ellis
Branch Chief - Funds Control Branch
OCFO-Budget Planning & Analysis Division
Desk (202) 212-5626
BB (202) 701-5573

FEMA 000004

DEPARTMENT OF HOMELAND SECURITY
Federal Emergency Management Agency
## REQUEST FOR REASONABLE ACCOMMODATION

### Privacy Act Statement

**Authority:** The Privacy Act of 1974 (Privacy Act), 5 U.S.C. § 552a as amended, requires that you provide FEMA with certain information in order to process a request. The Rehabilitation Act of 1973, 29 U.S.C. § 701 as amended, stipulates that Federal agencies must provide reasonable accommodation to qualified individuals with disabilities. Further, Executive Order 13164 mandates that Federal agencies provide written procedures for requesting reasonable accommodations and maintain records in order to monitor the procedure's effectiveness.

**Purpose:** To provide reasonable accommodations to employees and applicants with disabilities according to Executive Order 13164.

**Routine Uses:** The information on this form may be disclosed as generally permitted under 5 U.S.C. § 552a(b) of the Privacy Act of 1974, as amended. This includes using this information as necessary and authorized by the routine uses published in DHS/ALL-033 - Reasonable Accommodations Records System of Records, 76 Fed. Reg. 41,274 (July 13, 2011) and upon written request, by agreement, or as required by law.

**Disclosure:** FEMA's obligation to consider an individual's request for reasonable accommodation begins when the individual makes the request. However, the Request for Reasonable Accommodation form should be filled out as soon as possible following a request. The disclosure of information on this form is voluntary; however, failure to provide the requested information may prevent FEMA from accommodating your request.

| | |
|---|---|
| 1. Applicant's/Employee's Name | 2. Telephone Number |
| 3. Organization/Office | 4. Date of Request |

5. Accommodation Requested (Be as specific as possible, e.g., sign language interpreter, or adaptive equipment such as voice recognition/keyboards, screen readers/magnification, etc.):

6. Reason for Request:

7. If accommodation is time sensitive, please explain:

| 8. Applicant's/Employee's Title | 9. Applicant's/Employee's Signature | 10. Date |
|---|---|---|

FEMA FORM 256-0-1 (10/14)

# MANAGEMENT RESPONSE TO REQUEST FOR REASONABLE ACCOMMODATION

| | |
|---|---|
| 11. Request for Reasonable Accommodation (check one): | ☐ Granted    ☐ Interim/Alternate Granted (Provide comments in number 16)<br>☐ Denied (if denied, answer questions in number 13 ) |

12. Applicant's/Employee's Name

13. Request for Reasonable Accommodation Denied Because (May check more than one box):

☐ Accommodation Ineffective

☐ Accommodation Would Cause Undue Hardship        ☐ Accommodation Would Require Removal of an Essential Function of the job

☐ Medical Documentation Inadequate        ☐ Accommodation Would Require Lowering of Performance or Production Standard

☐ Other (Please identify):

14. Detailed reason(s) for the denial of reasonable accommodation (Must be specific, e.g., why accommodation is ineffective or causes undue hardship):

15. If the individual proposed one type of reasonable accommodation which is being denied, but rejected an offer of a different type of reasonable accommodation, explain both the reason for the denial of the requested accommodation and why you believe the chosen accommodation would be effective:

16. Comments

17. If an individual wishes to request reconsideration of this decision, she/he must take the following steps:

○ An employee may appeal directly to his/her Second Level Supervisor.  The employee may present additional information in support of his/her request.

○ An applicant may appeal directly to the Disability Employment Program Manager of the Office of Equal Rights.  The applicant may present additional information in support of his/her request.

18. If an individual wishes to file an EEO Complaint, or to pursue MSPB or union grievance procedures, she/he must take the following steps:

○ For an EEO complaint pursuant to 29 C.F.R. 1614, contact an EEO Counselor in the Office of Equal Rights within 45 days from the date of this denial of reasonable accommodation; or

○ For a collective bargaining claim, file a written grievance in accordance with the provisions of the Collective Bargaining Agreement; or

○ Initiate an appeal to the Merit Systems Protection Board within 30 days of an appealable adverse action as defined in 5 C.F.R. 1201.3

| 19. Name Of Deciding Official | 20. Signature Of Deciding Official | 21. Date |
|---|---|---|

**1 Copy of this form must be provided to the employee or applicant who made the request.**
**1 Copy of this form must be provided to the Disability Employment Program Manager of the Office of Equal Rights.**

ELLIS
DECLARATION
EXHIBIT N

| | |
|---|---|
| From: | Ellis, Melissa |
| To: | Juhlin, Annemarie |
| Subject: | FW: RA comments |
| Date: | Monday, December 5, 2016 11:01:00 AM |
| Attachments: | Miller RA response 256-0-1 120516.pdf |

Annemarie,

Please be advised that Mark Miller is requesting an appeal of his reasonable accommodation denial. Please see the attached form for your review. I will send you additional support provided by Mark and his physician to help you with making a decision.

Melissa Ellis
Branch Chief - BPAD Funds Control Branch
Federal Emergency Management Agency
(202) 212-5626 Desk
(202) 701-5573 Cell

**From:** Miller, Mark E
**Sent:** Monday, December 05, 2016 9:38 AM
**To:** Ellis, Melissa
**Subject:** RA comments

Attached is my response to the RA denial. Comments are in block 16.

Thanks

Mark

DEPARTMENT OF HOMELAND SECURITY
Federal Emergency Management Agency
## REQUEST FOR REASONABLE ACCOMMODATION

**Privacy Act Statement**

**Authority:** The Privacy Act of 1974 (Privacy Act), 5 U.S.C. § 552a as amended, requires that you provide FEMA with certain information in order to process a request. The Rehabilitation Act of 1973, 29 U.S.C. § 701 as amended, stipulates that Federal agencies must provide reasonable accommodation to qualified individuals with disabilities. Further, Executive Order 13164 mandates that Federal agencies provide written procedures for requesting reasonable accommodations and maintain records in order to monitor the procedure's effectiveness.

**Purpose:** To provide reasonable accommodations to employees and applicants with disabilities according to Executive Order 13164.

**Routine Uses:** The information on this form may be disclosed as generally permitted under 5 U.S.C. § 552a(b) of the Privacy Act of 1974, as amended. This includes using this information as necessary and authorized by the routine uses published in DHS/ALL-033 - Reasonable Accommodations Records System of Records, 76 Fed. Reg. 41,274 (July 13, 2011) and upon written request, by agreement, or as required by law.

**Disclosure:** FEMA's obligation to consider an individual's request for reasonable accommodation begins when the individual makes the request. However, the Request for Reasonable Accommodation form should be filled out as soon as possible following a request. The disclosure of information on this form is voluntary; however, failure to provide the requested information may prevent FEMA from accommodating your request.

| | |
|---|---|
| 1. Applicant's/Employee's Name<br><br>Mark E. Miller | 2. Telephone Number<br><br>(202) 701-5663 |
| 3. Organization/Office<br><br>DHS/FEMA/OCFO/BPAD/FCB | 4. Date of Request<br><br>09/11/2016 |

5. Accommodation Requested (Be as specific as possible, e.g., sign language interpreter, or adaptive equipment such as voice recognition/keyboards, screen readers/magnification, etc.):

Requesting current duty location remain in Moore Oklahoma as stated on SF50.

