EXHIBIT 5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALICIA KIRTON,

   *Plaintiff,*

  v.

   Civ. A. No. 18-1580 (RCL)

CHAD WOLF, Acting Secretary, Department
of Homeland Security, and FEDERAL
EMERGENCY MANAGEMENT AGENCY,

   *Defendants.*

## DECLARATION OF SHALINI BENSON

  I, SHALINI BENSON, hereby declare the following is true and correct to the best of my knowledge and belief:

  1.  I am competent to testify in this matter and have personal knowledge of the facts stated in this Declaration. I am aware of Plaintiff Alicia Kirton's claims in this matter that my former employer, the Federal Emergency Management Agency ("FEMA"), discriminated against her based on her race and color when it denied her request for full-time telework and a change of her duty station. I am also aware that I am providing this Declaration in support of FEMA's motion for summary judgment.

  2.  I started working at FEMA in June 2013 as the Deputy Budget Director in the Office of the Chief Financial Officer ("OCFO") and stayed in that position until July 2016 when I became an Assistant Administrator in the Federal Insurance & Mitigation Administration ("FIMA") within FEMA until I left on July 20, 2018.

### A. Mark Miller's Change in Duty Station

  3.  While working as the Deputy Budget Director in OCFO, I was the second-line supervisor for Alicia Kirton and Mark Miller, among approximately 50 others. At that time,

1

Miller's first-line supervisor was Mike Darby, Mission Support Branch Chief. I do not recall

who Kirton's first-line supervisor was at that time because I believe she was on military leave

and therefore not in the office. I was also Melissa Ellis' first-line supervisor until July 2014

when she left OCFO for a position in Protection and National Preparedness ("PNP"), another

office within FEMA. When Ellis went to PNP we hired Jennifer Wohltman to replace her,

making me Wohltman's first-line supervisor.

4.      When I started working at FEMA, Miller was already working full-time from his

home in Oklahoma. It is my understanding that Mark Miller, who was employed by FEMA as a

Senior Budget Analyst at FEMA's office in Washington, D.C., began working from his home in

Oklahoma on an ad hoc basis sometime in 2012 due to his wife's medical issues. He then

continued working from home because he also began to suffer from some medical issues that I

do not recall. I was copied on some emails pertaining to his remote work arrangement after I

onboarded with FEMA, but I was not involved in the decision-making regarding Miller's duty

station change or remote work arrangement. To the best of my recollection, I had understood the

decision to change Miller's duty station to be the product of a collaboration between Darby,

Evan Farley, Budget Director, Winona Cason, OCFO Executive Officer, and Ed Johnson, Chief

Financial Officer ("CFO") in 2012 and 2013.

5.      I recall that Miller's duty station and unique working arrangement was initially

intended to be temporary and subject to periodic review by Darby, but that at some point in 2013

either Darby or Cason, informally decided to make Miller's duty station change permanent.

6.      To the best of my recollection, Johnson expressed that he wanted to revisit

Miller's duty station change after six months; however, it was not on the list of pending and

ongoing OCFO personnel issues Cason maintained. I discussed this with Evan Farley, Budget

Director and my first-line supervisor at the time, who said to me that we were not going to remind anyone to revisit the matter and to drop it unless Cason or Johnson raised it again. I recall Farley instructed that so long as Miller was performing adequately, we were not going to take any action regarding Miller's work arrangement.

7.     As far as I am aware, Johnson and Cason never revisited Miller's work arrangement because, shortly after it began, Cason left the Agency, followed by Johnson. Then Farley was reassigned to the Office of the Chief Information Officer where he worked until he also left the Agency.

8.     When Farley directed not to take any action regarding Miller's remote work arrangement, I was not terribly concerned about it since Farley and Darby were satisfied with it so long as Miller was performing adequately. Additionally, at that time my attention was focused elsewhere as there were a few security incidents involving threats of violence within the workplace as well as the fallout of a physical altercation that had occurred shortly before my arrival. Those issues were more important and pressing, so I complied with Farley's directive to leave Miller's work arrangement alone.

