# EXHIBIT 22

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALICIA KIRTON,

    *Plaintiff,*

v.

KEVIN MCALEENAN, Acting Secretary, Department of Homeland Security, and FEDERAL EMERGENCY MANAGEMENT AGENCY,

    *Defendants.*

Civ. A. No. 18-1580 (RCL)

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND DISCOVERY DOCUMENT PRODUCTION DEMANDS

Plaintiff, by counsel, herein submits his responses to Defendant's interrogatories and requests for production of documents. These general objections apply to each interrogatory and document request as though restated in full in Plaintiff's response to each interrogatory and document request.

1. Plaintiff objects to any and all interrogatories and document requests to the extent that they seek information protected from disclosure by the attorney-client, attorney work product, deliberative process, or any other applicable privilege.

2. Plaintiff objects to any and all interrogatories and document requests to the extent that they seek disclosure of the mental impressions, conclusions, opinions, legal research, and legal theories of counsel.

3. Plaintiff objects to any and all interrogatories and document requests to the extent that they seek to discover the manner or method of proof at trial.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALICIA KIRTON,

    Plaintiff,

v.

KEVIN MCALEENAN, Acting Secretary, Department of Homeland Security, and FEDERAL EMERGENCY MANAGEMENT AGENCY,

    Defendants.

Civ. A. No. 18-1580 (RCL)

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND DISCOVERY DOCUMENT PRODUCTION DEMANDS

Plaintiff, by counsel, herein submits his responses to Defendant's interrogatories and requests for production of documents. These general objections apply to each interrogatory and document request as though restated in full in Plaintiff's response to each interrogatory and document request.

1. Plaintiff objects to any and all interrogatories and document requests to the extent that they seek information protected from disclosure by the attorney-client, attorney work product, deliberative process, or any other applicable privilege.

2. Plaintiff objects to any and all interrogatories and document requests to the extent that they seek disclosure of the mental impressions, conclusions, opinions, legal research, and legal theories of counsel.

3. Plaintiff objects to any and all interrogatories and document requests to the extent that they seek to discover the manner or method of proof at trial.

4. Plaintiff objects to any and all interrogatories and document requests to the extent that they seek information that is irrelevant, over broad, vague, unduly burdensome to produce, violate Plaintiff's Fifth Amendment privileges, or not reasonably calculated to lead to the discovery of admissible evidence.

5. Plaintiff objects to any and all interrogatories and document requests to the extent that they seek information that is protected by the provisions of the Privacy Act, 5 U.S.C. § 552a;

## Conditions

1. These responses are made without, in any way, waiving or intending to waive, but on the contrary, intending to preserve:

   a. All objections as to competency, relevancy, materiality, privilege and admissibility as evidence for any purpose in subsequent proceedings or the trial of this or any other actions;

   b. The right to object to the use of any information that may be provided, or the subject matter thereof, in any subsequent proceedings or the trial of this or any other action on any other grounds;

   c. The right to object on any ground at any time to further discovery proceedings involving or relating to the subject matter of these interrogatories and document requests; and

   d. The right at any time to revise, correct, supplement, clarify, or amend this response in accordance with the pertinent Rules of Civil Procedure.

2. All Responses to interrogatories and document requests are based on Plaintiff's best understanding of the interrogatories and document requests and/or the terms used therein. Such responses cannot properly be used as evidence except in the context in which the

Plaintiff understood the interrogatories and document requests and/or the terms used therein.

3. These responses are not a representation or concession as to the relevance and/or relationship of the information to this action.

4. Plaintiff agrees to supplement these Answers only as required by the pertinent Rules of Civil Procedures.

## PLAINTIFF'S RESPONSES TO DEFENDANT'S INTERROGATORIES
### Interrogatories

1. State the basis for your claim that the Agency discriminated against you on account of your race and color when it denied your request(s) for increased telework.

Response: Plaintiff was treated differently than two similarly situated comparators who were Caucasian. Regarding Mark Miller, according to him, his teleworking began 10/25/12 (Agency Responses 000189). It continued until at least 3.21.13 (Id.). In January, 2013, Miller described it as a "pilot teleworking (Id. at 000285). On February 5, 2013, Michael Darby told Miller he had two ways to go. He could either apply for medical telework or for FMLA (Id. at 000274). On February 20, 2013, Miller expressed to Darby █████████████████████████████ ██████████████████████████████ (Id. at 000254). On March 13, 2013, Darby told Evan Farley that Miller asked for telework which would be good for 6 months and that he would review the telework agreement every 30 days (Id. at 000186). Winona Cason informed Darby on 3/19/13 that Miller's telework trial period was supposed to end in January, 2013 (Id. at 000193). On April 14, 2013, Darby told Millerthat his telework request was approved and that he had to approve the medical documentation every 30 days (Id. at 000236). On July 2, 2013, a person described at "Ed" approved Miller's request due to his "medical situation (Id. at 000080). This was also approved by Darby on 7/3/13 until 7/29/13 (Id. at 000156). On July 29, 2013, an

3

email from Erik Wozinak to Miller describes Miller's reassignment related to Miller having bought a house in Georgia and specifically states that this was not a reasonable accommodation request (Id. at 000076).

