EXHIBIT 23

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALICIA KIRTON, <br><br>         *Plaintiff*, <br><br>    v. <br><br> KEVIN MCALEENAN, Acting Secretary, Department of Homeland Security, and FEDERAL EMERGENCY MANAGEMENT AGENCY, <br><br>         *Defendants*. | Civ. A. No. 18-1580 (RCL) |

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

Pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, Defendants Department of Homeland Security, and others ("Defendants"), by and through undersigned counsel, hereby objects and responds to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission (collectively, the "Requests"), dated August 7, 2019, as follows:

## GENERAL OBJECTIONS

1.      Defendants object to the Requests to the extent that they are vague, indefinite, oppressive, unduly burdensome, overly broad, or otherwise seek to impose upon Defendants obligations in excess of, or inconsistent with, those imposed by the Federal Rules of Civil Procedure ("Federal Rules"), the Local Civil Rules of the United States District Court for the District of Columbia ("Local Rules"), the Federal Rules of Evidence, or any other applicable rules and statutes.

2.      Defendants object to the Requests to the extent that they seek information or documents protected by the attorney-client privilege, attorney work product doctrine, or any

other applicable privilege against production.  Defendants' responses are made without waiver of any privilege or protection against disclosure and the inadvertent disclosure of any privileged information or documents shall not be deemed to be a waiver of any applicable privilege with respect to such information.

3.      Defendants object to the Requests to the extent that they state or imply facts that did not occur.  Defendants state that none of its responses to these Requests shall be construed as a concession that any of the events described by Plaintiff actually occurred.

4.      Defendants object to the Requests to the extent that they call for production of information or documents protected by the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act"), or any other applicable state or federal law limiting or precluding the disclosure of information or documents, or requiring consent of interested parties prior to the release of information or documents.  Defendants' responses are made without waiver of any protection against disclosure and the inadvertent production of any protected information shall not be deemed to be a waiver of any applicable legal protection with respect to such information or documents.

5.      Defendants object to the Requests to the extent that they call for the production of information and documents not relevant to the claims or defenses of any party and not proportional to the needs of the case.  Defendants do not represent or imply by any response to the Requests that it believes the information or documents identified are relevant to an issue in this matter or admissible at trial.  Defendants reserve the right to object, on the grounds of competency, privilege, relevance, materiality, or otherwise, to the use of this information for any purpose, in whole or part, in this action or in any other action.  Further, Defendants do not

represent or imply that the individuals identified in a response to the Requests are competent witnesses or that their testimony would be admissible at trial.

6.      Defendants object to the Requests to the extent that they call for production of information or documents already in Plaintiff's possession, custody or control, or which is readily available from a source that is equally accessible to Plaintiff.  Defendants further objects to the Requests to the extent that they seek cumulative or duplicative information.

7.      Defendants object to the Requests as overly broad and unduly burdensome because they are unbounded by a reasonable time period.  Unless otherwise stated, Defendants' responses are limited to the time period relevant to Plaintiff's Complaint.

8.      Defendants make these responses based on Defendants' present understanding of the disputed facts in this action and on information reasonably available to Defendants' counsel, through due diligence, at this time.  Defendants have not yet completed its investigation, discovery, or analysis of matters relating to this case and has not yet completed preparation for trial.  Consequently, Defendants reserve the right to correct, amend, or supplement these responses and to produce any subsequently discovered documents.

9.      Defendants incorporate by reference the foregoing General Objections into each specific response set forth below.  A specific response may repeat a General Objection for emphasis or some other reason.  The failure to include any General Objection in any specific response does not waive any General Objection to that Interrogatory or Request.

10.     If Defendants respond to any Request to which it also objects, it does not waive its objections by providing information or documents.  Nor shall inadvertent disclosure of privileged information or release of privileged documents constitute a waiver of any applicable privilege.

## DEFENDANTS' RESPONSES TO PLAINTIFF'S INTERROGATORIES

**Interrogatory No. 1:**

Identify all persons answering or supplying information used in answering these Interrogatories. For each person identified, state which interrogatories that person responded to.

