## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALICIA KIRTON,** | |
| *Plaintiff,* | |
| **v.** | **Case No. 1:18-cv-1580-RCL** |
| **ALEJANDRO MAYORKAS,**[1] *in his official capacity as Secretary of Homeland Security,* et al., | |
| *Defendants.* | |

### MEMORANDUM OPINION

Plaintiff Alice Kirton made plans to move from Virginia to Florida and then asked her employer, the Federal Emergency Management Agency, for permission to telework nearly every day. The Agency denied her request. Kirton claims that the Agency denied her request because she is an African-American and sued under Title VII of the Civil Rights Act of 1964 for employment discrimination on account of her race or color. The Agency denies any racial motive for its actions. Rather, the Agency asserts that it denied her request because Kirton's job as a budget analyst requires in-person work and because Kirton did not merit an exception to her office's expectation that budget analysts work in-person at least twice per week.

The defendants moved for summary judgment (ECF No. 29). Upon consideration of the motion, briefs (ECF Nos. 29-1, 32, 35), and all other papers of record, the Court will grant the motion by separate order.

---

[1] On February 2, 2021, Alejandro Mayorkas was sworn in as the Secretary of Homeland Security and was automatically substituted as the named defendant. *See* Fed. R. Civ. P 25(d).

## I.   BACKGROUND

### A. Factual Background[2]

#### 1.   Kirton's Employment with FEMA

Kirton is an African-American and is employed by the Agency. Defs.' SMF ¶¶ 1–3; Pl.'s SMF ¶¶ 1–3. FEMA is an agency within the United States Department of Homeland Security and is responsible for, among other things, responding to presidentially declared disasters pursuant to the Stafford Act, 42 U.S.C. §§ 5121, *et seq*. Kirton worked as a GS-13 budget analyst in the Funds Control Branch within the Budget Planning and Analysis Division of FEMA's Office of the Chief Financial Officer. Defs.' SMF ¶ 3; Pl.'s SMF ¶ 3. As a budget analyst, Kirton coordinated with FEMA program offices to ensure proper allocation of funds. Defs.' SMF ¶ 6; Pl.'s SMF ¶ 6. Melissa Ellis, branch chief of the Funds Control Branch, served as Kirton's first line supervisor. Am. Compl. ¶ 15 (ECF No. 4); Answer ¶ 15 (ECF No. 8). Shalini Benson, deputy budget director of the CFO's office, was Kirton's second line supervisor. Defs.' SMF ¶ 44; Pl.'s SMF ¶ 44.

#### 2.   Telework Policy and Expectation

In 2013, FEMA implemented its telework policy. FEMA Telework Manual 123-9-1 (ECF No. 29-7). The Agency's manual describes teleworking as "a voluntary work alternative that may be appropriate for some employees and some jobs." *Id.* at 4. But it also clarifies that telework "is not an entitlement and in no way changes the terms and conditions of employment with the Agency." *Id.* Although nothing in the manual forbids an eligible employee from teleworking full-time, it states that "[i]f the employee *does not* regularly commute into the agency office at least

---

[2] In opposing the defendants' motion for summary judgment, the plaintiff responded to Defendants' Statement of Undisputed Material Facts ("Defs.' SMF"), ECF No. 29-2, as required by LCvR 7(h)(1), and submitted Plaintiff's Opposition to Defendants' Undisputed Statement of Facts ("Pl.'s SMF"), ECF No. 32-19. The Court has carefully considered these submitted materials in evaluating the parties' factual assertions and arguments.

twice each biweekly pay period, the official duty station must be changed to the alternate worksite." *Id.* at 21 (emphasis in original).

In 2015, to supplement the official, Agency-wide telework policy, Benson announced her own "telework expectations" for the CFO's office in an email to office managers. Defs.' SMF ¶¶ 14–17; Pl.'s SMF ¶¶ 14–17; Benson Email (Apr. 23, 2015) (ECF No. 29-8 at 11). Among other things, Benson advised the managers that they should see each of their direct reports in-person at least twice per week. Defs.' SMF ¶ 17; Pl.'s SMF ¶ 17; Benson Email (Apr. 23, 2015) (ECF No. 29-8 at 11). That said, Benson was willing to grant exceptions on a case-by-case basis if an employee sufficiently justified his or her request. Benson Decl. ¶ 12 (ECF No. 29-8).