6. Reason for Request:

Medical Reasons:

██████████████████████████████████████████████████

7. If accommodation is time sensitive, please explain:

I have been notified that my employment will be terminated effective 11/1/2016 if I do not return to Washington DC by that time.

| 8. Applicant's/Employee's Title<br><br>Senior Budget Analyst | 9. Applicant's/Employee's Signature<br><br>MARK E MILLER <span style="font-size:small">Digitally signed by MARK E MILLER<br>DN: c=US, o=U.S. Government, ou=Department of Homeland Security, ou=FEMA, ou=People, cn=MARK E MILLER,<br>0.9.2342.19200300.100.1.1=0023157544.FEMA<br>Date: 2016.09.12 12:22:21 -04'00'</span> | 10. Date |

## MANAGEMENT RESPONSE TO REQUEST FOR REASONABLE ACCOMMODATION

11. Request for Reasonable Accommodation (check one):   ☐ Granted   ☐ Interim/Alternate Granted (Provide comments in number 16)

☒ Denied (if denied, answer questions in number 13 )

12. Applicant's/Employee's Name

13. Request for Reasonable Accommodation Denied Because (May check more than one box):

☐ Accommodation Ineffective

☐ Accommodation Would Cause Undue Hardship   ☐ Accommodation Would Require Removal of an Essential Function of the job

☐ Medical Documentation Inadequate   ☒ Accommodation Would Require Lowering of Performance or Production Standard

☐ Other (Please identify):

14. Detailed reason(s) for the denial of reasonable accommodation (Must be specific, e.g., why accommodation is ineffective or causes undue hardship):

The current position requires Mark to be in the office a minimum of 20% per pay period.  Therefore, I am suggesting an alternative solution, Mark needs to come into the Washington, DC office two days per pay period.

15. If the individual proposed one type of reasonable accommodation which is being denied, but rejected an offer of a different type of reasonable accommodation, explain both the reason for the denial of the requested accommodation and why you believe the chosen accommodation would be effective:

16. Comments

Based on my documented medical condition, coming to Washington DC 2 days per pay period would potentially be detrimental to my health.  I request this be reviewed at the Second Level Supervisory level for consideration.

MARK E MILLER

*Digitally signed by MARK E MILLER DN: c=US, o=U.S. Government, ou=Department of Homeland Security, ou=FEMA, ou=People, cn=MARK E MILLER, 0.9.23 2.19200300.100.1.1=00231575 .FEMA Date: 2016.12.05 09:36:27 -05'00'*

17. If an individual wishes to request reconsideration of this decision, she/he must take the following steps:

○ An employee may appeal directly to his/her Second Level Supervisor.  The employee may present additional information in support of his/her request.

○ An applicant may appeal directly to the Disability Employment Program Manager of the Office of Equal Rights.  The applicant may present additional information in support of his/her request.

18. If an individual wishes to file an EEO Complaint, or to pursue MSPB or union grievance procedures, she/he must take the following steps:

○ For an EEO complaint pursuant to 29 C.F.R. 1614, contact an EEO Counselor in the Office of Equal Rights within 45 days from the date of this denial of reasonable accommodation; or

○ For a collective bargaining claim, file a written grievance in accordance with the provisions of the Collective Bargaining Agreement; or

○ Initiate an appeal to the Merit Systems Protection Board within 30 days of an appealable adverse action as defined in 5 C.F.R. 1201.3

| 19. Name Of Deciding Official | 20. Signature Of Deciding Official |
|---|---|
| Melissa A Ellis | MELISSA A ELLIS  *Digitally signed by MELISSA A ELLIS DN: c=US, o=U.S. Government, ou=Department of Homeland Security, ou=FEMA, ou=People, cn=MELISSA A ELLIS, 0.9.2342.19200300.100.1.1=0427751984.FEMA Date: 2016.11.03 12:55:05 -04'00'* |

**1 Copy of this form must be provided to the employee or applicant who made the request.**
**1 Copy of this form must be provided to the Disability Employment Program Manager of the Office of Equal Rights.**

FEMA FORM 256-0-1 (10/14)

ELLIS
DECLARATION
EXHIBIT O

| | |
|---|---|
| **From:** | Ellis, Melissa |
| **To:** | Miller, Mark E |
| **Subject:** | Reasonable Accommodation Questionnaire |
| **Date:** | Tuesday, September 27, 2016 3:22:00 PM |
| **Attachments:** | Medical Questionnaire for Mark Miller Employee.pdf |
| **Importance:** | High |

Mark,

As a result of your request for a reasonable accommodation, attached is a medical questionnaire to be completed by your physician.  Please have the document completed and returned to me for review by Tuesday, October 12th.  This will allow for enough time for a decision to be made before November 1st.


Please let me know if you have any questions.  Also let me know if you need some time off in order to go to the doctors to drop off / pick up the questionnaire.

Thanks,

Melissa Ellis
Branch Chief - BPAD Funds Control Branch
Federal Emergency Management Agency
(202) 212-5626 Desk
(202) 701-5573 Cell

Medical Questionnaire for Employee's Request for Reasonable Accommodation.

1. Attached is a position description for the referenced employee.  In your professional opinion, based on your diagnosis and treatment of this patient, can this employee perform these duties in a location other than home-based telework?

2. In your professional opinion, can the employee perform all the duties detailed in the attached position description without limitation because of the employee's medical condition?  If not, what duties are impacted by the employee's medical condition?  If the impacted duties can be performed, but not 100% or all the time, by what percent is the duties impacted; and for what amount of time?

3. If the impact of the employee's medical condition is episodic, how much is the employee's capacity to perform the duties of the position description reduced by the employee's medical condition during the episodes?

4. Based on office telework policy, the employee is able to telework three days a week. Is there anything in your diagnosis or treatment that prevents the employee from reporting to the Office two days a week?  If so, based on the employee's condition, is there a maximum number of days as an accommodation that the employee can report to the office for in-person dialogue with colleagues and program offices.

5. If the employee can perform the duties in a location other than home-based telework, does your opinion consider whether that other location is an office environment in Washington, DC? If not, what are the medical consequences, if any, that attach to moving the work location to an office environment in Washington, DC?

6. In your professional opinion, do other alternative accommodations exist, other than home-based telework that would meet this employee's needs?

7. What are the medical consequences, if any, that would accompany a decision that discontinues home-based telework for this employee?

8. What are the impacts of a decision to discontinue home-based telework on the employee's capacity to perform the duties of the position description?

**POSITION DESCRIPTION** *(Please Read Instructions on the Back)*

| | |
|---|---|
| 1. Agency Position No. **PH1141** | |
| 6. OPM Certification No. | |

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station |
|---|---|---|---|
| ☐ Redesciption  ☑ New | ☑ Hdqtrs  ☐ Field | Washington, DC | Washington, DC |
| ☐ Reestablishment  ☐ Other | | 7. Fair Labor Standards Act | 8. Financial Statements Required |

Explanation *(Show any positions replaced)*

GS-13: PH1140

| 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| ☑ Exempt  ☐ Nonexempt | ☐ Executive Personnel Financial Disclosure   ☐ Employment and Financial Interest | ☑ Yes  ☐ No |

| 10. Position Status | 11. Position Is | 12. Sensitivity | 13. Competitive Level Code **NS0680** |
|---|---|---|---|
| ☑ Competitive | ☐ Supervisory | ☑ 1—Non-Sensitive   ☐ 3—Critical | |
| ☐ Excepted *(Specify in Remarks)* | ☐ Managerial | | 14. Agency Use **1059** |
| ☐ SES (Gen.)  ☐ SES (CR) | ☑ Neither | ☐ 2—Noncritical Sensitive   ☐ 4—Special Sensitive | |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | Budget Analyst | GS | 0560 | 14 | VTR | 8/10/2011 |
| c. Second Level Review | | | | | | |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | Budget Analyst | GS | 0560 | 14 | | |