**B.     Jennifer Wohltman's Full-Time Telework Status**

9.     In 2014, Jennifer Wohltman, Accountant, requested to work from her home in New Jersey full time. I approved Wohltman's request in late 2014.

10.    I approved Wohltman to work from her home in New Jersey full-time because I determined that it would not have any impact on her duties because she was essentially teleworking full-time already since she was working at FEMA Headquarters in Washington, D.C., and her clients worked at the FEMA Finance Center in Winchester, VA, which is about 75 miles away from FEMA Headquarters. As a result, she was essentially working remotely already. Additionally, Wohltman was a stellar employee and our only accountant so I wanted to

3

ensure that she did not leave the Agency, which I believed she would do if we did not grant her request.

11.     I discussed changing Wohltman's duty station with Johnson and Tom Lowry, Deputy CFO, at that time, but we decided against it because we were unsure how long she would stay with the Agency and did not want to go through the trouble of changing her duty station if she was going to leave shortly thereafter and because the locality pay in New Jersey was higher than in Washington, D.C.  I do not recall which, but either Johnson or Lowry directed that we keep her official duty station as Washington, D.C.

C.     **BPAD Telework Policy**

12.     In 2014 and early 2015, as the Agency moved to a more telework-friendly environment, generally speaking, I expressed my expectation that every manager still needed to see their employees at least twice a week physically in the office.  OCFO's duties involved a great deal of customer service, which I thought was improved with face-to-face interaction.  That being said, I was willing to grant exceptions on a case-by-case basis if sufficiently justified, such as the medical-based exception for Miller as well as the exception for Wohltman.

13.     In April 2015, I emailed all of my subordinates to let them know my expectations regarding telework because there had been some turn-over in personnel and I wanted the newer supervisors to be aware of my expectations.  Among other things, I advised that I expected everyone to report to their duty station at least twice per week and that managers see their employees twice per week.  Though not an official, Agency-wide policy, this was a statement of my expectations for the Budget Planning and Analysis Division ("BPAD policy").  Exhibit A to this Declaration (Kirton AFPD 727) contains a true and correct copy of my April 23, 2015, email.

14.     I maintained my expectations regarding supervisors seeing their employees in the office because, though the Agency had been generally becoming more telework friendly, there was a change in CFO around this same time and the incoming CFO, Tom Lowry, was less telework-friendly than the outgoing CFO, Johnson, regarding Budget Analysts because they were particularly customer service oriented.  Lowry conveyed that he wanted Budget Analysts to be in the office more irrespective of FEMA's shift in telework perspective, including Miller who Lowry required to come into the office occasionally throughout the year though not as much as the other Budget Analysts.  So, when the CFO changed there was a change in culture as it pertained to remote work for Budget Analysts in OCFO.

15.     My expectations, however, did not strictly apply to Miller because his duty station was his home in Oklahoma though he was coming into the office occasionally.  Therefore, I did not expect him to travel to FEMA Headquarters in Washington, D.C. twice weekly.  Likewise, this expectation did not apply to Wohltman because she was teleworking full time; however, I had previously discussed my expectation that she come into the office once per pay period sometime in 2014 when she moved to New Jersey.

16.     When Ellis became Miller's supervisor in April 2015, she did not make any changes to Miller's working arrangement, nor did she approve anyone else for full-time telework or a duty station change on a permanent basis until she requested approval to change Wohltman's duty station in May 2016 in order to bring her work arrangement into compliance with Agency telework policy on locality pay.

**D.     Denial of Alicia Kirton's Telework Request**

17.     In December 2015, Ellis forwarded me a letter addressed to her from Kirton wherein Kirton asked for authorization for 95-100% telework due to what Kirton referred to as her "current commuting situation."  Exhibit B to this Declaration (Kirton AFPD 360-61) contains

5

a true and correct copy of Kirton's email and accompanying telework request dated December 18, 2015.