On May 31, 2016, an email from Ellis to Julia Goldberg details the teleworking issues of Alicia Kirton, Mark Miller and Jen Wohltman. She describes Miller as the decision having been made by someone else 3 years ago (Id. at 000385). On June 10, 2016, Ellis tells Goldberg that she intends to move Miller's duty station back to DC. The medical reasons behind his original move a/n documented. His job duties are similar in nature to all the other budget analysts. His job performance would improve by coming in 2 days a week (Id. at 00001 and 000068). On June 19, 2016, an email from Ellis to Goldberg states, " I want to give Mark Miller 4 months notice of his change in duty station. Mark is a lead budge analyst. I rely on him for periodically acting for me when i take vacation and need sick leave. He has to come into the office. (Id. at 000311)" On June 29, 2016, Ellis provides that notice to Miller. (Id. at 000066). On July 25, 2016, Miller asked Ellis if he could keep his current employment situation (Id. at 000016). On July 25, 2016, Kurt Nance sent an email to Ellis that he spoke with Miller and notified him his duty station is moving back to DC. He h/b working from home for past 3 years. Nance assume he's asking for reasonable accommodation (Id. at 000060). On July 28, 2016, Ellis and Goldberg correspond by email documenting Mark Miller's poor performance (Id. at 000055).

On October 11, 2016, rather than instituting a performance improvement plan for Miller or taking any disciplinary action against him, Ellis and Goldberg permit Miller to obtain a doctor's opinion regarding a reasonable accommodation (Id. at 000014). On October 11, 2016, Miller's doctor opines that Miller cannot perform his essential job duites; ███████████, ███████████████████████████; there are no alternative accommodations (Id. at

4

000038). There's additional email communication between Ellis, Miller, Goldberg and others (agency responses 000017, 000331, 00008, 000046 and 000007). Ultimately, Ellis allowed Miller to continue telworking 100% per an email dated 2/28/17 (Agency responses 000051).

The Agency through Melissa Ellis continued to work with Miller and allow him to telecommute up until the time of his termination in August, 2017. As such, while the original decision to permit Mr. Miller to telework was not made by Ellis, the situation had to be monitored every 30 days; clearly it wasn't by her; she did make decisions to allow him to keep this arrangement until his termination, which the agency has produced no documents indicating that Miller's termination was because of his failure to change his duty station.

The second comparator, Jeniffer Wohltman is even more egregious. As per Agency Responses 000395-000396, Ellis goes through a litany of all the reasons Wohltman should get the 100% telework. She lists the pros and cons. One of the cons she lists is that "we aren't in compliance if we allow her to do teleworking." That Complainant and this comparator had different jobs is irrelevant. But in any event, Plaintiff contends that Wohltman, if anything, had more of a reason to have in person contact because she's the head accountant who does the apportionment for the FEMA funds from DHS. That is a much stricter transfer because it's at a much higher level. DHS would likely have people that would question her in person as to the reason for these allocations. Also Ms. Ellis recently hired another African-American accountant, Amanda Robertson, who was not given the same telework, duty station rights and privileges of Wohltman pursuant to FEMA's own policy.

It is well established that deviations from standard procedures may give rise to an inference of pretext. *Harrington v. Aggregate Indus. N.E. Region*, 668 F.3d 25, 33 (1st

5

Cir.2012); see also *Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286, 1299 (11th Cir.2006) ("an employer's deviation from its own standard procedures may serve as evidence of pretext"). In general, similarly situated means that the persons who are being compared are so situated that it is reasonable to expect that they would receive the same treatment as the complainant in the context of a particular employment decision. It is important to remember that individuals may be similarly situated for one employment decision, but not for another. For example, a female GS–4 clerk–typist may be similarly situated to a male GS–7 paralegal in a discrimination case involving the approval of annual leave where the same rules are applied to both by the same supervisor or where both are in the same unit or subject to the same chain of command. "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." *Aramburu v. The Boeing Company*, 112 F.3d 1398 (1997).(10th Cir. 1997).

2. State the basis for your claim that the Agency discriminated against you on account of your race and color when it denied your request(s) for a change in duty station.

Response: See prior response.

3. State the basis for your contention, if any, that you suffered an adverse employment action when the Agency denied your request(s) for increased telework.

Response: The whole case is about whether the Agency applied a work policy, a duty station location change policy, equally between persons of all races. By definition, the change in duty location was a right or benefit of employment for this particular agency (it may not be in others). So how it can't possibly be argued that the Plaintiff didn't suffer a change in her rights or benefits of employment?

4. State the basis for your contention, if any, that you suffered an adverse employment action when the Agency denied your request(s) for a change in duty station.

Response: see prior response.

5. State the basis for your contention that Mark Miller was similarly situated to you, i.e., that all relevant aspects of his employment situation were nearly identical to yours. *See* Compl. ¶¶ 77, 79, 81, 83.

Response: See prior response.