**Response to Interrogatory No. 1:**

Melissa Ellis provided information in answering Interrogatory Nos. 3-10.

**Interrogatory No. 2:**

Identify all documents that were consulted, relied upon, or utilized in answering these Interrogatories.

**Response to Interrogatory No. 2:**

All of the documents Defendants relied on are contained in the Report of Investigation that was already provided to Plaintiff as a result of the investigation of Plaintiff's administrative EEO complaints (Agency Case No. HS-FEMA-25619-2016), the Agency's discovery responses and document production in the administrative proceedings at the EEOC (EEOC No. 570-2017-00698X), and Defendants' document production in this case.

**Interrogatory No. 3:**

Was Mark Miller ever formally granted a reasonable accommodation? If so, when? If not, why did the agency allow him to continue to telework from October 25, 2012 until his separation date from the agency?

**Response to Interrogatory No. 3:**

No, the Federal Emergency Management Agency ("FEMA" or the "Agency") never formally granted Mark Miller a reasonable accommodation.  Michael Darby initially granted Miller medical telework in 2013 until Miller's duty station changed, which at some unknown and unspecified time became essentially permanent.  When Melissa Ellis became Miller's supervisor

4

in June 2015, she did not take any affirmative action to change Miller's duty station because she understood that his work arrangement in Oklahoma was essentially permanent.  After Ellis advised Miller that she decided to change his duty station back to Washington, D.C. in June 2016, Miller provided Ellis with a letter from a doctor warning of the possible negative medical consequences of Miller changing from home- to office-based employment and recommending that Miller be permitted to continue working from his home in Oklahoma.  Ellis believed Miller's request to constitute a request for reasonable accommodation for a medical condition, which was confirmed when he submitted a formal request for reasonable accommodation in October 2016 that was granted on an interim basis while the parties continued engaging in the interactive process through his termination in 2017.

**Interrogatory No. 4:**

List all the ways that Mark Miller's job, job duties or responsibilities was/were different than the Plaintiff's.

**Response to Interrogatory No. 4:**

Mark Miller was a GS-14 which is a team lead position and was expected to be a subject matter expert in budget formulation and execution.  As a team lead, Mr. Miller managed the work of a group for program office customers but was not official supervisors.  Plaintiff is a GS-13 and her position works with team leads on getting work complete.  As a GS-13, she is not considered a team lead or expert.

**Interrogatory No. 5:**

Did the Agency require Mark Miller to renew his telework or reasonable accommodation policy every 30 days? If not, why not?

**<u>Response to Interrogatory No. 5:</u>**

Miller's work arrangement whereby he worked from his home in Oklahoma on a full-time basis, as originally conceived, was initially described as medical telework and subject to periodic renewal, but it became essentially permanent sometime in or about early 2014 after his duty station changed to his home in Oklahoma.  Additionally, Ellis believed it to be essentially permanent and not subject to any renewal requirements at all relevant times.  Nevertheless, even Miller had been subject to the Agency's telework policy, FEMA Manual 123-9-1, dated January 9, 2013, which does not require that telework agreements be renewed every 6 months, or ever. *See* ROI, Tab G-5.  In fact, the word "renew" does not appear anywhere in that policy. *See id.*

Mark Miller did not have a reasonable accommodation and, as such, none could be subject to renewal even if renewal were required for such. *See* Defendants' Response to Interrogatory No. 3, *supra*.

**<u>Interrogatory No. 6:</u>**

Did the Agency require Mark Miller to renew his telework or reasonable accommodation policy every 6 months? If not, why not?

**<u>Response to Interrogatory No. 6:</u>**

Miller's work arrangement whereby he worked from his home in Oklahoma on a full-time basis, as originally conceived, was initially described as medical telework and subject to periodic renewal, but it became essentially permanent sometime in or about early 2014 after his duty station changed to his home in Oklahoma.  Additionally, Ellis believed it to be essentially permanent and not subject to any renewal requirements at all relevant times.  Nevertheless, even Mr. Miller had been subject to the Agency's telework policy, that policy, *i.e.*, FEMA Manual 123-9-1, dated January 9, 2013, does not require that telework agreements be renewed every 6

6

months, or ever.  *See* ROI, Tab G-5.  In fact, the word "renew" does not appear anywhere in that policy.  *See id.*

Mark Miller did not have a reasonable accommodation and, as such, none could be subject to renewal even if renewal were required for such.  *See* Defendants' Response to Interrogatory No. 3, *supra*.