### 3.  Request and Denial

In December 2015, Kirton asked the Agency for permission to telework on 95–100% of her work days. Defs.' SMF ¶ 31; Pl.'s SMF ¶ 31. At that point, she was already teleworking about two to three days per week. *See* Kirton Email 3 (Dec. 22, 2015) (ECF No. 32-20). She subsequently modified her request on December 22, 2015 and January 20, 2016. Defs.' SMF ¶ 41; Pl.'s SMF ¶ 41; Kirton Email 3 (Dec. 22, 2015) (ECF No. 32-20). The Agency denied her modified request for increased telework. Defs.' SMF ¶¶ 37, 43; Pl.'s SMF ¶¶ 37, 43.

*a.  Initial Request*

In 2015, Kirton lived in Chester, Virginia, just south of Richmond. Defs.' SMF ¶ 30; Pl.'s SMF ¶ 30. On December 18, 2015, stating that she was dissatisfied with her three-hour commute to her duty station in Washington, D.C., Kirton requested a 95–100% telework schedule starting in January 2016. Defs.' SMF ¶ 31; Pl.'s SMF ¶ 31. At some point, Kirton told Ellis that she was dealing with some health issues that occurred while [she] was on active military duty." Kirton Affidavit 7 (June 18, 2017) (ECF No. 29-4). But in her email request to Ellis, Kirton emphasized

3

that her request was not based on her medical issues.  Kirton Email (Dec. 18, 2015) (ECF No. 29-6 at 19) ("Melissa, attached is my request for 95–100% telework. I would rather make this request based on my current commuting situation which qualifies for a strong enough justification to prevent me from giving my personal business of medical issues.").  Instead, her request was based on her "current commute situation" and desire for more time to "spend with [her] family."  Defs.' SMF ¶ 31; Pl.'s SMF ¶ 31.  Yet, her request did not mention that her commute situation was about to change.  *Id.*  On the same day Kirton submitted the request, she sent an email to her co-worker, stating that "come January I will email [Ellis] each Tuesday and Wednesday to say I will be teleworking. [I]f she say[s] no then will inform her that I have moved out of state and cannot come in the office but once a month."  Defs.' SMF ¶ 32; Pl.'s SMF ¶ 32; Kirton Email (Dec. 18, 2015) (ECF No. 29-16).

Upon receiving Kirton's request, Ellis suggested to Benson that the Agency increase Kirton's telework schedule, but to require her to come into the office for two days every two weeks. Defs.' SMF ¶ 33; Pl.'s SMF ¶ 33.  Ellis viewed this arrangement as a compromise between the 95–100% telework that Kirton requested and Benson's telework expectations.  Ellis Decl. ¶ 14 (ECF No. 29-6).  Benson responded that she was "not comfortable deviating from [the] office norm of in person 2 days a week without a justification on how you'll accomplish mission, meet customer needs, ensure equity with other staff, etc."  Defs.' SMF ¶ 35; Pl.'s SMF ¶ 35.  Benson further advised Ellis to "not approve until that justification has been provided."  *Id.*  Complying with Benson's direction, Ellis asked Kirton to provide additional information.  *Id.*

b.  *First Revised Request*

On December 22, 2015, Kirton emailed Ellis justifying her request for 95–100% telework, and requested permission to come into the office only once a month.  Kirton Email 3 (Dec. 22,

2015) (ECF No. 32-20).  In this email, Kirton reiterated that her "request is based on [her] current commuting time" and "quality time with [her] family."  *Id.*  But she also stated that she and her husband "made the decision to move to Florida."  *Id.*  Ellis interpreted Kirton's email as a request for 95–100% telework from her new home in Florida.  Ellis Decl. ¶ 16.

One week later, Ellis denied Kirton's request for increased telework.  Defs.' SMF ¶ 37; Pl.'s SMF ¶ 37.  In denying Kirton's increased telework arrangement, Ellis referred to the budget division's expectation that employees come into the office two days per week and stated that Kirton's job as a budget analyst "requires face-to-face engagement with [her] customers."  *Id.*  Based on the same reasons, Ellis also denied an implied request for change in duty station.  *See id.*

Kirton moved to Florida at the end of December 2015.  Defs.' SMF ¶ 38; Pl.'s SMF ¶ 38.

c.  *Second Revised Request*

On or about January 20, 2016, Kirton submitted a modified request using the Agency's Telework Application and Agreement form, requesting permission to work remotely most days and come into the office for two consecutive days every two weeks.  Defs.' SMF ¶¶ 39, 41; Pl.'s SMF ¶¶ 39, 41.  Even though she had moved to Florida, the form listed Kirton's home address in Chester as her telework location.  Defs.' SMF ¶ 41; Pl.'s SMF ¶ 41.  The form did not contain any new information or justification for seeking increased telework.  *See* Kirton's Telework Application and Agreement (ECF. 29-6 at 30–31).