16. Organizational Title of Position *(if different from offiical title)*

17. Name of Employee *(if vacant, specify)*

| 18. Department, Agency, or Establishment | c. Third Subdivision |
|---|---|
| DHS/FEMA | |
| a. First Subdivision | d. Fourth Subdivision |
| Office of the Chief Financial Officer | |
| b. Second Subdivision | e. Fifth Subdivision |
| Budget Planning and Analysis Division | |

19. Employee Review-This is an accurate description of the major duties and responsibilities of my position.

Signature of Employee *(optional)*

20. **Supervisory Certification.** *I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that* this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager *(optional)* |
|---|---|
| Craig Prestenbach | Evan T. Farley |
| Deputy Director Budget | Budget Officer |
| Signature                     Date  7/26/11 | Signature                     Date  7/26/11 |

| 21. Classification/Job Grading Certification. *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.* | 22. Position Classification Standards Used in Classifying/Grading Position  JFPCS for Professional and Administrative Work in the Accounting and Budget Group, GS-0500 December 2000 |
|---|---|
| Typed Name and Title of Official Taking Action  Veronica T. Robinson  HR Specialist | **Information for Employees.** The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management. |
| Signature                     Date  8/10/201 | |

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee *(optional)* | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

24. Remarks

THIS IS A PUBLIC TRUST HIGH RISK POSITION          FPL = 14

25. Description of Major Duties and Responsibilities *(See Attached)*

| | | | |
|---|---|---|---|
| NSN 7540-00-634-4265 | Previous Edition Usable | 5008-106 | OF 8 (Rev. 1-85) U.S. Office of Personnel Management FPM Chapter 295 |

FEMA 000280

## Budget Analyst, GS-0560-14

### Introduction

This position is located in the Federal Emergency Management Agency, Office of the Chief Financial Officer, Budget Planning and Analysis Division. The incumbent of this position serves as a senior budget analyst responsible for providing technical and analytical expertise on a variety of issues related to the implementation and administration of FEMA's budget formulation and execution process. This includes analysis of resources, requirements formulation and execution, knowledge of management and organizational theory, and multi-year programming. The position resides within one of the following Branches: (1) Response and Recovery Programs; (2) Protection and National Preparedness & Mitigation; (3) Mission Support; (4) Manpower or (5) Coordination.

### Major Duties

Provides expertise, and serves as liaison, to Agency elements in the development, implementation, coordination, and evaluation of the Agency's budget formulation and execution process, which has a fundamental impact on program development, operations, and capabilities at FEMA. As an expert budget analyst, coordinates with program managers in the development and updating of budget requirements to ensure effective and efficient operation of the Agency. Utilizes fact-finding and investigative techniques that assist the Agency in focusing on its highest priorities for carrying out its mission.

Provides management, analysis and oversight, and expert technical assistance to Agency elements engaged in the formulation and execution of budget resources. Provides guidance to program and administrative staff in the explanation and resolution of problems or questions related to FEMA's budget process, primarily programming and budget formulation and execution.

Serves as a FEMA expert on the interrelationship of the budget process with the Future Years Homeland Security Program (FYHSP) and leads the budget process for the Agency as a whole. Interfaces with the Department of Homeland Security (DHS) and FEMA staff at all levels in the development and implementation of programming and budget within FYHSP and the associated plans, programs, performance metrics and risk analysis.

Serves as a FEMA expert for the Agency's on-line budget management tool – RM Online. Designs and implements methods and procedures as necessary to effectively manage total integration of FEMA requirements and DHS directives within the RM Online system. Incumbent is responsible for the development and publication of RM Online appropriation level budgetary requirements and allocations. Incumbent conducts continuous review and analysis of appropriation and organizational RM Online documents and updates as required.

Maintains expert knowledge of important issues related to the Agency involving legislative, budgetary, Federal, State or local developments and actions that affected Agency policies, plans, programs, missions and activities associated with future year budgets. Reviews and comments on relevant program documentation (plans, resources projections, and budgetary submissions) for the Agency. Interacts and consults with FEMA management and staff in both headquarters and regional offices concerning Agency missions, policies, programs, performance objectives, and resource requirements as they related to budgetary requirements.

Formulates consolidated Agency budgets for important, substantive national programs on both a long and short-term basis. Prepares Office of Management & Budget (OMB) apportionments and Agency-wide allocations. Conducts continuous review and analysis of Agency-wide budget allocations.

Acts as expert within the Agency in the development, explanation and resolution of problem areas for programming and budget issues that are of great interest to Agency management. Conducts a broad range of special studies and investigations and develops compromises and solutions to problems and conflicts that may have an agency-wide impact. Issues and findings are reported directly to the Branch Chief, Deputy Budget Director and/or Budget Director for decision-making purposes as required. These studies can often address controversial issues.

Reviews Agency program plans, resource projections and budgetary submissions provided by the various program and support offices of the Agency. Submits comments and suggestions directly to the Branch Chief, the Deputy Budget Director and/or the Budget Director. Incumbent's responsibilities assist the Chief Financial Officer (CFO), Deputy Chief Financial Officer (DCFO), and Budget Director to ensure compliance with DHS, OMB and Congress as they relate to budget formulation and execution.

Researches, evaluates, and provides feedback on problematic trends and patterns in programming and budgeting requirements. Participates in strategic (long-term) and operational (short-term) planning efforts for the Agency that affects budget and performance. Identifies alternative plans and budget requirements whose implementation will enhance efficiency and effectiveness of the Agency.

Works on special projects and performs other duties as assigned in support of the Office's mission.

Factor 1. Knowledge Required by the Position

Expertise and skill in: applying, advanced budget formulation and execution principles and practices along with a comprehensive knowledge of planning, programming, and budgeting regulations, guidelines and processes in order to: advise senior staff throughout the Agency and outside the Agency on a variety of situations and issues that involve applying or adapting new theories, concepts, principles, standards, methods or practices for budgetary requirements determination.

Expert knowledge of: analytical and evaluative methods plus a thorough understanding of how regulatory or enforcement programs are administered; in order to select and apply appropriate program evaluation and budgetary utilization techniques in determining the extent of compliance with rules and regulations issued by the Agency or in formulation and allocating program budgetary requirements. This may include evaluating the content of new or modified legislation for projected impact upon the Agency's programs and budgetary resources.

Comprehensive knowledge of: the interrelationship of the Agency's command structure, missions, programs, and key support functions; the Agency's strategic plan; quantitative and qualitative methods and techniques to formulate budget requirements covering complex program functions or missions; budgetary and financial management principles and techniques as they relate to programming and budget; the Agency's planning, acquisition, and management process in order to prepare long-range (5 year) and short-range programming and budget guidance in accordance with broad agency program policies and objectives.

Expertise and skill in: analyzing, developing criteria for, and evaluating policies and procedures affecting agency budgetary requirements; analyzing and evaluating the capabilities, effectiveness, feasibility and cost of proposed and alternative programs; analyzing the impact of resource reduction options upon agency capabilities and performance; analyzing and validating cost estimates of planned or proposed

budgetary requirements; developing budget formulation guidance as part of the Agency's planning, programming and budgeting process upon which program elements multi-year plans are to be based.

Factor 2.  Supervisory Controls

The incumbent works under the general supervision of the Branch Chief who provides broad policy guidance.  The incumbent independently plans and carries out assignments and provides direct support to FEMA elements.  Work is reviewed in terms of overall adequacy with respect to the effect on overall programs.

The incumbent works within guidelines that include legislative intent, general Agency regulations and policies, DHS publications, OMB publications, and GAO publications.  The incumbent must exercise considerable judgment and ingenuity in interpreting or developing guidance.