18.     In her forwarding message to me, Ellis appeared to want to offer a compromise, asking if I would approve for Kirton to be able to telework all but two days per pay period, permitting her to telework 8 out of the 10 days instead of the "95-100%" Kirton requested.  In response I asked that Ellis provide a justification as to how Kirton would accomplish the mission and meet customer needs, while Ellis ensured equity with other staff.  Exhibit C to this Declaration (Kirton AFPD 662) is a true and correct copy of my email exchange with Ellis on December 20-21, 2015.

19.     Ellis forwarded my request on to Kirton to further respond.  Kirton responded to me but, as further explained below, I did not find her justification sufficiently compelling to warrant deviating from the BPAD policy that all employees be required to report to their duty station at least two days per week.

20.     Plaintiff's first-level supervisor, Melissa Ellis, initially denied Kirton's request. Plaintiff appealed the denial to Benjamin Moncarz, Budget Director, and Matthew Allen, Executive Officer, who forwarded the appeal to me since I was next in her chain of command after Ellis as Plaintiff's second-line supervisor.  At this point, I reached out to Kirsten Gunsolus, Human Resource Specialist, who helped draft a response.  I considered Kirton's appeal and felt that Kirton had not put forth an adequate justification in support of her request for full-time telework.  Problematic for me was the fact that Kirton had evidently created the circumstances underpinning her need for full-time telework.  I felt it was rather presumptuous of her to move to Florida before she obtained approval for her request for full-time telework.  This was different from Miller's situation, because he and his wife had unplanned medical issues.

6

21.     While we generally tried to be accommodating of employees, granting her request would mean Plaintiff would be out of the office more than permitted by BPAD policy and contrary to my expectations as I explained in my April 23, 2015, email. As managers we were concerned that if we granted Plaintiff's request other employees would expect that we would also grant similar requests until everyone was working remotely close to full-time. There was a real concern among myself and the other managers that this would set a precedent that anyone could just create the circumstances to justify full-time telework, like moving far away from their duty station as Kirton had, and then request full-time telework. That exception would swallow the rule and before long everyone would be working remotely, leaving the office empty of personnel and unable to provide face-to-face customer service.

22.     As a result, I sent my denial of Kirton's appeal to her on February 2, 2016, advising that I agreed with Ellis's decision to deny the request. Exhibit D (ROI Tab G-11 at 2 of 5) contains a true and correct copy of my decision, which I sent to Plaintiff via email on February 2, 2016. Exhibit E (Kirton AFPD 554) is a true and correct copy of an email I sent to Ellis on January 20, 2016, that accurately summarizes a conversion I had with Kirton on or about that day concerning FEMA's telework policy and BPAD's telework policy as they pertained to her request for full-time telework.

23.     Kirton's request brought to Ellis' and my attention that Miller's remote work arrangement should be ended because it was inconsistent with BPAD policy insofar as we did not have any reason to believe he still had a good justification for an exception to the policy. It also brought to our attention that Wohltman's arrangement was inconsistent with Agency policy insofar as her duty station was still Washington, D.C. though she was working in New Jersey. As a result, we reached out to Gunsolus for guidance, which she gave and we followed. While

7

we knew about Miller's and Wohltman's remote work arrangements, they were not a high priority for us prior to receiving Kirton's request. But once Kirton made her request, we realized we needed to take further action to ensure all employees were being treated fairly and consistent with Agency policy.

24.     In 2016, in an effort to bring Wohltman's work arrangement into compliance with Agency policy, Ellis requested that Benjamin Moncarz, Budget Director, approve a duty station change for Wohltman. In her request, Ellis explained the facts weighing for and against approval. Ellis sent drafts of her request to me for my input which I gave. Ultimately, I co-signed Ellis's request because I found Ellis' justification compelling and genuine.

25.     Miller continued to work from his home in Oklahoma full-time until 2016 when Ellis started the process of changing his duty station back to Washington, D.C., and requiring that he come into the office more regularly.

26.     My personal involvement in Miller's case ended when I transferred to another office within FEMA in approximately July 2016.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 8th day of September, 2020, in Silver Spring, Maryland.