6. State the basis for your contention that Jennifer Wohltman was similarly situated to you, i.e., that all relevant aspects of her employment situation were nearly identical to yours. *See* Compl. ¶¶ 77, 79, 81, 83.

Response: See prior response.

7. State the basis for your belief that "other agency management officials not yet known to Plaintiff had input into the decisions to: (a) deny Plaintiff's duty station change; (b) permit Miller's duty station change to his local duty station; and (c) permit Wohltman's duty station change to his local duty station." *See* Compl. ¶ 70.

Response: Pending Agency discovery responses.

8. With regard to the Agency's articulated legitimate and non-discriminatory reasons for the denial of your request(s) for increased telework, describe in detail any statement that you contend was pretext for unlawful discrimination and state the basis for your contention that it was pretext.

Response: Plaintiff's job requirement is to allocate and reallocate funding for programs within FEMA. (FEMA has many programs such as office of external affairs, mission support offices, office of security) Within each program there are different sectors. Plaintiff's job is to

7

move funding from general office to the other programs and within each program to the different sectors. This is all computer work. There's no meeting anybody. Plaintiff does interact with program directors or managers, as each program puts in a spend plan – office plan how they will spend the funds for the year. The program's budget analysts approve their plan. 99% of it is done by email and the information goes to a sharepoint. Plaintiff's other significant duty is she is in essence a fund manager for the programs. She studies how much of the budge allocated for a certain sector is actually being used. She may make recommendations to reallocate some of the funds from one program sector to another. This is also done by email for the most part. There is no need for face to face interaction for this job duty. As a rule whatever meetings and interactions are done is through Lync (skype for business). Eric Littlepage, Plaintiff's second line supervisor has told Plaintiff there is no need for face to face interactions.

9. With regard to the Agency's articulated legitimate and non-discriminatory reasons for the denial of your request(s) for a change in duty station, describe in detail any statement that you contend was pretext for unlawful discrimination and state the basis for your contention that it was pretext.

10. Identify each person whom you claim discriminated against you, and describe in detail the circumstances that demonstrated such discrimination.

Response: See prior responses and Plaintiff's affidavit in the ROI, pages F-1, 4-10.

11. Identify any individuals who you claim to have witnessed or to have information regarding the discrimination you allege that you suffered and describe in detail the information you contend that they have, and the date and circumstances in which they witnessed or otherwise obtained this information.

Response: See prior response.

8

12. Identify all documents which relate to your claims that the Agency discriminated against you.

Response: The Report of Investigation in this case Exhibits F2-G27, the Agency's previous discovery responses in the Administrative case, pages 1-865, already in the Agency's possession and Plaintiff's discovery responses in the Administrative case, pages 1-183.

13. Describe in detail the remedies, damages (including specific monetary amounts for each claimed injury), or other relief for which you seek judgment in this action (whether monetary or non-monetary). For any monetary damages, describe in detail how you calculate the amount of any compensatory damages, lost income, back pay, front pay, bonuses, raises, Medical Damages, economic damages, or any other monetary relief you seek in this action.

Response: First, Plaintiff seeks to be allowed to telework. Second, to be reimbursed for the unnecessary commuting cost. These are calculated at $600 on average per trip, twice a month for 43 months, thereby equaling around $51,600. Third, Plaintiff seeks medical damages for treating with Dr. Jeffrey Watson, who referred her for physical therapy, due to exacerbation of a knee condition. Plaintiff had surgery done at South Florida Baptist Hospital. Plaintiff treats with Dr. Jonathan Axel, Pulmonogist, every three months. Plaintiff has treated with Partners in Allerge & Asthma Care, every month for three years, then every three months since (all of these medical authorizations were signed by Plaintiff and provided to Defendant in the administrative case). Fourth, Plaintiff is seeking non-pecuniary damages of physical pain and suffering of $200,000.

14. If your damages claim in your responses to the previous Interrogatory includes any item of Medical Damages (including any matters involving your mental health and

9

specifically including any claim for "pain and suffering," "stress," or stress-based or stress-induced illnesses), identify and provide an address for each health care provider you have consulted with or been treated by in connection with the alleged discrimination or retaliation against you.

NOTE: Please be sure to sign the attached Verification and forward it along with your response. If you are claiming any Medical Damages, please also sign the attached HIPAA release and the attached release for your medical records for the Department.

Respectfully Submitted,

/s/
Morris E. Fischer, Esq.
DC Bar No: 490369
Morris E. Fischer, LLC
8720 Georgia Avenue
Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
morris@morrisfischerlaw.com
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALICIA KIRTON,

    Plaintiff,

v.

KEVIN MCALEENAN, Acting Secretary, Department of Homeland Security, and FEDERAL EMERGENCY MANAGEMENT AGENCY,

    Defendants.

Civ. A. No. 18-1580 (RCL)

I certify that I have read the foregoing Defendant's First Set of Interrogatories to Plaintiff and have provided full and complete responses to them to the best of my ability pursuant to the dictates of Federal Rules of Civil Procedure 33.

*Alicia Kirton*
Alicia Kirton

Date: August 6, 2019

11