**Interrogatory No. 7:**

Why did the Agency continue to allow Mr. Miller to work if his doctor on October 11, 2016, stated in a report that he couldn't do the essential functions of the job?

**Response to Interrogatory No. 7:**

Defendants object to this Interrogatory and do not have any information responsive thereto because it misstates the contents of the referenced doctor's letter and is therefore based upon a false premise.  Miller's doctor did not "report that he couldn't do the essential functions of the job;" rather, Miller's doctor stated that he could only perform his duties in a home-based work environment and that there were no alternative accommodations.  *See* Defendants' First Production of Documents at 000013, Attachment: SKM_28716101114400.pdf, Letter from Dr. Lukas Haragsim, dated October 11, 2016.[1]

**Interrogatory No. 8:**

Why did Ellis say (per Agency responses in the Administrative case 395-396), "One of the cons she lists is that "we aren't in compliance if we allow her to do teleworking."

**Response to Interrogatory No. 8:**

Defendants object to this Interrogatory and do not have any information responsive thereto because it misquotes Melissa Ellis in the referenced email and is therefore based on a

---

[1] This refers to the Agency's document production in the administrative EEO proceedings.

false premise.  In listing the cons of not changing Jennifer Wohltman duty station to New Jersey Ellis stated, "We are not in compliance with the current FEMA Telework agreement. Employees need to be in the office a minimum of 2 days per pay period. Realistically if the expectation is for Jen coming to DC two days per pay period is too much. If Jen is required to come to DC per pay period, she will look for another job closer to home."  *See* Defendants' First Production of Documents at 000395-96.  Ellis listed this bullet point as a "CON" of not changing Jennifer Wohltman's duty station to New Jersey.  In doing so, she was conveying that failing to change Wohltman's duty station would make her work arrangement in New Jersey inconsistent with the general FEMA telework policy and was also conveying that failing to change her duty station would likely prompt Wohltman to seek employment elsewhere.

**Interrogatory No. 9:**

What compliance did Ellis mean?

**Response to Interrogatory No. 9:**

*See* Defendants' response to Interrogatory No. 8, *supra*.

**Interrogatory No. 10:**

Identify the time period in which Ellis supervised Mark Miller.

**Response to Interrogatory No. 10:**

Melissa Ellis supervised Mark Miller from June 2015 until he was removed based upon her proposal in August 2017.

**Interrogatory No. 11:**

For each admission denied, state the reasons for the denial.

**Response to Interrogatory No. 11:**

*See* Defendants' Responses to Plaintiff's Requests for Admission, *infra*.

8

## DEFENDANTS' RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION

**Request for Production No. 1:**

All documents pertaining and/or relating to Mark Miller's teleworking request, reasonable accommodation request, duty station request, management's response to same, any communication between management and Mr. Miller regarding same.

**Response to Request for Production No. 1:**

*See* Defendants' Document Production at 000001-000293.

**Request for Production No. 2:**

All of Mark Miller's employment evaluations from 10/25/12 until his separation date.

**Response to Request for Production No. 2:**

Defendants object to this Request for Production to the extent that it seeks documents and information not relevant to any party's claim or defense, nor is its production proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Defendants have not argued or alleged that Mark Miller's telework and/or duty station arrangements were in any way related to his performance. As such, his performance evaluations are irrelevant to the disposition of this matter and Defendants object to producing them on that basis. Additionally, Defendants object to producing these documents as they are protected from disclosure by the Privacy Act of 1974, 5 U.S.C. § 552a (the "Privacy Act").

**Request for Production No. 3:**

All records of meetings involving Plaintiff through Lync (Skype for business).