The next day, Ellis forwarded to Kirton the 2015 email containing Benson's expectation that employees come into the office at least two days per week.  Defs.' SMF ¶ 42; Pl.'s SMF ¶ 42. Kirton responded, "Thank you Melissa I appreciate your input; however I am going to stick with the request sent to you . . . yesterday."  *Id.*  Ellis denied Kirton's modified request.  Defs.' SMF ¶ 43; Pl.'s SMF ¶ 43.  Ellis denied this request because the requested arrangement did not conform

to the division's telework expectation and because Kirton had provided no new information or justification in support of her request. Ellis Decl. ¶ 22. Kirton appealed, and Benson affirmed Ellis's decision, explaining that "[t]elework is at your man[a]ger's discretion to approve" and stating that "we are not denying your use of [t]elework, but rather managing the telework schedule to be consistent with the other employees in our division/branch and mission needs." Benson Email (Feb. 2, 2016) (ECF No. 29-8 at 18).

As a result of the denial, Kirton alleges that she spent $600 per trip commuting from Florida to Washington, D.C., twice a month for twenty-five months. Am. Compl. ¶ 72. Kirton also alleges she damaged her knee by taking these trips. *Id.* at ¶ 73.

**B. Procedural History**

Kirton timely initiated the administrative process with the appropriate office at the Department of Homeland Security. On February 22, 2016, Kirton filed a formal complaint with the Department alleging that the Agency discriminated against her on the basis of her race or color when it denied her telework request. In August 2016, the Department issued a letter of acceptance, defining the claim to be investigated. In March 2017, Kirton filed a hearing request with the Equal Employment Opportunity Commission, but she withdrew this request after the Department notified Kirton of the completion of its investigation. The Commission then dismissed her complaint and remanded it to the Department to issue a final agency decision. On April 4, 2018, the Department issued a its final decision, finding in favor of the Agency and notifying Kirton of her right to appeal to the Commission or file an action in federal court. *See* Decision (Apr. 4, 2018) (ECF No. 29-24).

So Kirton sued the Agency and the Secretary of Homeland Security. In her operative complaint, she claims that the Agency discriminated against her on account of her race or color

Case 1:18-cv-01580-RCL   Document 36   Filed 03/16/21   Page 7 of 15


when it denied her request to change her telework schedule and duty station. The defendants answered. Following discovery, the defendants moved for summary judgment.

## II.    LEGAL STANDARD

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of showing its entitlement to summary judgment; the moving party, however, must simply show that the non-moving party has not produced enough evidence to meet its burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

At the summary judgement stage, the Court construes facts and makes inferences in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). If the parties disagree about material facts, the Court must credit the non-moving party's version. *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016). Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Facts are disputed only if a reasonable jury could believe either side of the dispute, *see Scott*, 550 U.S. at 380, and a fact is material if it is necessary to the Court's decision, *see Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

## III.    ANALYSIS

Kirton alleges that the Agency denied her request for telework because of her race or color. Am. Compl. ¶ 85. Title VII prohibits the federal government from discriminating in employment on grounds of race or color. 42 U.S.C. § 2000e-16. The two essential elements of a Title VII discrimination claim are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citations omitted).

Thus, for an employee to state a valid Title VII claim, she must first allege an adverse employment action. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  "Actions short of an outright firing can be adverse within the meaning of Title VII, but not all lesser actions by employers count . . . . [M]ere idiosyncracies of personal preference are not sufficient to state an injury. Purely subjective injuries, such as dissatisfaction with a reassignment . . . are not adverse actions." *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) (internal quotation marks and citations omitted).  For an employer's action to count as adverse within the meaning of Title VII, the employee "must experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks and citations omitted). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (internal quotation marks and citation omitted).