The incumbent is responsible for significant Agency level budgetary functions and is expected to apply a very high degree of policy and managerial analysis, technical knowledge, and imagination and creativity in managing and directing projects and recommending solutions to complex problems concerning the administrative and programmatic aspects of Agency programming and budgetary operations.

Factor 3.  Guidelines

The incumbent uses guidelines that are often ambiguous and express conflicting or incompatible goals and objectives, requiring extensive interpretation.  The incumbent also formulates interpretations that may take the form of policy statements and guidelines.  The incumbent uses judgment and ingenuity and exercises broad latitude to determine the intent of applicable guidelines in order to develop policy and guidelines for use throughout the Agency.

Agency management and senior staff recognize the incumbent as a subject matter expert in the development and/or interpretation of guidance on budget and program evaluation in numerous specialized areas (e.g., strategic planning, contingency and emergency planning, risk analysis, and budget utilization and control.)

Factor 4.  Complexity

Work consists of broad functions and processes such as planning and supporting efforts to address areas where precedents do not exist and establishing new concepts and approaches.  Assignments are characterized by exceptional breadth and intensity of effort and often involve several activities pursued concurrently or sequentially with the support of others within or outside of the Agency.

The incumbent makes decisions that involve major uncertainties with regard to the most effective approach or methodology to be applied.  These uncertainties typically result from continuing changes in mission requirements, or new or revised legislation.  The incumbent articulates and defends Agency budgetary requirements on critical policy issues, and briefs the Agency's senior management on the administration and management of budget and performance requirements.

The incumbent exercises judgment and originality in making decisions on whether to implement changes in Agency budget allocations.  Often the incumbent develops new standards, methods, and techniques. The work frequently involves integrating the activities of multiple program areas.

Factor 5.  Scope and Effect

Work involves analyzing the impact of actual or potential changes in the Agency's FHYSP and multi-year investment plans, and recommending appropriate changes to budgetary requirements. Work includes assistance to program staff in conducting comprehensive analysis of budgetary requirements and available resources to enhance productivity in accordance with Department of Homeland Security and FEMA priority programs and projected requirements.

Work ensures the Agency's ability to respond to major changes in business models and new technologies that affect the accomplishment of the Agency mission. Work affects the Agency's ability to effectively and efficiently apply available resources. Work enhances the Agency's ability to make informed decisions on the focus and direction of major programs and investments, which affects the work of other technical experts or the development of major aspects of Agency-wide programs.

Factor 6.  Personal Contacts

Contacts are extensively with:  FEMA Headquarters and Regional staff at all levels; with officials in other government departments and agencies; and with external organizations, including consultants, contractors, vendors, representatives of professional associations or public interest groups, in moderately unstructured setting. Contacts may also be made with senior executives and program officials who are several managerial levels removed from the incumbent, when such contacts occur on an ad hoc basis. The incumbent must recognize or learn the role and authority of each party during the course of the meetings.

Factor 7.  Purpose of Contacts

The purpose of such contacts is to influence and persuade incumbents and managers to accept and implement findings and recommendations. The incumbent may encounter resistance as a result of issues such as organizational conflict, competing requirements, or resource problems. The incumbent must be skillful in approaching contacts to obtain the desired effect; e.g., gaining compliance with established policies and regulations by persuasion or negotiation.

Factor 8.  Physical Demands

The work is sedentary. Some work may require walking and standing in conjunction with travel and attendance at meetings and conferences away from the work site. The employee may carry light items such as papers or books, or may drive a motor vehicle. The work does not require any special physical effort..

Factor 9.  Work Environment

Work is performed in an office setting. The work area is adequately lighted, heated, and ventilated. The work environment involves everyday risks or discomforts that require normal safety precautions. The employee may occasionally be required to travel to regions or field offices.

Position Sensitivity: This is a Non-Sensitive position. The incumbent must be able to obtain and retain a Public Trust-High Risk clearance.



### The UNIVERSITY of OKLAHOMA®
#### Health Sciences Center

College of Medicine
Nephrology Section

October 11, 2016

To Whom It May Concern

RE: Mark Miller

Dear Madam/Sir,

Please allow me to provide a professional opinion about a patient of mine who requested an assessment of his ability to perform his work duties outside of a home based environment.  Mr. Miller is a patient of mine ███████████████████████████████████████████████████████████████

██████████████████████████ I believe that a transfer from home based environment would put Mr. Miller at significant risk ████████████████████████████████████████████████████████████

To substantiate my opinion please find enclosed specific answers for the questionnaire I have received.

1.  In my professional opinion ████████████████████████████ he cannot perform his duties outside of home based environment.
2.  The employee cannot perform duties as outlined in the attached position description ████████████████
3.  The impact of the employee's medical condition is not episodic.  He is at risk on a daily basis.
4.  The patient ████████████████████████████████████ cannot report to the office two days per week.
5.  In my professional opinion, the employee should not perform any duties outside the home based office.
6.  In my professional opinion, there are no alternative accommodations.
7.  ████████████████████████████████████████████

Please find enclosed the questionnaire that was provided to me.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Lukas Haragsim, MD
Professor of Medicine
Nephrology and Hypertension

College of Medicine Building, Nephrology Section, Suite 5300, 800 Stanton L. Young Blvd., Oklahoma City, Oklahoma 73104
PHONE: (405) 271-6842 FAX: (405) 271-6496



The UNIVERSITY of OKLAHOMA®
Health Sciences Center

College of Medicine
Nephrology Section

October 25, 2016

To Whom It May Concern

RE: Mark Miller

Dear Madam/Sir,

This is to clarify line item number 2 of my previous letter.

Mr. Miller is capable of performing his job duties without affecting his health if performed from his home office. He would not be able to perform his duties as previously stated on line item 2 if he were working outside of his home office, in a more stressful environment.

If you have any further question, please do not hesitate to contact me.

Sincerely,

Lukas Haragsim, MD
Professor of Medicine
Nephrology and Hypertension Section

FEMA 000292

ELLIS
DECLARATION
EXHIBIT P

U.S. Department of Homeland Security
Washington, DC 20472

 FEMA

June 5, 2017

MEMORANDUM FOR:   Mark Miller
Budget Analyst, Budget, Planning and Analysis Division (BPAD)
Office of the Chief Financial Officer

FROM:   Melissa Ellis
Chief, BPAD Funds Control Branch   **MELISSA A ELLIS**
Office of the Chief Financial Officer

Digitally signed by MELISSA A ELLIS
DN: c=US, o=U.S. Government,
ou=Department of Homeland Security,
ou=FEMA, ou=People, cn=MELISSA A
ELLIS,
0.9.2342.19200300.100.1.1=0427751984.FE
MA
Date: 2017.06.05 17:24:53 -04'00'

SUBJECT:   Evaluation of Performance During Performance Improvement Plan
Period

This serves as notice that you have failed to successfully complete the Performance
Improvement Plan (PIP), dated January 27, 2017.  Specifically, during your performance
improvement period, your performance was "Unacceptable" in the following Core Competency
and Performance Goals:

> **Core Competency 5:** Technical Proficiency
> **Performance Goal 1:** BRT Spend Plan Approvals and Weekly Analysis of assigned
> accounts and program spending to include centrally managed Funds
> **Performance Goal 2:** Lead on Special Projects for instance but not limited to Monthly
> Program Analysis Briefing; CAS Crosswalk, & BRT testing misc.
> **Performance Goal 4:** BPAD SOPs.

## PERFORMANCE DURING PIP PERIOD

For each Core Competency and Performance Goal, the PIP issued to you described the
applicable performance standards and the actions you needed to take to achieve an acceptable
level of performance ("Achieved Expectations").