SHALINI BENSON

BENSON DECLARATION
EXHIBIT A

| | |
|---|---|
| **From:** | <u>Benson, Shalini</u> |
| **To:** | <u>Benson, Shalini</u> |
| **Subject:** | FW: Telework expectations |
| **Date:** | Thursday, January 21, 2016 11:58:08 AM |

---

**From:** Benson, Shalini
**Sent:** Thursday, April 23, 2015 9:29 AM
**To:** Ellis, Melissa; Coles, Denee; Kowgios, Kristos; George, Heather; Senegal, Frankie
**Cc:** Treml, Gregg
**Subject:** Telework expectations

Hey everyone,

With so many moving pieces and new folks (yeah!) I just want to reiterate my telework expectations so each group is operating in the same manner.

1 –**Seeing me!** -- I'd like you to see you at least twice a week. I prefer BC are in person for the Monday staff meeting and Tuesday staff meeting. I telework Thursdays and right now, a half day on Wed.

2 - **Seeing your staff** -- I'd like you to see each of your direct reports twice a week. Exceptions to this should be made through me / Gregg while he's here.

3 – **Team Day** – To the extent possible, I'd like your team to get together in person at least once a week. A number of branches have choosen Tuesday for this as it's staff meeting day anyway.

4 – **All hands on deck day** – We've talked about this – but honestly don't recall where we wound up ☺ Should we make Tuesday an all hands on deck day? I like the idea of having everyone together at least one day a week (again – there are exceptions, certianly). What do y'all think?

Let's chat if you have questions – sorry for doing this over email, but wanted to get out sooner rather than later!

Thanks,
Shalini

Shalini Benson * Acting Budget Director * FEMA OCFO * BB – 202/802-2617 *
Shalini.Benson@fema.dhs.gov

BENSON DECLARATION
EXHIBIT B

December 18, 2015

To: Melissa Ellis; OCFO BPAD fund control Supervisor

CC: Shalini Benson; OCFO Deputy Budget officer

From: Alicia Kirton; OCFO BPAD funds control budget analyst

Re: REQUEST TO TELEWORK AT 95-100%

Melissa, Shalini sent me an email on 29 Sept 2015 and stated if I need anything to please contact her. Before I spoke with her concerning my request, I felt it was respectful to speak with you first to ensure you were in the loop as to my request. After speaking with you and discussing the agencies telework opportunities with my family, My family and I have reviewed the situation and believe due to my current commute situation, it would be most advantageous for us as a family and more beneficial to the agency , if I would make the request to perform 95-100% telework.


Please be advised that this email serves as my official request to be approved to utilize the opportunity to participate in the agencies 95-100% telework program beginning January 2016.  My current commute to work is approximately 3hrs each way. To avoid traffic congestion, I must leave my home at 2:30 in the morning,   which causes my work and family life to be compromised considerably.  My family has supported my commuting situation for over 8 years but now due to family demographic changes, my long distance commute is causing a strain on several areas in my family's home life, which in turn can result in me taking extensive leave.

Being able to telework at a higher rate will allow more time for me to work and interact with my peers via LYNC as well as have quality time to spend with my family. I am aware that I will be required to commute to DC periodically and I fully accept that requirement.


Thank you for your time and consideration in this matter


Respectfully submitted,


Alicia R. Kirton

Funds Control Analyst
OCFO-Budget Planning & Analysis Division
Desk (202) 212-3783
BB (202) 230-7134

| | |
|---|---|
| **From:** | Kirton, Alicia |
| **To:** | Ellis, Melissa |
| **Cc:** | Kirton, Alicia |
| **Subject:** | Telework request.docx |
| **Date:** | Friday, December 18, 2015 10:25:04 AM |
| **Attachments:** | my request.docx |

Melissa, attached is my request for 95-100% telework. I would rather make this request based on my current commuting situation which qualifies for a strong enough justification to prevent me from giving my personal business of medical issues.