**Response to Request for Production No. 3:**

Defendants object to this Request for Production to the extent that it seeks documents and information not relevant to any party's claim or defense, nor is its production proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Additionally, Defendants object to this Request

for Production to the extent that it is overly broad, vague and ambiguous, and is unduly

burdensome and oppressive to answer.  Specifically, this Request for Production is not limited in

any way as to time or subject.    Lastly, Defendants object to this Request for Production to the

extent that it seeks documents that are otherwise available to, have previously been provided to,

or are otherwise within the possession, custody or control of, or are readily obtainable by

Plaintiff, her agents, or her counsel.

### Request for Production No. 4:

All documents demonstrating in-person meetings with other FEMA employees or third

parties.

### Response to Request for Production No. 4:

Defendants object to this Request for Production to the extent that it seeks documents and

information not relevant to any party's claim or defense, nor is its production proportional to the

needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  Additionally, Defendants object to this Request

for Production to the extent that it is overly broad, vague and ambiguous, and is unduly

burdensome and oppressive to answer.  Specifically, this Request for Production is not limited in

any way as to time, place, subject, or individuals involved.  Lastly, Defendants object to this

Request for Production to the extent that it seeks documents that are otherwise available to, have

previously been provided to, or are otherwise within the possession, custody or control of, or are

readily obtainable by Plaintiff, her agents, or her counsel.

### Request for Production No. 5:

All documents relating or pertaining to Wohltmans teleworking, duty station assignment

and any decision involving same by management.

10

**Response to Request for Production No. 5:**

*See* Defendants' Document Production at 000294-000313.

## DEFENDANTS' RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION

**Request for Admission No. 1:**

Melissa Ellis at some point supervised Mark Miller

**Response to Request for Admission No. 1:**

Defendants admit that Melissa Ellis supervised Mark Miller until he was terminated based upon her proposal after failing a Performance Improvement Plan that she instituted.

**Request for Admission No. 2:**

Melissa Ellis, during that course of supervision was supposed to monitor Mr. Miller's telework.

**Response to Request for Admission No. 2:**

Defendants deny that Melissa Ellis was supposed to monitor Mark Miller's work arrangement while he was working at this official duty station in Oklahoma.  There existed no authority obliging Ellis to monitor Miller's work arrangement since, during her tenure as his supervisor, his duty station change and work arrangement had become essentially permanent. Once his home in Oklahoma became his official duty station, working from there was not telework.  Therefore, there was no telework for Ellis to monitor.

**Request for Admission No. 3:**

Ms. Ellis did not monitor Mr. Miller's telework.

**Response to Request for Admission No. 3:**

Defendants admit that Ellis did not monitor Miller's "telework" because at all relevant times he was working from his official duty station and therefore not teleworking.  Further, Ellis

11

did not believe Miller's working arrangement in Oklahoma was subject to the Agency's telework

policies because his official duty station had changed to Oklahoma and he was therefore working

from his official duty station, not an alternate worksite/location.  Therefore, there was no

telework for Ellis to monitor.

**Request for Admission No. 4:**

Ms. Ellis did not require Mr. Miller to renew his telework or reasonable accommodation

request every 30 days or every 6 months.

**Response to Request for Admission No. 4:**

Defendants deny this Request because Miller was not teleworking, nor did he have a

reasonable accommodation.

**Request for Admission No. 5:**

Ellis made decisions to allow Miller to keep his full time duty station in the state he

desired until his termination.

**Response to Request for Admission No. 5:**

Defendants deny that Melissa Ellis made decisions within her discretion to allow Mark

Miller to keep his full-time duty station in the state he desired until his termination.  When Ellis

became Miller's supervisor in 2015, his duty station was already his home in Oklahoma and had

been for approximately two years by that point. Ellis understood that Miller's duty station

change was essentially permanent and therefore did not initially take any affirmative actions to

change the status quo.  Once Ellis decided to change Miller's duty station back to Washington,

D.C. and require him come into the office two days per pay period, he provided medical

documentation stating that he needed to work from home full-time and that there were no

12

alternative accommodations.  As such, Ellis was obligated to permit Miller to continue his work arrangement which she did until his was effectuated in August 2017 upon her proposal.