If the employee fails to produce enough evidence for a reasonable jury to find that she suffered an adverse employment action, courts may enter summary judgment in favor of the employer. *See Baloch*, 550 F.3d at 1196–97; *see also, e.g.*, *Taylor v. Solis*, 571 F.3d 1313, 1320 n. 4 (D.C. Cir. 2009).

If the employee has suffered an adverse employment action, she must then show that the action occurred because of discrimination. *See Baloch*, 550 F.3d at 1196.  Traditionally, where a plaintiff presents no direct evidence of intentional discrimination, courts have relied on the three-

step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[3] In this Circuit, once an employer has asserted a legitimate, non-discriminatory reason for its action, courts immediately ask whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee" on an impermissible ground. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

In this case, the Agency argues that it is entitled to summary judgment on two alternative grounds. First, the Agency argues that its denial of Kirton's telework request does not rise to the level of an adverse employment action. Defs.' Br. 7–8 (ECF No. 29-1). Alternatively, the Agency argues that it had legitimate, non-discriminatory reasons for denying Kirton's request and that her evidence would not allow a jury to find those reasons pretextual. *Id.* at 9–21.

Accordingly, the Court first considers whether Kirton has produced sufficient evidence to allow a reasonable jury to find that she has suffered an adverse employment action under Title VII. As the Court concludes that no reasonable jury could find an adverse employment action, its inquiry starts and ends at this first step.

Kirton argues that the Agency's denial of her telework request materially affected the "terms" and "conditions" of her employment. Pl.'s Opp'n. 10. Kirton does not allege—nor does the record show—that the denial affected her salary, job responsibilities, or future employment opportunities in any way. *See generally* Am. Compl. Instead, she alleges that she spent $600 per

---

[3] The *McDonnell Douglas* framework is an evidentiary framework that structures the presentation of evidence so that courts can decide whether an employer intentionally discriminated against its employee. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Then, the employer has the burden of production "to articulate some legitimate, nondiscriminatory reason" for its action. *Id.* If the employer produces such a reason, the plaintiff must then present evidence to show that the employer's proffered reason is merely "a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation omitted).

trip commuting from Florida to her duty station in Washington, D.C., twice a month for twenty-five months and that she suffered physical damage to her knee by taking these trips. Am. Compl. ¶¶ 71–74. But because "mere idiosyncracies of personal preference are not sufficient to state an injury," *Forkkio*, 306 F.3d at 1130, the Court concludes that the Agency's denial of her request does not constitute an adverse employment action under Title VII.

Kirton was already teleworking two to three days per week from her then-home in Virginia before requesting increased telework in December 2015. *See* Kirton Email 3 (Dec. 22, 2015) (ECF No. 32-20). She explicitly stated that her request for more telework was based on her desire to commute less frequently and to spend more time with her family. Defs.' SMF ¶ 31; Pl.'s SMF ¶ 31; Kirton Email 3 (Dec. 22, 2015) (ECF No. 32-20). The record also reveals that an implied reason for her request was her decision to move to Florida with her husband at the end of December 2015, hundreds of miles away from her duty station.[4] Defs.' SMF ¶¶ 30–32, 37–38; Pl.'s SMF ¶¶ 30–32, 37–38. But all of these reasons simply reflect Kirton's personal preferences. Kirton's failure to secure her ideal telework arrangement simply does not involve the type of "objectively tangible harm" to her employment status that is necessary to constitute an adverse employment action. *Douglas*, 559 F.3d at 553.

---

[4] On December 18, 2015, Kirton emailed Ellis requesting 95–100% telework starting from January 2016 stating she was dissatisfied with her three-hour commute from her then-home in Chester, Virginia. Defs.' SMF ¶ 30; Pl.'s SMF ¶ 30. In this email, she made no mention of the fact that she had already decided to move to Florida at the end of that month. Defs.' SMF ¶ 31; Pl.'s SMF ¶ 31. On the same day, Kirton forwarded her telework request in an email to her colleague, and stated that "come January I will email [Ellis] each Tuesday and Wednesday to say I will be teleworking. [I]f she say[s] no then will inform her that I have moved out of state and cannot come in the office but once a month." Defs.' SMF ¶ 32; Pl.'s SMF ¶ 32; Kirton Emails (Dec. 18, 2015) (ECF No. 29-16). On December 22, 2015, Kirton reiterated that her "request is based on [her] current commuting time," but also stated that she and her husband "made the decision to move to Florida." Kirton Email 3 (Dec. 22, 2015) (ECF No. 32-20). Ellis interpreted Kirton's email as a request for 95–100% telework from her new home in Florida. Ellis Decl. ¶ 16. On December 29, 2015, Ellis denied Kirton's request for increased telework. Defs.' SMF ¶ 37; Pl.'s SMF ¶ 37. Kirton moved to Florida at the end of December 2015. Defs.' SMF ¶ 38; Pl.'s SMF ¶ 38.