> **Core Competency 5: Technical Proficiency**

A review of your performance during the PIP period revealed that you failed to achieve
expectations regarding the instructions and assignments in the PIP for Core Competency 5:
Technical Proficiency.  Specifically, your performance did not satisfy the following:

1. *Complete all assignments by deadline assigned with no more than 2 requests for extension.
   A request for an extension must be made prior to the deadline and provide a good cause
   justification for the extension.*

During the PIP period, you frequently failed to complete assignments by their deadlines.  The following is a list of specific instances where you failed to complete assignments by their deadlines:

- In the PIP, you were directed to complete the Reconciliation for planned vs. actuals for Centrally Managed (CM) activities by 5:00 pm on the first business day of each month. Accordingly, reconciliations were due on February 1, 2017, March 1, 2017, and April 1, 2017.  As of the date of this memorandum, I have not received any of these reports.
- In the PIP, you were directed to complete a Monthly Mission Support execution review due on the 15th day of each month (or first business day thereafter).  Accordingly, the execution reviews were due February 15, 2017, March 15, 2017, and April 17, 2017.  As of the date of this memorandum, I have not received the execution reviews due on February 15, 2017 or April 17, 2017.
- In the PIP, you were directed to conduct a meeting with the Funds Control Branch (FCB) team to discuss a monthly briefing template for program analysis by February 10, 2017. Nevertheless, this meeting was not conducted until February 28, 2017.
- In the PIP, you were directed to provide a sample template to the FCB team on program analysis within 3 weeks of the meeting.  Nevertheless, you did not send the sample template to the FCB team within 3 weeks of the meeting as required, and as of the date of this memorandum, you have not provided the sample template to the FCB team.
- In the PIP, you were directed to complete a Standard Operating Procedure (SOP) for the Mt. Whether Rent process due on March 21, 2017.  To date I have not received a draft of this SOP.

In addition to failing to timely complete these assignments, not once did you request an extension for completion prior to the due date of the assignments.

2.  *Respond to or acknowledge all emails from FCB Chief, Deputy Budget Director, or Budget Director within 24 hours of receipt.  If you cannot provide the information requested, explain in your response why the information is not available and give an estimate as to how long you anticipate it will take you to respond with more information.*

During the PIP period, you failed to respond or acknowledge the following e-mails:

- On February 8, 2017, I sent you a request concerning the Undelivered Orders (UDO) Certification, asking for an update on whether task was complete.  You did not respond to or acknowledge this email.
- On February 15, 2017, I sent you an email to notify you that several items were outstanding and you had not requested extensions.  Specifically, I asked you why you were late in turning in the monthly reconciliation for CM activities and the monthly execution review for MS programs, and when you expected to complete them. You did not respond of acknowledge this email.
- On February 16, 2017, I send you a follow-up email concerning the past due items asking when I would receive them.  You did not respond to this email.
- On February 23, 2017, I sent an email asking for an update of the tasks we discussed when we met on Tuesday, February 21, 2017.  Although you were on leave that day, you did not respond or acknowledge my email when you returned.

2

- On March 15, 2017, I emailed you questions to follow up on your monthly execution review of Mission Support. You did not respond or acknowledge my email.

In addition to failing to timely respond to or acknowledge these emails as required, you neither explained why the information requested was not available, nor gave an estimate as to how long you anticipated it would take to respond with more information.

### Performance Goal #1: BRT Spend Plan Approvals and Weekly Analysis of assigned accounts and program spending to include centrally managed Funds

A review of your performance during the PIP period also revealed that you failed to achieve expectations regarding the instructions and assignments in the PIP for this Performance Goal. Specifically you failed to:

3. *Prepare monthly reconciliation of planned versus actuals for Centrally Managed activities. This analysis must be completed by 5:00 p.m. ET on the first business day of each month to reflect prior month activity.*

These assignments were due February 1, 2017, March 1, 2017, and April 1, 2017, but I did not receive any completed reconciliations. Although you told me that you were working on the tasks, and on March 14, 2017, even provided me with a partially completed report, you failed to turn in a completed report for any single month, much less all three. Although you stated you were having trouble wrapping your head around the task, my attempts to help you were unsuccessful. I provided ideas like reaching out to the OCFO Reporting Branch to get a customized report so that you had better information to work with. However, despite the Reporting Branch providing you with two customized report updates, you did not translate the data into a reconciliation, or otherwise seek guidance on how to complete or improve the assignment.

4. *Prepare monthly execution review of the Mission Support programs. Provide update to the FCB Branch Chief on 15th of each month (or next business day following the 15th).*

For the three times this assignment was due during the PIP (*i.e.*, on February 15, 2017, March 15, 2017, and April 17, 2017), I only received the monthly execution review on March 15, 2017. You did not submit or otherwise request an extension for the February or April execution reviews. Additionally, for the March 15, 2017 submission, I e-mailed you with follow up questions, to which you failed to respond. As a result, you did not meet expectations for this assignment.

### Performance Goal #2: Lead on Special Projects for instance but not limited to Monthly Program Analysis Briefing; CAS (Common Appropriation Structure) Crosswalk, & BRT testing misc.

The review of your performance during the PIP period also revealed that you failed to achieve expectations regarding the instructions and assignments in the PIP for this Performance Goal. Specifically, you failed to:

3

2. *Take Lead role in creating a monthly briefing template on program analysis.*
   a. *Within two weeks of the start of the PIP, meet with the FCB team to get ideas on the monthly briefing template on program analysis.*
   b. *Provide the FCB team with a sample template within three weeks after meeting with and seeking feedback from team.*
   c. *Incorporate the team's feedback into the monthly briefing template and submit the final product to the FCB Branch Chief no later than one week after providing the template to team.*
   d. *Train the FCB staff on the monthly briefing template within two weeks of the FCB Branch Chief's approval of the template.*

You did not achieve expectations for this goal. Although you conducted an initial meeting with the FCB team to get preliminary ideas on the monthly briefing template on program analysis, the meeting took place over 2 weeks late, on February 28, 2017. Even then, the meeting did not go well because the FCB team had several questions and you decided that you wanted to call another meeting once you got clarification before answering them; however, you never scheduled this follow-up meeting so their questions went unanswered. Additionally, you failed to complete any of the other aspects of taking the lead role in creation of the template. You did not provide the team with a sample template, and therefore you received no feedback from them and you did not submit a final product to me. Likewise, with no final product, you failed to train the staff on using the template.

### Performance Goal #4: BPAD SOPs

The review of your performance during the PIP period also revealed that you failed to achieve expectations regarding the instructions and assignments in the PIP for this Performance Goal. Specifically, you failed to:

1. *Complete a draft of SOP for Funds Control Branch Process for the Centrally Managed process by Tuesday, March 14, 2017.*
2. *Incorporate my feedback into the draft SOP and submit a final draft to me within five business days of receiving my feedback.*
3. *Complete a draft of SOP for the OCFO Mt. Weather Rent procedure by Tuesday, March 21, 2017.*
4. *Incorporate my feedback into the draft SOP and submit a final draft to me within five business days of receiving my feedback.*

Although you provided me a draft document of a SOP for Funds Control Branch Process for the Centrally Managed Process on March 6, 2017, the document you provided did not lay out the steps of this process and appeared to be work produced by another branch. Specifically, the SOP appeared to be an SOP of the Mission Support, OA Direct Reports, Regions, Mitigation (MORM) Branch, who are responsible for only for the formulation piece of the Centrally Managed Process. Despite me giving you feedback on your document during our weekly meeting on March 13, 2017, you failed to incorporate my feedback and make changes to this SOP and you never submitted a final draft to me. Additionally, you failed to submit a draft SOP

4

for the OCFO Mt. Weather Rent procedure by March 21, 2017, or by the end of the PIP, as required.