Alicia Kirton

Funds Control Analyst

OCFO–Budget Planning & Analysis Division

Desk (202) 212–3783

BB (202) 230–7134

BENSON DECLARATION
EXHIBIT C

| | |
|---|---|
| **From:** | Benson, Shalini |
| **To:** | Ellis, Melissa |
| **Subject:** | RE: Alicia Kirton Schedule change request |
| **Date:** | Monday, December 21, 2015 6:20:08 PM |

As discussed, not comfortable deviating from office norm of in person 2 days a week without a justification on how you'll accomplish mission, meet customer needs, ensure equity with other staff, etc.

Do not approve until that justification has been provided and you and I can discuss.

Thanks,
Shalini

---

**From:** Ellis, Melissa
**Sent:** Sunday, December 20, 2015 11:48 AM
**To:** Benson, Shalini
**Subject:** Alicia Kirton Schedule change request

Shalini,

I plan to meet with Alicia Tuesday morning to discuss the attached request.  I would like to offer her a schedule adjustment to allow her to telework more frequently. My thought is I will request that she come into the office 2 days per pay period.

Happy to discuss but wanted to let you know of my plans.

Melissa

BENSON DECLARATION
EXHIBIT D

## Pearson, Andrea

| | |
|---|---|
| **From:** | Kirton, Alicia |
| **Sent:** | Wednesday, February 03, 2016 12:34 PM |
| **To:** | Pearson, Andrea |
| **Subject:** | Appeal of Telework denial |

Please allow this to be a part of my complaint as well. Thank you.  As you will see when I emailed my appeal, it went to Ben M who is our Budget Director, Matt A, who is or executive and Melissa who is my supervisor.

V/r
Alicia

---

**From:** Benson, Shalini
**Sent:** Tuesday, February 02, 2016 10:41 AM
**To:** Kirton, Alicia <Alicia.Kirton@fema.dhs.gov>
**Cc:** Ellis, Melissa <Melissa.Ellis@fema.dhs.gov>
**Subject:** FW: Appeal of Telework denial

Alicia,

Although there is no appeal process for telework, as Melissa's immediate supervisor and your second line supervisor, I am nevertheless responding to your request.  Per the telework policy 123-9-1: "Teleworking is a voluntary work alternative that may be appropriate for some employees and some jobs. It is not an entitlement and in no way changes the terms and conditions of employment with the Agency."  Telework is at your manger's discretion to approve, and I concur with Melissa's decision.  Please note that we are not denying your use of Telework, but rather managing the telework schedule to be consistent with the other employees in our division/branch and mission needs.

You raise an excellent point in noting that the BPAD policy was shared with managers only and not staff.  I will rectify that and send a communication to all of BPAD ensuring that everyone has the same information.  Thanks for pointing that out.

If you'd like to discuss, please let me know.

Best,
Shalini

---

**From:** Kirton, Alicia
**Sent:** Friday, January 29, 2016 5:17 PM
**To:** Allen, Matthew; Moncarz, Benjamin; Ellis, Melissa
**Subject:** Appeal of Telework denial

Good evening, Matt, Benjamin and Melissa, as you may or not be aware, my recent Telework Agreement  (TWA) was disapproved (see attached) This email serves as notification to you of my intent to appeal this decision.

1

Please find my rebuttal attached as a memo for record in hopes we can resolve this impasse.

V/r

Alicia Kirton
Funds Control Analyst
OCFO–Budget Planning & Analysis Division
Desk (202) 212–3783
BB (202) 230–7134

Now that my request based on the policy has been submitted, I am being told and given a copy of the aforementioned email being provided as BPAD telework policy on January 21, 2016. If this email is being constituted as the BPAD's Standard Operational Procedure in conjunction with the DHS/FEMA policy, then why wasn't it provided or discussed as an addition policy being in place at the start of my return to duty and not wait until after I make a request to change my telework schedule to coincide with DHS/FEMA policy?   The email from Shalini Benson is dated April 23, 2015, which indicates Melissa Ellis had the email on 2 June 2015 when signing off on my initial tele-work request, yet never discussed nor acknowledged that there was such a document as the BPAD Telework Policy. This email that is now being given to me as guidance for the Office of the Chief Financial Officer/ Budget Planning and Analysis Department, telework employee policy, however it is not consistent with the Agency Policies and Procedures for telework employees.