**Request for Admission No. 6:**

Ellis hired another African-American accountant, Amanda Robertson.

**Response to Request for Admission No. 6:**

Defendants admit that Melissa Ellis selected and hired Amanda Robertson, an African-American individual, as an accountant.

**Request for Admission No. 7:**

Ms. Robertson does not and has never had the same teleworking/duty station rights as Jennifer Wohltman.

**Response to Request for Admission No. 7:**

Defendants deny that Robertson does not and has never had the same teleworking/duty station rights as Jennifer Wohltman.  Ellis approved Robertson's telework request and has not denied any requests made by Robertson.

**Request for Admission No. 8:**

The relevant FEMA telework policy for the subject time period is the FEMA Manual 123-9-1, Approval Date: 1/9/13 (ROI G-5, provided by the Agency).

**Response to Request for Admission No. 8:**

Defendants admit that the FEMA telework policy for the subject time period is FEMA Manual 123-9-1, Approval Date: 1/9/2013 found in the Report of Investigation at Tab G-5.

**Request for Admission No. 9:**

The Agency did not provide the EEO investigator with a non-relevant FEMA Manual and Telework policy.

**Response to Request for Admission No. 9:**

Defendants admit that the FEMA telework manual located in the Report of Investigation at Tab G-5 was the relevant FEMA telework manual effective January 9, 2013, and thereafter through all times relevant in this matter.

**Request for Admission No. 10:**

The aforesaid FEMA Manual states that one of the purposes of telework is to ensure the continuity of essential government functions in the event of an emergency.

**Response to Request for Admission No. 10:**

Defendants admit that Section 1-5(A) of FEMA Telework Manual 123-9-1, dated January 9, 2013, states that "FEMA promotes telework (also known as flexiplace, telecommuting, or work-from-home) as a workplace flexibility for recruiting top talent; retaining current employees; reducing the cost of office space, ·absenteeism, and use of workers compensation; and to ensure continuity of essential governmental functions in the event of an emergency." *See* Report of Investigation, Tab G-5, page 6 of 24.

**Request for Admission No. 11:**

Telework is a mechanism FEMA uses to maintain productivity.

**Response to Request for Admission No. 11:**

Defendants admit only that Section 1-5(G) of FEMA Telework Manual 123-9-1, dated January 9, 2013, states the following:

> Unscheduled situational telework is an important component of FEMA's ability to operate in emergencies. Telework should be incorporated into emergency preparedness operations to the broadest extent possible. Unscheduled telework is a way for FEMA and its employees to maintain productivity and help ensure safety of the Federal workforce and the public. For example, telework will be considered for situational inclement weather as well as emergency situations that involve national security, extended emergencies, or other unique, situations (See Section 3-9 Emergency Situations).

*See* Report of Investigation, Tab G-5, pages 6-7 of 24.

**Request for Admission No. 12:**

Telework is a mechanism FEMA uses to attract new employees.

**Response to Request for Admission No. 12:**

Defendants admit only that Section 1-5(A) of FEMA Telework Manual 123-9-1, dated January 9, 2013, states that "FEMA promotes telework (also known as flexiplace, telecommuting, or work-from-home) as a workplace flexibility for recruiting top talent; retaining current employees; reducing the cost of office space, ·absenteeism, and use of workers compensation; and to ensure continuity of essential governmental functions in the event of an emergency." *See* Report of Investigation, Tab G-5, page 6 of 24.

**Request for Admission No. 13:**

Telework is a mechanism FEMA uses to maintain employees.

**Response to Request for Admission No. 13:**

Defendants admit only that Section 1-5(A) of FEMA Telework Manual 123-9-1, dated January 9, 2013, states that "FEMA promotes telework (also known as flexiplace, telecommuting, or work-from-home) as a workplace flexibility for recruiting top talent; retaining current employees; reducing the cost of office space, absenteeism, and use of workers compensation; and to ensure continuity of essential governmental functions in the event of an emergency." *See* Report of Investigation, Tab G-5, page 6 of 24.