The Agency's telework policy supports that conclusion because it treats teleworking as a discretionary perk. The policy describes teleworking as "a voluntary work alternative that may be appropriate for some employees and some jobs." FEMA Telework Manual 123-9-1 at 4 (ECF No. 29-7). The policy also indicates that "[t]eleworking…is not an entitlement and in no way changes the terms and conditions of employment with the Agency." *Id.* These disclaimers make clear that the existence of the telework policy does not create an entitlement to telework.

Furthermore, the Court's conclusion accords with the vast majority of cases that considered whether a denial of an employee's request to work remotely constitutes an adverse employment action. Courts in this Circuit and other jurisdictions have consistently held that denial of a request to telework does not, on its own, amount to an adverse employment action, as it does not involve a significant change in employment status. *See Redmon v. United States Capitol Police*, 80 F. Supp. 3d 79, 87 (D.D.C. 2015) ("The Court agrees with the cited opinions that a denial of a request to telework, without more, does not rise to the level of an adverse employment action, as it does not involve 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits'") (collecting cases); *McNair v. District of Columbia*, 359 F. Supp. 3d 1, 10 (D.D.C. 2019) ("[T]he denial of a request to work from home, in and of itself, is not an adverse action."); *Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 203 (D.D.C. 2017); *Brown v. Jewell*, 134 F. Supp. 3d 170, 181 (D.D.C. 2015); *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 41 (D.D.C. 2013); *Ng v. Lahood*, 952 F. Supp. 2d 85, 96 (D.D.C. 2013); *Bright v. Copps*, 828 F. Supp. 2d 130, 148–49 (D.D.C. 2011); *Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130, 149 (D.D.C. 2010); *Kabakova v. Office of Architect of Capitol*, No. CV 19-1276 (BAH), 2020 WL 1866003, at *15 (D.D.C. Apr. 14, 2020); *see also Brockman v. Snow*, 217 F. App'x. 201, 206 (4th Cir. 2007); *Martinez-Santiago v. Zurich N. Am. Ins. Co.*, No. 07-cv-8676

(RJH), 2010 WL 184450, at *7 (S.D.N.Y. Jan. 20, 2010) (collecting cases); *Homburg v. UPS*, No. 05-cv-2144, 2006 WL 2092457, at *9 (D. Kan. July 27, 2006) (collecting cases); *Cf. Weng v. Solis*, 960 F. Supp. 2d 239, 249 (D.D.C. 2013) (concluding that the plaintiff's *removal* from a flexible work program caused a significant change in benefits).

The Agency's decision to not grant Kirton her request for increased telework from a personally preferred off-site location does not involve a "significant change in benefits," *Baird*, 662 F.3d at 1248, or any other comparable harm. The Court therefore concludes that the denial of her request to telework was not an adverse employment action giving rise to a claim of discrimination.

Kirton's arguments to the contrary are unavailing.

First, Kirton attempts to distinguish those prior decisions as inapplicable given the recent upsurge in telework arrangements. Pl.'s Opp'n. 10–13. The relevant events of this case occurred in December 2015 and January 2016. Am. Compl. ¶¶ 16–19. In comparison, the facts underlying some of the earlier cases date back as far as 2002. Pl.'s Opp'n. 12. Kirton argues that her relatively modern case should be treated differently given the advancement of telework technology and the prevalence of telework arrangements in recent years.[5] Pl.'s Opp'n. 10–13. While telework technology has become more effective and widely used over the last decade or so, such changes do not affect the Court's consideration of whether a denial of permission to telework constitutes an adverse action. The adverse action inquiry is employee-specific—it considers how an employer's action harmed an employee's employment status. *See, e.g.*, *Douglas*, 559 F.3d at 553.

---

[5] Kirton provides a chart published by the U.S. Office of Personnel Management ("OPM"), showing an increase in telework participation among federal employees over the FY 2012–2018 period (from 29% to 51% for eligible employees; from 14% to 22% for all employees). Pl.'s Opp'n. 9. With regards to telework technology advancements, Kirton provides a statement in OPM's Guide to Telework in the Federal Government, dated April 2011: "Advances in information technology have paved the way for increased telework." Pl.'s Opp'n. 8.