This is not a disciplinary action, but notice of your performance during the PIP. As a result of your performance failure, you may be subject to an adverse action pursuant to 5 C.F.R. § 432.105.

If you have any questions concerning this memorandum, please contact Julia Goldberg, Office of the Component Human Capital Officer, Workforce Relations, Employee Relations Branch at 202-212-3073 or julia.goldberg@fema.dhs.gov.


cc:
Goldberg, J., LER

Attachments (11):
1. Employee Performance Plan and Appraisal Form for Mark Miller, Budget Analyst, covering from January 1, 2016, to December 31, 2016
2. Position Description, Budget Analyst, GS-0560-14, Agency Position No. PH1141, dated August 10, 2011
3. Memorandum from Melissa Ellis to Mark Miller, subject: Performance Improvement Plan, dated January 27, 2017 and attachments thereto
4. Memorandum from Melissa Ellis to Mark Miller, subject: Performance Improvement Plan Extension, dated March 28, 2017
5. Email from Melissa Ellis to Mark Miller, dated February 8, 2017, subject: UDO Certification
6. Email from Melissa Ellis to Mark Miller, dated February 15, 2017, subject: Past Due Items
7. Email from Melissa Ellis to Mark Miller, dated February 16, 2017, subject: [BLANK]
8. Email from Melissa Ellis to Mark Miller, dated February 23, 2017, subject: [BLANK]
9. Email from Melissa Ellis to Mark Miller, dated March 15, 2017, subject: BRT v CR v IFMIS as of March 15 2017.xlsx
10. Email from Mark Miller to Melissa Ellis, dated March 14, 2017, subject: 2017 Centrally Managed ACCS lines_Current.xlsx
11. Centrally Managed Program Desktop Reference, submitted by Mark Miller to Melissa Ellis on March 6, 2017


### Acknowledgement of Receipt

*You are requested to sign and date the acknowledgment copy of this memorandum as evidence that you have received it. Your signature does not indicate that you agree or disagree with the contents of this memorandum. However, your failure to sign the acknowledgment copy will not void the contents of this memorandum.*


_____          _____
Mark Miller                                       DATE

5

000005

ELLIS
DECLARATION
EXHIBIT Q

U.S. Department of Homeland Security
Washington, DC  20472

 **FEMA**

June 5, 2017

MEMORANDUM FOR:    Mark Miller
Budget Analyst, Budget, Planning and Analysis Division (BPAD)
Office of the Chief Financial Officer

FROM:    Melissa Ellis
Chief, BPAD Funds Control Branch
Office of the Chief Financial Officer

**MELISSA A ELLIS**

Digitally signed by MELISSA A ELLIS
DN: c=US, o=U.S. Government,
ou=Department of Homeland Security,
ou=FEMA, ou=People, cn=MELISSA A ELLIS,
0.9.2342.19200300.100.1.1=0427751984.FE
MA
Date: 2017.06.05 14:01:14 -04'00'

SUBJECT:    Notification of Proposed Removal

This is notice that I propose to remove you from your position as a Budget Analyst, GS-0560-14, Office of Chief Financial Officer, Federal Emergency Management Agency (FEMA), and the Federal Service. This action is being taken in accordance with 5 U.S.C. Chapter 43, 5 C.F.R. Part 432, FEMA Manual 255-3-1. Employee Discipline Manual, dated December 29, 2015, and FEMA Manual 255-1-1, FEMA Employee Performance Management Program (EPMP), dated February 21, 2013. Your present duty and pay status are not affected by this notice. If a decision is made to sustain this proposal, the decision will be effected no earlier than thirty (30) calendar days from the date you receive this notice. The reasons for this proposal are as follows:

During the 2016 rating cycle, you failed to meet the requirements for acceptable performance ("Achieved Expectations") in your position. Your performance reviews provided to you on October 16, 2016, and January 20, 2017, notified you of your unacceptable performance. As a result of your unacceptable performance, on January 27, 2017, I placed you on a Performance Improvement Plan (PIP). The PIP was designed to give you a reasonable opportunity of 60 days to improve your performance on the following Core Competencies and Performance Goals:

    **Core Competency 5:** Technical Proficiency
    **Performance Goal 1:** BRT Spend Plan Approvals and Weekly Analysis of assigned accounts and program spending to include centrally managed Funds
    **Performance Goal 2:** Lead on Special Projects for instance but not limited to Monthly Program Analysis Briefing; CAS Crosswalk, & BRT testing misc.
    **Performance Goal 4:** BPAD SOPs.

The PIP described what would be necessary to demonstrate an acceptable level of performance. On March 28, 2017, I extended your PIP an additional twenty (20) days because you were absent a number days during the first month of the PIP. The attached memorandum, Subject: "Evaluation of Performance During Performance Improvement Plan Period" describes the ways in which you failed to demonstrate an acceptable level of performance in Core Competency 5 and Performance Goals 1, 2, and 4.

Your poor performance directly impacts the Agency's ability to function efficiently. Therefore, I propose your removal from the Federal service based on your unacceptable performance in Core

Core Competency 5: Technical Proficiency, Performance Goal 1: BRT Spend Plan Approvals and Weekly Analysis of assigned accounts and program spending to include centrally managed Funds, Performance Goal 2: Lead on Special Projects for instance but not limited to Monthly Program Analysis Briefing; CAS Crosswalk, & BRT testing misc., and Performance Goal 4: BPAD SOPs.

**Right to Reply**

This is only a proposal. Annemarie Juhlin, Deputy Budget Director will make the decision on this proposal. You have the right to reply to this proposal orally and/or in writing within seven (7) calendar days from the date you receive this notice. If you disagree with this proposal, your reply should set forth the reasons for your belief that this action is not warranted and any mitigating factors you would like the Deciding Official to consider. Your reply may include affidavits or other supporting documents. Your written reply or request to schedule an oral reply must be directed to Julia Goldberg at julia.goldberg@fema.dhs.gov or (202) 212-3073.

If you believe you need additional time to reply to this proposal, you may request an extension. A request for an extension must be submitted to Ms. Goldberg in writing prior to the expiration of your reply period. Your request should indicate the reasons why additional response time is needed and how much additional time is requested. Extensions are not automatically granted, but will be based on a showing of good cause.

If you do not respond to this proposal, a decision will be made by Ms. Juhlin based upon all the evidence on record. If you submit a timely reply to this notice, a decision will not be made until full consideration is given to that reply. In any event, you will be advised in writing of the decision.

**Right to Representation**

You have the right to be represented by an attorney or other representative of your choice. The name of your representative must be designated in writing to Ms. Goldberg within five (5) calendar days of your receipt of this notice. Your representative may be disallowed if the individual's activities as representative would cause a conflict of interest or position, or if the representative is a FEMA employee whose release from his or her official position would give rise to unreasonable costs or whose priority work assignments preclude his or her release.

**Right to Official Time**

If otherwise in a duty status, you will be allowed up to 8 hours of official time to prepare your response to this proposal notice. This includes reviewing the material relied upon to support this proposed action and securing affidavits and other documentary evidence or information you may need, and preparing your written and/or oral reply. You must contact your immediate supervisor(s) to make advance arrangements for the use of official time.

**Right to Review Supporting Material**

You and your representative, if any, are entitled to review the material relied upon to support this proposal. A copy of this material is enclosed with the "Evaluation of Performance During Performance Improvement Plan Period" memorandum and its attachments.