I believe that I am being held to a different standard than my fellow employees as they are allowed to Telework based on Shalini Benson's perception of what should be considered as an exception to her email which I am now being told is BPAD policy, yet my request which is based on DHS/FEMA Policy I was provide on 2 June 2015 of being in the office 2 days per pay period, is not being considered equitable enough to be adhered too or approved.

 Also Within the email it states that exceptions are based on individual situations along with the decision being made by Shalini Benson, yet no explanation of what Shalini Benson would consider an exception is being provided due to a statement made that the exceptions are individually based.


Telework is an opportunity for all employees to work from a remote location, and  nothing in FEMAs Manual 123-9-1 states that only a limited number of employees can telework and report two days per pay period.  I believe that my denial was unfair due to three employees GS 14's are given an exception to the aforementioned email (policy) which of the three one has retired. This unfair treatment blatantly exemplifies an office of preferential treatment, and shows not everyone is held to the same rules.

 Since June 1, 2015 I can attest that one employee came in the office 1 day in July which was around the office outside gathering, 1 ½ days the end of September during close out, 1 ½ days in Nov which was before veterans day, 1 ½ days in Dec during the holiday party, and 1 day in Jan prior to the snow. During these times the employee has not been required to change her duty location nor adhere to the email which again is being stated as BPAD policy, neither is this employee required to adhere to DHS/FEMA Policy.

In a conversation with Melissa Ellis of me requesting to telework in accordance with the DHS/FMEA policy, she stated that the above mentioned employee has a special skill set that allows the individual to telework in the manner that is being performed, yet nowhere in the DHS/FEMA telework nor in the email from Shalini Benson dated 23 April 2015 does it state a

person must have a special skill set in order to perform additional telework days or be allowed to be excepted from the Policy in place.

 I understand that all offices are given the opportunity to develop additional guidance for teleworking which would be considered the Standard of Operating Procedures for the office, however; once that additional guidance for an office is presented as policy, shouldn't everyone who the new policy affects be given a copy?  Current actions reveal  obvious exceptions for some, yet the same opportunities are not granted for others, which provides great opportunity for employees to view this as bias and unfair practices being allowed in the FEMA BPAD office, which is contradictory to FEMA policy section 1-7 Responsibilities, and  subsection J1 which states, employees should all be treated equitable.

Thank you for your time and attention to this matter.

Respectfully submitted,

Alicia Kirton

BENSON DECLARATION
EXHIBIT E

| | |
|---|---|
| **From:** | Benson, Shalini |
| **To:** | Ellis, Melissa |
| **Subject:** | Conversation with Alicia |
| **Date:** | Wednesday, January 20, 2016 2:51:05 PM |

Hi Melissa,

I just wanted to let you know that I had a conversation with Alicia.  I'd reached out to her as follow up to the email exchange we had last week.

I asked how she was doing and how her move went.  We had a discussion about FEMA's telework policy and BPAD's telework policy.  I went over my rule that folks see their direct reports twice a week.  I let her know that when there were deviations form that policy – for example, when she teleworked all of last week and when her brother passed, that your checked with me before approving that.

I let her know that you'd be sending her the email I sent out to all the branch chiefs.  She expressed concern that our telework policy was unfair because some employees were granted flexibilities that others were not.

I did not comment on the specifics of the two individuals who were on full time telework or near full time telework.  I did tell her that all requests employees submitted were considered carefully.  I did also let her know that other organization with similar customer service missions, such as OPPA, telework a lot less frequently (1 day per week) than BPAD and reiterated that telework is the managers discretion.

She mentioned she filled out her request again, this time using the proper forms.  I'm happy to discuss if you'd like.

Thanks,
Shalini

**Shalini Benson,** Deputy Budget Director, OCFO / FEMA
Shalini.Benson@fema.dhs.gov   Desk Phone:  202/646-2504  BB:  202/802-2617