**Request for Admission No. 14:**

FEMA actually promotes the use of telework.

**Response to Request for Admission No. 14:**

Defendants admit only that Section 1-5(A) of FEMA Telework Manual 123-9-1, dated

January 9, 2013, states that "FEMA promotes telework (also known as flexiplace,

telecommuting, or work-from-home) as a workplace flexibility for recruiting top talent; retaining

current employees; reducing the cost of office space, absenteeism, and use of workers

compensation; and to ensure continuity of essential governmental functions in the event of an

emergency."  *See* Report of Investigation, Tab G-5, page 6 of 24.

**Request for Admission No. 15:**

A FEMA Telework Program Manager is responsible for actively promoting telework

within the Agency.

**Response to Request for Admission No. 15:**

Defendants admit only that Section 1-7(F)(3) of FEMA Telework Manual 123-9-1, dated

January 9, 2013, states that the:

> FEMA Telework Program Manager is responsible for: . . . [a]ctively promoting
> telework within the Agency, consistent with accomplishing assigned missions, and
> making every effort to overcome artificial barriers to program implementation
> through education and training for leadership and supervisors on telework benefits,
> performance management in a telework environment, and the value of integrating
> telework into COOP activities;

*See* Report of Investigation, Tab G-5, page 12 of 24.

**Request for Admission No. 16:**

A FEMA supervisor's responsibility is to in collaboration with OCCHCO, ensure that as

appropriate, position descriptions are updated to reflect which positions are not suited for

telework and the reasons for such determinations.

**Response to Request for Admission No. 16:**

Defendants admit that Section 1-7(J)(4) of FEMA Telework Manual 123-9-1, dated

January 9, 2013, states that "FEMA Supervisors are responsible for . . . [i]n collaborations with

OCCHCO, ensure that, as appropriate, position descriptions are updated to reflect which

positions are not suitable for telework and the reasons for such determinations."  See Report of

Investigation, Tab G-5, page 13 of 24.

**As to the objections raised herein and responses to requests for the production of**

**documents:**

September 6, 2019                                    Respectfully submitted,

                                                                  JESSIE K. LIU
                                                                  D.C. Bar No. 472845
                                                                  United States Attorney
                                                                  District of Columbia

                                                                  DANIEL F. VAN HORN
                                                                  D.C. Bar No. 924092
                                                                  Chief, Civil Division

                                              By:      /s/ Daniel P. Schaefer
                                                                  DANIEL P. SCHAEFER
                                                                  D.C. Bar No. 996871
                                                                  Assistant United States Attorney
                                                                  555 4th Street, N.W.
                                                                  Washington, D.C.  20530
                                                                  (202) 252-2531
                                                                  Daniel.Schaefer@usdoj.gov

                                                                  *Counsel for Defendant*

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 6, 2019, I served the foregoing Defendants' Responses to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission upon Plaintiff's counsel, Morris E. Fischer, Esq., via email at <u>morris@mfischerlaw.com.</u>

*/s/ Daniel P. Schaefer*

Daniel P. Schaefer

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICIA KIRTON,<br><br>       *Plaintiff*,<br><br>  v.<br><br>KEVIN MCALEENAN, Acting Secretary,<br>Department of Homeland Security, and<br>FEDERAL EMERGENCY MANAGEMENT<br>AGENCY,<br><br>       *Defendants*. | Civ. A. No. 18-1580 (RCL) |

### VERIFICATION OF DEFENDANTS' RESPONSES TO
### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND
### <u>REQUESTS FOR ADMISSION</u>

I hereby declare that, to the best of my knowledge, information, and belief, and based on information provided to me by others and from my review of documents in the possession, custody, and control of the Federal Emergency Management Agency, that the facts stated in Defendants' Responses to Plaintiff's First Set of Interrogatories and Requests for Admission are true and correct. Executed on this 6th day of September, 2019, in Washington, D.C.

Melissa Ellis
Acting Deputy Budget Director
Budget Planning & Analysis Division
Office of the Chief Financial Officer
Federal Emergency Management Agency