Thus, background trends are immaterial to the adverse action inquiry. As discussed above, Kirton failed to show that there was "a significant change in [her] employment status" as a result of the denial. *Baird*, 662 F.3d at 1248. The fact that teleworking has generally become more accessible or popular has no bearing on Kirton's employment with the Agency.

Kirton also argues that the earlier cases, which generally involve denials of "short-term" requests to telework for two days per week or less, are distinguishable from her case because it involves the denial of a request for "long-term," higher-rate telework. Pl.'s Opp'n. 11–12. In other words, according to Kirton, because she asked for much more, the denial of such a request was "materially adverse." *Id.* But the adverse action inquiry looks to the quality of the harm suffered by the employee, not the quantity. *See, e.g., Douglas*, 559 F.3d at 553. An employer's decision to not grant the permission to telework, on its own, simply does not entail the type of harm that is actionable under Title VII. *See, e.g., Redmon*, 80 F. Supp. 3d at 87; *McNair*, 359 F. Supp. 3d at 10. Furthermore, an employee who fails to obtain an atypical, long-term telework arrangement is less likely to prevail in a Title VII suit than an employee who fails to obtain a more modest accommodation. *See Walker v. McCarthy*, 170 F. Supp. 3d 94, 107 (D.D.C. 2016). Finding that an employee's asking to work remotely for a minimum of two years was "an unusual and extraordinary request," the court in *Walker* noted that such a situation presented "an even more tenuous basis" for establishing a Title VII claim than cases involving shorter-term telework arrangements. *Id.* In line with *Walker*, the Court concludes that Kirton's request for nearly full-time telework for an indefinite period—a request based on her dissatisfaction with her commute and desire for more family time, and not on any emergency-related or medical grounds—was an unusual request. Accordingly, her request presents "an even more tenuous basis" for establishing

a Title VII claim than the short-term telework cases. *Id.* Therefore, Kirton's efforts to distinguish short-term teleworking cases do not move the needle in her case.

Lastly, Kirton attempts to analogize a denial of telework request with a denial of lateral transfer request. That effort is futile because the lateral transfer standard is no more favorable to Kirton than the telework standard. A lateral transfer—or a denial of lateral transfer request—with no loss in pay or benefits does not amount to an adverse employment action, unless accompanied by some "other materially adverse consequences" affecting the terms, conditions, or privileges of employment or future employment opportunities. *See Moore v. Summers*, 113 F. Supp. 2d 5, 23 (D.D.C. 2000) (lateral transfer which plaintiff deemed "negative to her career" is not an adverse employment action where plaintiff did not lose pay or grade, or allege that her duties had been substantially diminished in any way). Kirton has not alleged and has not presented any evidence that the Agency's denial of her telework request affected her job responsibilities or future employment opportunities; the denial did not involve "materially adverse consequences" affecting her employment. Thus, even if the lateral transfer standard applies in the telework context, Kirton fails to provide sufficient evidence for a reasonable jury to find an adverse employment action.

Consequently, upon consideration of the record evidence, the Court concludes that a reasonable jury could not find that Kirton suffered an adverse employment action when the Agency denied her telework request.[6] The defendants, therefore, are entitled to summary judgment as a matter of law. Accordingly, the Court need not address the defendants' alternative argument, that

---

[6] Kirton does not argue that the Court should regard the Agency's denial of duty station change as a stand-alone Agency action, distinct from the Agency's denial of her request to telework nearly full-time from her preferred off-site location. *See generally* Pl.'s Opp'n. 7–13. Rather, Kirton appears to simply treat the Agency's denial of her December 2015/January 2016 telework request as a single employment action. *See id.* The Court does not disagree, as there is nothing in the record to suggest otherwise. Even if the denial of duty station change were deemed a separate employment action, however, it would still not rise to the level of an adverse employment action because it did not involve a "significant change in benefits." *Baird*, 662 F.3d at 1248.

Kirton failed to put forward sufficient evidence for a reasonable jury to find that the Agency's asserted legitimate, non-discriminatory reasons were pretextual.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment will be granted. A separate order accompanies this opinion.

Date:    3/16/21

Royce C. Lamberth
United States District Judge