000002

**Employee Assistance Program**

If you would like to talk with an Employee Assistance Program (EAP) Counselor about this matter or any personal and/or work-related matter, a counselor can be reached on 1-800-222-0364. You do not have to pay a fee to use the service. However, if the counselor refers you outside the program and if any costs are incurred, those costs are your responsibility. Consultations with a Counselor are strictly confidential - the Counselor cannot release information about you to anyone, without your permission. This is a voluntary program - meaning you cannot be ordered to contact a Counselor.

If you have any questions concerning this notice, please contact Julia Goldberg, Office of the Chief Component Human Capital Officer, Employee Services, Labor and Employee Relations Branch via email at julia.goldberg@fema.dhs.gov or telephone at (202) 212-3073.

<u>Attachments</u>
Attachment 1: Memorandum for Mark Miller, from Melissa Ellis, Subject: Evaluation of Performance During Performance Improvement Plan Period, dated June 5, 2017, with attachments.


cc:
Goldberg, J. LER


### Acknowledgement of Receipt

*You are requested to sign and date the acknowledgment copy of this memorandum as evidence that you have received it. Your signature does not indicate that you agree or disagree with the contents of this memorandum. However, your failure to sign the acknowledgment copy will not void the contents of this memorandum.*


_____          _____
Mark Miller                                                                      DATE

000003

ELLIS
DECLARATION
EXHIBIT R

U.S. Department of Homeland Security
Washington, DC  20472



August 22, 2017

MEMORANDUM FOR:     Mark Miller
                    Budget Analyst, Budget, Planning and Analysis Division (BPAD)
                    Office of the Chief Financial Officer

FROM:               Annemarie Juhlin      ANNEMARIE A JUHLIN
                    Deputy Budget Director
                    Office of the Chief Financial Officer

SUBJECT:            Removal Decision

This serves as my decision to remove you from your position as a Budget Analyst, GS-0560-14,
Office of Chief Financial Officer, Federal Emergency Management Agency (FEMA), and the
Federal service.  This action is being taken in accordance with 5 U.S.C. Chapter 43, 5 C.F.R.
Part 432, FEMA Manual 255-3-1, Employee Discipline Manual, dated December 29, 2015, and
FEMA Manual 255-1-1, FEMA Employee Performance Management Program (EPMP), dated
February 21, 2013.

The specifics were summarized in the Notice of Proposed Removal, dated June 5, 2017, issued to
you by Melissa Ellis, Chief, Budget, Planning, and Analysis Division, and copies of the materials
relied upon to support the Proposal were made available to you.  In the proposal notice you were
advised of your right to reply, both orally and/or in writing.  On June 29, 2017, you made an oral
reply; however, you did not make a written reply.

I have given careful consideration to the entire record in this matter, including your oral reply.
Based on my review of the entire record, I find there is substantial evidence that you have failed
to demonstrate an acceptable level of performance.  Additionally, I find that your removal is
fully warranted.  Therefore, I have decided to remove you effective August 22, 2017.

**Employee Rights**

This is a final decision.  You have the right to contest this action through one of the avenues
outlined below.  You may, as appropriate, file an appeal with the Merit Systems Protection
Board (MSPB), initiate a complaint of discrimination, file a complaint with the Office of Special
Counsel (OSC), or file a grievance.  However, you may elect only one avenue and your election
will be considered final based on which action is filed first.

1. <u>Appeal to the MSPB.</u>  You have the right to appeal this action to the MSPB.  Your appeal
   must be received by the MSPB not later than 30 calendar days after the effective date of
   this action, or thirty (30) calendar days after your receipt of this notice, whichever is later.
   Your appeal must be personally delivered or mailed to Regional Director, Merit Systems
   Protection Board, 1901 S. Bell Street, Suite 950, Arlington, VA 22202, or you may file

your appeal by facsimile at 703-756-7112. You must submit two copies of both your appeal and all attachments. You may also prepare and file an appeal electronically by using e-Appeal, the MSPB's online filing procedure, found at http://e-appeal.mspb.gov. The MSPB regulations may be viewed and downloaded at www.mspb.gov. A copy of the MSPB appeal form is available on MSPB's website or may be obtained by contacting the Employee Relations Specialist identified below.

If you choose to appeal this action, the MSPB should send the Acknowledgement Order and copy of the appeal to FEMA, Office of Chief Counsel, Leigh Hoburg, Deputy Associate Chief Counsel for Personnel Law, 500 C Street, S.W., 7th Floor, Washington, D.C. 20472 - 3715, leigh.hoburg@fema.dhs.gov, telephone – 202-646-7396, fax – 202-212-4949.

2. <u>Complaint of Discrimination.</u> If you believe this action resulted from prohibited discrimination based on your race, color, religion, sex, national origin, disability, age, genetic information, or reprisal, you may do <u>one</u> of the following:
   (a) Include this allegation when appealing to the MSPB;
   (b) Initiate a discrimination complaint by contacting the FEMA Office of Equal Rights; or
   (c) If you are a bargaining unit employee, file a grievance in accordance with the applicable negotiated grievance procedure.

If you choose to contact the Office of Equal Rights, you must do so within 45 calendar days of the effective date of this action. Your complaint should be sent in writing to Director, Office of Equal Rights, DHS/FEMA, 500 C Street, S.W., 4th Floor, Washington, D.C. 20472. You may reach the Office of Equal Rights at 202-646-3535.

3. <u>Whistleblower Protection.</u> If you allege this action is being taken against you because of reprisal for whistleblowing activity; you may elect <u>one</u> of the following remedies:
   (a) You may file an appeal to the MSPB (5 U.S.C. § 7701);
   (b) If you are a bargaining unit employee, you may file an appeal through an applicable negotiated grievance procedure (5 U.S.C. § 7121(d)); or
   (c) You may seek corrective action under subchapters II and III of 5 U.S.C. Chapter 12, by filing a complaint with the OSC (5 U.S.C. § 1214).

If you choose to first seek corrective action by filing a complaint with the OSC, your subsequent appeal to the MSPB will be deemed an Individual Right of Action (IRA) appeal. Pursuant to 5 C.F.R. § 1209.2, you will be limited to the rights associated with an IRA appeal. Specifically, the MSPB will <u>only</u> consider whether you have demonstrated that one or more whistleblowing disclosures was a contributing factor in the Agency taking this personnel action against you, and if so, whether the Agency has demonstrated by clear and convincing evidence that it would have taken this personnel action in the absence of the protected disclosure(s). You may not raise affirmative defenses other than reprisal for whistleblowing activities, such as claims of discrimination or harmful procedural error.

4. <u>Grievance.</u> You have the right to grieve this action through the negotiated grievance procedure. Your grievance must be received by Benjamin Moncarz, Budget Director, OCFO, no later than 15 days in accordance with Article 35 of the Collective Bargaining Agreement between FEMA and American Federation of Government Employees (AFGE) Council 56, dated December 5, 2016. Filing a grievance will not extend the time limits for filing an appeal with the MSPB. If you elect to file a grievance and proceed to arbitration, you have the right to request MSPB review of the final decision of an arbitrator in accordance with the procedures and time limits in 5 C.F.R. § 1201.155.

**Employee Assistance Program**

If you would like to talk with an Employee Assistance Program (EAP) Counselor about this matter or any personal and/or work-related matter, a counselor can reached on 1-800-222-0364. You do not have to pay a fee to use the service. However, if the counselor refers you outside the program and if any costs are incurred, those costs are your responsibility. Consultations with a Counselor are strictly confidential- the Counselor cannot release information about you to anyone, without your permission. This is a voluntary program - meaning you cannot be ordered to contact a Counselor.

If you have any questions concerning this notice, please contact Julia Goldberg, Office of the Chief Component Human Capital Officer, Employee Services Division, Employee Relations Branch at julia.goldberg@fema.dhs.gov or 202-212-3073.

cc:
Goldberg, J., ER

**Acknowledgement of Receipt**

*You are requested to sign and date the acknowledgment copy of this letter as evidence that you have received it. Your signature does not indicate that you agree or disagree with the contents of this letter. However, your failure to sign the acknowledgment copy will not void the contents of this letter.*

_____          _____
MARK MILLER                                              DATE

3

ELLIS
DECLARATION
EXHIBIT S

| | |
|---|---|
| **From:** | Ellis, Melissa |
| **To:** | Benson, Shalini |
| **Subject:** | JW - Change of Duty Station |
| **Date:** | Monday, May 23, 2016 8:27:14 AM |

Shalini,

I would like for OCFO to consider changing Jennifer Wohltman's duty station to New Jersey. I would like to remind you that Jen has been a superior performer since she has come on board in BPAD. She has lead us in the fight to remediate audit findings by creating and enforcing new budget execution processes. Jen's hard work has recently been recognized as she received a DHS Outstanding Employee Award, this award was presented to her by the DHS Secretary. Jen also was one of three OCFO-wide employees that received a quality step increase (QSI) because she has made such an impact on Budget Execution.

Below are some PROS & CONS of changing Jen's duty station:

PROS:

-       Jen works independently and is very self-motivated. I firmly believe she will continue to work hard from her home office.

-       Since Jen recently gave birth, she will need extra time at home to bond with her family and nurse her new baby.

-       Providing Jen with a change in duty station shows her our commitment and trust in her. I think this will be motivating for her to continue keeping up the good work she does for us.

-       Making a change in duty station, shows we are serious about supporting Jen. As OCFO or BPAD management changes in the future, the change in duty station will safe guard Jen from losing this benefit of working from home more often than the FEMA Telework policy permits.

CONS:

-       We are not in compliance with the current FEMA Telework agreement. Employees need to be in the office a minimum of 2 days per pay period. Realistically if the expectation is for Jen coming to DC two days per pay period is too much. If Jen is required to come to DC per pay period, she will look for another job closer to home.

-       It costs Jen a couple hundred dollars each time she comes to DC out of her own pocket. I don't think Jen is opposed to paying for her trips, but every 2 weeks would not be worth it.

-       Days that Jen travels to DC, it is challenging to get a full work day in. Jen logs in from the train but

Kirton - AFPD - 000392

sometimes loses connection so when there are deadlines, I have asked Jen to stay home in order to meet the deadline rather than commute into DC and risk being late submitting something.

-        If we don't change the duty station, Jen may feel we aren't supportive because she will be left wondering if the rules will change when management changes.

Thank you for considering this change.  Jen has been so valuable to me and I would love to make this happen for her.  I appreciate your support!

Melissa Ellis

Branch Chief - Funds Control Branch

OCFO-Budget Planning & Analysis Division

Desk (202) 212-5626

BB (202) 701-5573

ELLIS
DECLARATION
EXHIBIT T

**From:**        Benson, Shalini
**To:**          Ellis, Melissa; Moncarz, Benjamin
**Subject:**    Jen"s reassignment memo
**Date:**        Friday, July 15, 2016 5:06:00 PM
**Attachments:**  Duty Station change memo (2).pdf

Here you go.

# MEMO

| | |
|---|---|
| To: | Benjamin Moncarz, Budget Director |
| Through: | Shalini Benson, Deputy Budget Director |
| From: | Melissa Ellis, Branch Chief |
| Date: | July 8, 2016 |

SHALINI M BENSON

Digitally signed by SHALINI M BENSON
DN: c=US, o=U.S. Government, ou=Department of Homeland
Security, ou=FEMA, ou=People, cn=SHALINI M BENSON,
0.9.2342.19200300.100.1.1=0736427624.FEMA
Date: 2016.07.15 17:01:29 -04'00'

Subject: Request for Change of Duty Station for Jennifer Wohltman

I would like approval to change Jennifer Wohltman's duty station from Washington, DC to New Jersey.

Jen is the only BPAD staff person in the job series "0560 - Accountant" which makes her job duties different from the rest of the funds control branch (FCB) budget analysts, as well as unique in BPAD overall.  Her workload requires her to work independently.  She is creating/reviewing SF-132 apportionments, and posting transactions at levels above where funds are allocated for specific Programs.  She is often reviewing FCB processes to ensure we have proper controls in place.  Her customer is the OCFO FEMA Finance Center which is located in Winchester, VA so Jen's customer is not located in the DC area and will not be impacted by Jen not being in the office on a regular basis.

Making a change in duty station, shows we are serious about supporting Jen.  As OCFO or BPAD management changes in the future, the change in duty station will safe guard Jen from losing this benefit of working from home more often than the FEMA Telework policy permits.  She is currently working a different schedule from her signed telework agreement - a situation I need to rectify one way or another.

A couple items to note, on days that Jen travels to DC, it is challenging to get a full work day in.  Jen logs in from the train but sometimes loses connection so when there are deadlines, I have asked Jen to stay home in order to meet the deadline rather than commute into DC and risk being late submitting something.

In addition, Jen has been a superior performer since she has come on board in BPAD.  She has lead us in the fight to remediate audit findings by creating and enforcing new budget execution processes.  Jen's hard work has recently been recognized as she received a DHS Outstanding Employee Award, this award was presented to her by the DHS Secretary.  Jen also was one of three OCFO-wide employees that received a quality step increase (QSI) because she has made such an impact on Budget Execution.

There are also some potential drawbacks to my recommendation.

We are not in compliance with the current FEMA Telework agreement.  Employees need to be in the office a minimum of 2 days per pay period.  Jen has stated that this isn't something she's able to continue doing.  If we enforce the telework agreement she has currently, she will seek another job. Replacing her would be difficult at best.

In closing, a decision needs to be made regarding Jen's work schedule.  Our choices are to change her telework agreement, her duty station or she needs to comply with her current agreement.  My recommendation is that we change her duty station.

Thank you for your consideration.

ELLIS
DECLARATION
EXHIBIT U

| | |
|---|---|
| **From:** | Moncarz, Benjamin |
| **To:** | Ellis, Melissa |
| **Subject:** | RE: Jen"s reassignment memo |
| **Date:** | Thursday, August 11, 2016 5:27:51 PM |

Melissa,

In reviewing your memo for a change in the duty station of Jennifer Wohltman, I approve your request based on the following reasons:

- Ms. Wohltman is not directly associated with any specific FEMA program-related portfolio and does not have customers in Washington, D.C. that require consistent interactions.
- Ms. Wohltman's workload requires her to work independently.
- Ms. Wohltman's customer is the OCFO Finance Center which is located in Winchester, VA, so her customer is not located in Washington, D.C. and will not be impacted based on Mrs. Wohltman not being in the office a minimum of two days a week.

In your communication to Mrs. Wohltman, please indicate that the telework agreement must be signed annually per the telework policy.  Also, please make sure Mrs. Wohltman is aware that the Agency can at any time with proper notice ask that Ms. Wohltman report back to FEMA HQ to report to work.

Please let me know if you have any questions or need additional information.  Thanks,

Benjamin
202-212-3852

---

**From:** Benson, Shalini
**Sent:** Friday, July 15, 2016 5:07 PM
**To:** Ellis, Melissa <Melissa.Ellis@fema.dhs.gov>; Moncarz, Benjamin <benjamin.moncarz@fema.dhs.gov>
**Subject:** Jen's reassignment memo

Here you go.